UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

FAHAD SIDDIQUI, et al.

                    Plaintiffs,

           -against-

AIRLIE OPPORTUNITY MASTER FUND,
LTD., ARH MORTGAGE INC., WDM FUND,
L.P., STEVE Y. KHOSHABE, JOSEPH
KHOSHABE and JASON K. SCHIFFMAN,

                  Defendants.

---

Civil Action No. 06-CV-6473 L (P)

**<u>NOTICE OF MOTION</u>**

       **PLEASE TAKE NOTICE** that upon accompanying Declaration of Steve Y. Khoshabe, dated January 22, 2007, the Declaration of Defendant Joseph Khoshabe dated January 22, 2007, the Declaration of Defendant Jason K. Schiffman, dated January 22, 2007, the Declaration of Diane Windholz, dated January 22, 2007, with exhibits, and the Memorandum of Law of Defendants Steve Y. Khoshabe, Joseph Khoshabe and Jason K. Schiffman (collectively, the "Individual Defendants"), and upon the prior proceedings heretofore held in this Court, the Individual Defendants will move this Court at such date and time as the Court deems proper, before the Honorable David Larimer, at the United States District Court for the Western District of New York, 100 States Street, Rochester, New York 14614 for an Order:

       1.      dismissing the Complaint, pursuant to Fed. R. Civ. P. 12(b)(2), for lack of personal jurisdiction over the Individual Defendants; or

       2.      in the alternative staying the action pending the resolution of the arbitration entitled "<u>Gooldy et al. v. United Financial Mortgage Corporation</u>," JAMS Reference No. 1420015543.

Together with such other and further relief as the Court may deem just and proper.

**PLEASE TAKE FURTHER NOTICE** that the Individual Defendants intend to file reply papers.

Dated: January 22, 2007
      New York, New York

By:     s/Diane Windholz

Diane Windholz
*WindholD@JacksonLewis.com*
Peter C. Moskowitz
*MoskowiP@jacksonlewis.com*
**JACKSON LEWIS LLP**
59 Maiden Lane, 39th Floor
New York, New York 10038
(212) 545-4000


By:     s/Jill L. Yonkers

Jill L. Yonkers
*jyonkers@hodgsonruss.com*
**HODGSON RUSS LLP**
One M& T Plaza, Suite 2000
Buffalo, New York 14203-2391
(716) 856-4000


ATTORNEYS FOR DEFENDANTS STEVE Y. KHOSHABE, JOSEPH KHOSHABE, AND JASON K. SCHIFFMAN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

FAHAD SIDDIQUI, ET AL.,

                      Plaintiffs,

          -against-                   Civil Action No.: 06-CV-6473 L (P)

AIRLINE OPPORTUNITY MASTER
FUND, LTD., ARH MORTGAGE INC.,
WDM FUND L.P., STEVE Y. KHOSHABE,
JOSEPH KHOSHABE AND JASON K.
SCHIFFMAN,

                  Defendants.

-------------------------------------------------------------x

## MEMORANDUM OF LAW OF INDIVIDUAL DEFENDANTS IN SUPPORT OF THEIR MOTION TO DISMISS OR IN THE ALTERNATIVE TO STAY THE CLAIMS AGAINST THEM

JACKSON LEWIS LLP
DIANE WINDHOLZ (DW 9806)
PETER C. MOSKOWITZ (PM 8845)
59 Maiden Lane
New York, NY 10038-4502
(212) 545-4000

JILL YONKERS
HODGSON RUSS LLP
One M& T Plaza, Suite 2000
Buffalo, New York 14203-2391
(716) 856-4000

ATTORNEYS FOR DEFENDANTS
STEVE Y. KHOSHABE,
JOSPEH KHOSHABE, AND
JASON K. SHIFFMAN

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii-iii

PRELIMINARY STATEMENT .............................................................................................. 1

JURISDICTIONAL FACTS AND PROCEDURAL HISTORY ................................................. 2
   1.  Plaintiffs' Arbitration Against UFMC. ........................................................................ 2
   2.  This Action. ............................................................................................................... 3

ARGUMENT ..................................................................................................................... 4

POINT I
      THE COURT SHOULD DISMISS THE COMPLAINT BECAUSE PLAINTIFFS
      HAVE NOT PLED ANY FACTS ESTABLISHING PERSONAL JURISDICTION
      OVER THE INDIVIDUAL DEFENDANTS. ............................................................... 4

POINT II
      THE COURT LACKS PERSONAL JURISDICTION OVER THE INDIVIDUAL
      DEFENDANTS. ......................................................................................................... 5

   A.  Plaintiffs Cannot Demonstrate That The Individual Defendants Are
      Subject To General Personal Jurisdiction In New York. ................................... 6

   B.  Plaintiffs Cannot Satisfy The Requirements Of New York's Long-Arm
      Statute To Establish Specific Jurisdiction Over The Individual Defendants. ................. 8

   C.  Even If The Court Found Personal Jurisdiction Over The Individual
      Defendants Under New York Law, The Exercise Of Such Jurisdiction Would
      Violate Due Process. ...................................................................................... 11

POINT III
      THE CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS SHOULD
      BE STAYED. ........................................................................................................... 12

CONCLUSION ................................................................................................................. 13

# <u>TABLE OF AUTHORITIES</u>

## FEDERAL CASES

<u>Page</u>

<u>Anchor v. Novartis Grimsby Ltd.</u>,
  05 Civ. 7S, 2006 WL 3419846 (W.D.N.Y. Nov. 27, 2006) ...........................................4

<u>Appalachian Enterprises, Inc. v. EPayment Solutions Ltd.</u>,
  01 Civ. 11502, 2004 U.S. Dist. LEXIS 24657 (S.D.N.Y. Dec. 8, 2004).........6, 7, 9, 10

<u>Aviles v. Kunkle</u>,
  978 F.2d 201 (5th Cir. 1992), <u>reh'g denied</u>, 1993 U.S. App. LEXIS 2362 (5th
  Cir. Jan. 28, 1993).............................................................................................................6

<u>Beatie v. Patriot Scientific Corp.</u>,
  431 F. Supp. 2d 367 (S.D.N.Y. 2006).........................................................4, 8, 9, 10, 11

<u>Black v. U.S.A. Travel Authority, Inc.</u>,
  99 Civ. 11278, 2001 U.S. Dist. LEXIS 9297 (S.D.N.Y. July 6, 2001) .........................7

<u>Clarke v. Fonix Corp.</u>,
  98 Civ. 6116, 1999 WL 105031 (S.D.N.Y. Mar. 1, 1999), <u>aff'd without
  opinion</u>, 199 F.3d 1321 (2d Cir. 1999) ...........................................................................4

<u>Cooper v. Parsky</u>,
  140 F.3d 433 (2d Cir. 1998)..............................................................................................4

<u>Hennigan v. Taser Int'l, Inc.</u>,
  00 Civ. 2981, 2001 U.S. Dist. LEXIS 1857 (S.D.N.Y. Feb. 6, 2001) ...........................5

<u>Hoffritz for Cutlery, Inc. v. Amajac, Ltd.</u>,
  763 F.2d 55 (2d Cir. 1985)................................................................................................7

<u>Ivoclar Vivadent, Inc. v. Ultident, Inc.</u>,
  04 Civ. 0984, 2005 WL 1421805 (W.D.N.Y. June 15, 2005) .........................................5

<u>Kreutter v. McFadden Oil Corp.</u>,
  71 N.Y.2d 460 (1988) .................................................................................................8, 9

<u>Landoil Resources Corp. v. Alexander & Alexander</u>,
  918 F.2d 1039 (2d Cir. 1990)............................................................................................7

<u>Laufer v. Ostrow</u>,
  55 N.Y.2d 305, 434 N.E.2d 692, 449 N.Y.S.2d 456 (1982)............................................7

McGowan v. Smith,
    52 N.Y.2d 268 (1981) ............................................................................................8

Merkel Associates, Inc. v. Bellofram Corp.,
    437 F. Supp. 612 (W.D.N.Y. 1977) ....................................................................6

Omni Capital International Ltd. v. Rudolf Wolff & Co., Ltd.,
    484 U.S. 97 (1987) ..............................................................................................6

Pro-Fac Cooperative, Inc. v. Alpha Nursery, Inc.,
    205 F. Supp. 2d 90 (W.D.N.Y. 2002) .................................................................6

State Street Bank v. Arganese,
    95 Civ. 0440, 95 Civ. 0442, 1996 U.S. Dist. LEXIS 2606 (S.D.N.Y. Mar. 5,
    1996) ..........................................................................................................9, 10, 11

Tauza v. Susquehanna Coal Co.,
    220 N.Y. 259 (1917) ...........................................................................................7

Tyco Int'l Ltd. v. Walsh, 02 Civ. 4633, 2003 U.S. Dist. LEXS 2670 ................................7

World-Wide Volkswagen Corp. v. Woodson,
    444 U.S. 286 (1980) ...........................................................................................11

## FEDERAL STATUTES

Fed. R. Civ. P. 12(b)(2) .................................................................................................1, 13

## PRELIMINARY STATEMENT

Defendants, Steve Y. Khoshabe, Joseph Khoshabe, and Jason K. Schiffman (collectively the "Individual Defendants") respectfully submit this Memorandum of Law in support of their motion to: (1) dismiss the claims against them, pursuant to Fed. R. Civ. P. 12(b)(2), for lack of personal jurisdiction; or (2) in the alternative, stay the claims against them pending the resolution of an arbitration against the Individual Defendants' former employer in which Plaintiffs allege the same claims asserted herein against the Individual Defendants.

In this putative class action, Plaintiffs seek unspecified monetary damages and equitable relief under the Fair Labor Standards Act of 1938 as amended (the "FLSA"), the New York State Labor Law, and the "laws of the various States in which defendants [sic] does business" against Arlie Opportunity Master Fund, LTD, ARH Mortgage Inc., WDM Fund, L.P. (the "Corporate Defendants"), [1] and the Individual Defendants. (Complaint ¶¶ 35-40).[2]

The claims against the Individual Defendants should be dismissed on the grounds that the Complaint is inadequately pled as it does not (and cannot) allege any nexus between the State of New York and the Individual Defendants. Plaintiffs undisputedly have the burden of pleading the basis for jurisdiction over the Individual Defendants. The Complaint, however, merely alleges that the Individual Defendants were officers of a non-party, out of state corporation, United Financial Mortgage Corp. ("UFMC"), without pleading any basis for jurisdiction. (See Complaint ¶¶ 16-18). Because Plaintiffs have failed to allege the basis of personal jurisdiction over the Individual Defendants, the claims against them must be dismissed as a matter of law.

---

[1]    On or about January 3, 2007, the Corporate Defendants moved to dismiss or stay Plaintiffs' claims against them on the basis of lack of personal jurisdiction or in the alternative that the claims are subject to arbitration.

[2]    A copy of the Complaint is attached to the Declaration of Diane Windholz, Esq. ("Windholz Decl."), submitted herewith, as Exhibit "A."

In addition to acknowledging that the Individual Defendants are located outside of New York State, the Complaint fails to allege any tortious act committed by the Individual Defendants in New York or experienced in New York. Under these circumstances, neither general jurisdiction under C.P.L.R. 301 nor long-arm jurisdiction under C.P.L.R. 302 is present, and the Individual Defendants should be dismissed from this action.

Alternatively, this action should be stayed pending the resolution of the arbitration Plaintiffs are presently pursuing against the Individual Defendants' former employer, UFMC. The claims asserted herein are the exact same claims asserted by the claimants in the arbitration pending against UFMC. Consequently, this action should be stayed to avoid unnecessary expenditure of judicial resources. It would be entirely superfluous to litigate the same claims in two forums. Plaintiffs will not be prejudiced by such a stay.

## JURISDICTIONAL FACTS AND PROCEDURAL HISTORY

1.    Plaintiffs' Arbitration Against UFMC.

On February 15, 2005, in this Court, many of the same plaintiffs, represented by the same attorneys as in this action, commenced a class action solely against UFMC, entitled McKenzie v. United Financial Mortgage Company, 6:05-CV-06067-DGL-MWP, in which the plaintiffs alleged that defendant UFMC failed to pay them overtime. (Windholz Decl. ¶ 3).

On April 22, 2005, defendant UFMC filed its Answer in which it denied liability, and among its affirmative defenses asserted that the action was subject to mandatory arbitration. Thereafter, on August 30, 2005, UFMC moved to stay or dismiss the first lawsuit in favor of arbitration. In response to UFMC's motion to dismiss or stay on October 27, 2005, the plaintiffs moved to submit their claim to arbitration before a private arbitration company, JAMS, (the "UFMC Arbitration"). (Windholz Decl. ¶¶ 4-5).

On October 31, 2005, the Court issued an Order staying <u>McKenzie v. United</u>
<u>Financial Mortgage Company</u>, pending the outcome of the UFMC Arbitration.  On or about
October 6, 2006, the claimants in the UFMC Arbitration filed a Second Amended Class Action
Complaint.[3]  The UFMC Arbitration, which is being pursued by the same individuals as in this
case and seeks the same collective relief under the FLSA and class action certification under
Rule 23 that the Plaintiffs seek in this case, is ongoing.[4]  (Windholz Decl. ¶¶ 6-9). Specifically,
by decision dated November 20, 2006, the Arbitrator in the UFMC Arbitration granted the
claimants' conditional certification of their FLSA collective action and the claimants have sent
notice to potential members of that collective action.[5]  (Windholz Decl. ¶¶ 10).

    2.    <u>This Action.</u>

On or about September 26, 2006, notwithstanding the Arbitration pending against
UFMC, Plaintiffs commenced this action.

With respect to the Individual Defendants, the Complaint alleges that Plaintiffs
were the "employees" of "United Financial Mortgage Company," a non-party to this action and
that "defendants" allegedly failed to pay plaintiffs "overtime" for six years, allegedly in
contravention of the FLSA and the laws of New York and other unidentified states.  (Complaint
¶¶ 4, 25-40).  Then, in a wholly conclusory manner, Plaintiffs allege that "upon information and
belief, defendants Steve Y. Khoshabe, Joseph Khoshabe and Jason K. Schiffman are employers
of the plaintiffs."  (Complaint ¶ 22).

The Complaint lacks any jurisdictional allegations connecting the Individual
Defendants to the State of New York.  As detailed below, this omission is fatal because New

---

[3]    A copy of the Second Amended Class Action Complaint is attached to the Windholz Decl. as Exhibit "B."
[4]    All nine of the named claimants in the UFMC Arbitration are also named Plaintiffs in this action.
[5]    The Arbitrator's Order also denied claimants' request for certification of a Rule 23 class action on their
state law claims at this time.  A copy of the Arbitrator's Order is attached to the Windholz Decl. as Exhibit "C."

York law requires that Plaintiffs make a *prima facie* showing of personal jurisdiction in their Complaint.

## ARGUMENT

## POINT I

## THE COURT SHOULD DISMISS THE COMPLAINT BECAUSE PLAINTIFFS HAVE NOT PLED ANY FACTS ESTABLISHING PERSONAL JURISDICTION OVER THE INDIVIDUAL DEFENDANTS.

Plaintiffs' Complaint is deficient and should be dismissed as a matter of law against the Individual Defendants because it is devoid of any jurisdictional allegations or basis to bring the Individual Defendants into this Court. This deficiency is fatal because it is well settled that Plaintiffs have the burden of pleading allegations sufficient to make out a *prima facie* case of personal jurisdiction. Beatie v. Patriot Scientific Corp., 431 F. Supp. 2d 367, 386 (S.D.N.Y. 2006). When challenged with a motion to dismiss pursuant to Rule 12(b)(2), the plaintiff must demonstrate that the court has personal jurisdiction over the defendant. Anchor v. Novartis Grimsby Ltd., 05 Civ. 7S, 2006 WL 3419846, at *1 (W.D.N.Y. Nov. 27, 2006).[6] Personal jurisdiction must be proven by a preponderance of the evidence at an evidentiary hearing or trial, or by the pleadings and supporting affidavits. Beatie, 431 F. Supp. 2d at 386.

"A complaint must allege facts in support of personal jurisdiction, not merely conclusions." Clarke v. Fonix Corp., 98 Civ. 6116, 1999 WL 105031, at *7 n. 12 (S.D.N.Y. Mar. 1, 1999), aff'd without opinion, 199 F.3d 1321 (2d Cir. 1999). Indeed, bald assertions and conclusions of law are insufficient. Cooper v. Parsky, 140 F.3d 433, 440 (2d Cir. 1998) (affirming dismissal of claim against defendant directors because directors were not present in New York and complaint was insufficient to permit exercise of long-arm jurisdiction).

---

[6]     Copies of all unreported decisions cited herein are attached hereto as Exhibit "A."

In this case, Plaintiffs have failed to plead any facts establishing personal jurisdiction over the Individual Defendants. Indeed, the Complaint contains no allegations particular to the Individual Defendants, other than stating that the Individual Defendants were officers of UFMC.[7]

Rather, the Complaint joins all defendants together and alleges upon information and belief that they "are alter egos of each other and of United Financial," and that the Individual Defendants were the "employers" of Plaintiffs. These allegations, however, are insufficient to confer personal jurisdiction because "vague and generalized allegations […] are insufficient to make a prima facie showing of jurisdiction over an out-of-state defendant." Hennigan v. Taser Int'l, Inc., 00 Civ. 2981, 2001 U.S. Dist. LEXIS 1857, at *7 (S.D.N.Y. Feb. 6, 2001); Ivoclar Vivadent, Inc. v. Ultident, Inc., 04 Civ. 0984, 2005 WL 1421805, at *5 (W.D.N.Y. June 15, 2005). Indeed, all that can be inferred from the Complaint is that the Individual Defendants were officers of UFMC, an Illinois Corporation with its principal place of business in Illinois. Neither of these facts are remotely sufficient to confer the jurisdiction of this Court over the Individual Defendants.

## POINT II

## THE COURT LACKS PERSONAL JURISDICTION OVER THE INDIVIDUAL DEFENDANTS.

Should the Court, despite the lack of any jurisdictional allegations in the Complaint concerning the Individual Defendants, decide to evaluate the issue of jurisdiction the Individual Defendants' motion to dismiss for lack of personal jurisdiction should still be granted. Where subject matter jurisdiction is premised on federal question jurisdiction, a court may only exercise personal jurisdiction where plaintiffs can satisfy the requirements of the forum state.

---

[7]     The Complaint also fails to allege that venue is proper within this District.

Omni Capital Int'l Ltd. v. Rudolf Wolff & Co., Ltd., 484 U.S. 97, 104 (1987); Pro-Fac Coop., Inc. v. Alpha Nursery, Inc., 205 F. Supp. 2d 90, 96 (W.D.N.Y. 2002) (in a federal question case where a defendant resides outside the forum state, the court "applies the forum state's personal jurisdiction rules, unless a federal statute specifically provides for national service of process.").

Here, Plaintiffs apparently base federal question jurisdiction upon the FLSA, a statute that does not authorize nationwide service of process. Aviles v. Kunkle, 978 F.2d 201, 204 (5th Cir. 1992), reh'g denied, 1993 U.S. App. LEXIS 2362 (5th Cir. Jan. 28, 1993). Therefore, Plaintiffs must meet the requirements of the New York jurisdiction statutes. New York statutes provide two types of jurisdiction that a court may use to exercise personal jurisdiction over a defendant: general and specific – neither of which exist here. Specifically, as detailed below, because there are no facts supporting personal jurisdiction over the Individual Defendants, pursuant to C.P.L.R. § 301 or long-arm jurisdiction under C.P.L.R. § 302(a), the Complaint should be dismissed as a matter of law. See Merkel Assocs., Inc. v. Bellofram Corp., 437 F. Supp. 612, 616 (W.D.N.Y. 1977) (as it is "plaintiffs who seek to […] obtain jurisdiction over the persons of defendants, it is they who must prove sufficiently the existence of facts lending themselves to personal jurisdiction over the defendants.")

A.    **Plaintiffs Cannot Demonstrate That The Individual Defendants Are Subject To General Personal Jurisdiction In New York.**

Due to their complete lack of contacts with the State of New York, the Individual Defendants are not subject to general personal jurisdiction in New York. A court may exercise general jurisdiction over a foreign corporation under C.P.L.R. § 301 when such corporation is "doing business" in the state. Appalachian Enters, Inc. v. EPayment Solutions Ltd., 01 Civ. 11502, 2004 U.S. Dist. LEXIS 24657, at **8-9 (S.D.N.Y. Dec. 8, 2004). To meet this standard, a corporation must conduct business with "a fair measure of permanence and continuity" and not

merely "occasionally or casually." Id., at *9; Hoffritz for Cutlery, Inc. v. Amajac, Ltd., 763 F.2d 55, 58 (2d Cir. 1985) (quoting Tauza v. Susquehanna Coal Co., 220 N.Y. 259 (1917)).  Courts consider various factors when determining whether a company is conducting business on a continual basis in New York, including: (1) the existence of New York office; (2) solicitation of business in New York; (3) corporate bank accounts or other properties located within the state; and (4) the presence of corporate employees or agents in New York.  Landoil Resources Corp. v. Alexander & Alexander, 918 F.2d 1039, 1043 (2d Cir. 1990).

Whether § 301 applies to individuals, in addition to corporations, is unresolved under New York law.  Hoffritz, 763 F.2d at 58.  "Even assuming it does apply with regard to natural persons, the plaintiff must still establish that the defendant conducted business in New York as an individual and not simply as a corporate officer."  Appalachian Enters., 2004 U.S. Dist. LEXIS 24657, at *9 (finding no personal jurisdiction under § 301 because plaintiff failed to demonstrate that defendants conducted their own individual business, maintained an office, solicited business, had employees or agents, or possessed a bank account or other real or personal property in the State of New York); see also, Tyco Int'l Ltd. v. Walsh, 02 Civ. 4633, 2003 U.S. Dist. LEXIS 2670, at **8-9 (S.D.N.Y. Feb. 28, 2003)(citing Laufer v. Ostrow, 55 N.Y.2d 305, 434 N.E.2d 692, 449 N.Y.S.2d 456 (1982)); Black v. U.S.A. Travel Auth., Inc., 99 Civ. 11278, 2001 U.S. Dist. LEXIS 9297, at *4 (S.D.N.Y. July 6, 2001).

Here, general personal jurisdiction does not lie over the Individual Defendants because the Individual Defendants are not "doing business" in New York.  The Individual Defendants do not in their individual capacities solicit business or have offices or employees working in the State, and they do not maintain bank accounts or real property here.  (See Declaration of Steve Y. Khoshabe ¶¶ 2-8, Declaration of Joseph Khoshabe ¶¶ 2-12, and

Declaration of Jason K. Schiffman ¶¶ 2-8) [8].  Moreover, there are no allegations in the Complaint to the contrary.  Accordingly, Plaintiffs cannot demonstrate that the Individual Defendants are subject to general personal jurisdiction in New York.

**B.      Plaintiffs Cannot Satisfy The Requirements Of New York's Long-Arm Statute To Establish Specific Jurisdiction Over The Individual Defendants.**

"C.P.L.R. § 302(a)(1) [only] allows a court to exercise specific jurisdiction over a non-domiciliary who, in person or through an agent, transacts any business within the state." Beatie, 431 F. Supp. 2d at 387.  "A non-domiciliary transacts business when he purposefully avails himself of the privilege of conducting activities within New York, thus invoking the benefits and protections of its laws."  Id.  Courts consider the totality of circumstances to determine whether the defendant has engaged in purposeful activity.  Id.  Some of the factors considered are whether there is an on-going contractual relationship with a New York corporation and whether the contract was negotiated or executed in New York.  Id.

Even if a defendant "transacts business" in New York, specific jurisdiction is only proper if the plaintiff's cause of action "arises from" the defendant's New York contacts.  Id. "A transaction 'arises from' a defendant's New York contacts if the contacts are substantially proximate to the allegedly unlawful acts."  Id. at 387-88.  Therefore, the foreign defendant's New York transaction must bear a substantial relationship to the transaction from which the cause of action stems.  Id.; McGowan v. Smith, 52 N.Y.2d 268, 272 (1981).

Under New York law, jurisdiction over one entity may, under circumstances not present here, be imputed to other entities under C.P.L.R. § 302.  Beatie, 431 F. Supp. 2d at 489; Kreutter v. McFadden Oil Corp., 71 N.Y.2d 460, 470-71 (1988).  A corporation, for example, may serve as the agent of a corporate officer, thereby subjecting the officer to personal

---

[8] The Declarations of Steve Y. Khoshabe, Joseph Khoshabe, and Jason K. Schiffman are submitted herewith.

jurisdiction.  Id.  It remains necessary, however, to demonstrate that some form of long-arm jurisdiction may be exercised over the corporate defendant before anything may be imputed to a corporate officer.  Id.  Moreover, in order to establish such an agency relationship between a corporation and a corporate officer, the plaintiff must prove that: (1) the corporation's activities were conducted for the benefit of the officer; (2) the officer had knowledge of the corporation's activities and consented to them; and (3) the officer exercised some control over the corporation in the matter.  Id.  Accordingly, jurisdiction only lies over out-of-state individual defendants who are primary actors in a New York transaction that is the subject of the lawsuit, not out-of-state corporate employees who played no part in it.  Id.

In Beatie, 431 F. Supp. 2d 367, the plaintiff law firm brought suit to collect unpaid legal fees against a former client corporation and its Chief Financial Officer and Chief Executive Officer.  The officers moved to dismiss the complaint for lack of personal jurisdiction on the basis that they had minimum connection to the subject retainer agreement and subsequent dealings between the law firm and defendant corporation.  The court granted the officers' motions, finding that although they had knowledge of and consented to the retainer agreement by negotiating its terms, neither the complaint nor supporting affidavits suggested that the retainer was executed for the benefit of the officers.  Id. at 390.

In Appalachian Enters, 2004 U.S. Dist. LEXIS 24657, the court dismissed the complaint because the plaintiff failed to produce any evidence to show that the moving defendants engaged in purposeful activity in New York.  The court held that because the movants were not signatories to the contract which was the basis of the action, the court could not invoke long-arm jurisdiction over them.  Id. at *15-16.

Likewise, in <u>State Street Bank v. Arganese</u>, 95 Civ. 0440, 95 Civ. 0442, 1996 U.S. Dist. LEXIS 2606 (S.D.N.Y. Mar. 5, 1996), the court found that although the defendants' attorney-in-fact entered into and negotiated agreements on behalf of the defendants, there was no showing by plaintiff that the defendants knew that these activities would take place in New York. Therefore, the court held that there was no purposeful availment by the moving defendant to invoke personal jurisdiction under C.P.L.R. § 302. <u>Id.</u> at *6-7.

In this case, like in <u>Beatie</u>, <u>Appalachian Enterprises</u>, and <u>State Street Bank</u>, Plaintiffs' Complaint is insufficient to support a finding of personal jurisdiction. Plaintiffs have not pled wrongful activity by UFMC in the State of New York that may be imputed to the Individual Defendants. Moreover, even assuming that Plaintiffs could demonstrate the existence of such wrongful activity in New York that may be imputed to the Individual Defendants, Plaintiffs cannot establish the remaining elements of long-arm jurisdiction required to impute UFMC's activities to the Individual Defendants. Specifically, there is no allegation and no evidence that UFMC's alleged wrongful payroll policies and practices were conducted for the benefit of the Individual Defendants, nor is there any allegation or proof that the Individual Defendants had knowledge of, consented to, or executed control over UFMC's payroll practices and policies. (<u>See</u> Declaration of Steve Y. Khoshabe ¶¶ 2-8, Declaration of Joseph Khoshabe ¶¶ 2-12, and Declaration of Jason K. Schiffman ¶¶ 2-8 ).

All that can be inferred from the facts as pled is that the Individual Defendants were officers of a Illinois company which has its principal place of business in Illinois. Accordingly, the jurisdictional allegations in the Complaint against the Individual Defendants do not satisfy New York's long-arm statute.

C.    **Even If The Court Found Personal Jurisdiction Over The Individual Defendants Under New York Law, The Exercise Of Such Jurisdiction Would Violate Due Process.**

Even if the Court finds personal jurisdiction over the Individual Defendants, either under § 301 or § 302, the exercise of jurisdiction over them would violate due process. After a court finds that personal jurisdiction exists, it must still decide whether the defendant's minimum contacts with the forum state are sufficient to satisfy notions of fair play and substantial justice.  World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291 (1980); Beattie, 431 F. Supp. 2d at 386.  Various factors are considered by courts in making this determination including: (1) the burden on the defendant, (2) the interests of the forum state, (3) the plaintiff's interest in obtaining relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies.  State Street Bank, 1996 U.S. Dist. LEXIS 2606, at *7.

In this case, notions of fair play and substantial justice would not be met by exercising jurisdiction over the Individual Defendants in New York because: (1) it would be unduly burdensome for the Individual Defendants to litigate the claims against them in New York; (2) New York's interests in litigating this matter are no greater than that of any other state in which UFMC does business; (3) the Plaintiffs' interests in obtaining relief are not implicated because the Plaintiffs can litigate their claims in Illinois, where the Individual Defendants' reside and UFMC maintains its principal place of business; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies weighs in favor of jurisdiction in a single forum, but not necessarily in New York; and (5) the shared interest of the several states in furthering fundamental substantial social policies adds no weight to the exercise of jurisdiction in

New York.  Accordingly, the exercise of personal jurisdiction over the Individual Defendants would violate due process.

## POINT III

## THE CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS SHOULD BE STAYED.

If the claims against the Individual Defendants are not dismissed for lack of personal jurisdiction, such claims should be stayed pending the adjudication of Plaintiffs' Arbitration against UFMC.  There is no reason the claims against the Individual Defendants should go forward in this action when the exact same claims are presently being pursued in the Arbitration against UFMC.

Specifically, the named claimants in the UFMC Arbitration are also Plaintiffs in this putative class action.  Furthermore, Plaintiffs in this action have asserted the same claims under the FLSA and state labor laws seeking the same relief as the claimants asserted in the UFMC Arbitration.  Since the Plaintiffs have the same claims pending against UFMC (the Individual Defendants' former employer), staying this action would not prejudice Plaintiffs, as they can obtain all the relief they seek against UFMC.  If Plaintiffs prevail and are unable to satisfy a judgment against UFMC, they can apply at that time to lift the stay in this action.  To permit the claims in this action to go forward against the Individual Defendants would constitute an unnecessary waste of scarce judicial resources and should not be permitted.

Accordingly, this Court should stay Plaintiffs' claims against the Individual Defendants pending the resolution of the UFMC Arbitration.

## <u>CONCLUSION</u>

For the foregoing reasons, the Individual Defendants respectfully request that the Court dismiss the claims against them for lack of personal jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(2), or, in the alternative, stay the claims against them pending the resolution of the UFMC Arbitration.

Dated: January 22, 2007          Respectfully submitted,
      New York, New York

By:      s/Diane Windholz
         Diane Windholz
         *WindholD@JacksonLewis.com*
         Peter C. Moskowitz
         *MoskowiP@jacksonlewis.com*
         **JACKSON LEWIS LLP**
         59 Maiden Lane
         New York, New York 10038-4502
         (212) 545-4000

By:      s/Jill L. Yonkers
         Jill L. Yonkers
         *jyonkers@hodgsonruss.com*
         **HODGSON RUSS LLP**
         One M& T Plaza, Suite 2000
         Buffalo, New York 14203-2391
         (716) 856-4000

         ATTORNEYS FOR DEFENDANTS
         STEVE Y. KHOSHABE,
         JOSPEH KHOSHABE, AND
         JASON K. SHIFFMAN

**EXHIBIT A**

Westlaw.

Slip Copy                                                                 Page 1
Slip Copy, 2006 WL 3419846 (W.D.N.Y.)
(Cite as: 2006 WL 3419846 (W.D.N.Y.))

C

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
W.D. New York
Jeffrey ANCHOR, et al., Plaintiffs,
v.
NOVARTIS GRIMSBY LTD., Novartis Int'l
Pharmaceuticals Ltd. and Novartis Pharma
AG, Defendants.
**No. 05-CV-7S.**

Nov. 27, 2006

Alan J. Knauf, Linda Radko Shaw, Knauf Shaw LLP,
Rochester, NY, for Plaintiffs.

Grant Esposito, Morrison & Foerster LLP, New York,
NY, for Defendants.

**DECISION AND ORDER**

WILLIAM M. SKRETNY, District Judge.

**I. INTRODUCTION**

*1 Plaintiffs in this action are from Holley, N.Y.,
where, on January 5, 2002, an explosion at the Diaz
Chemical Corporation ("Diaz") facility resulted in the
release of toxic chemicals into the air. Defendants
Novartis Grimsby Ltd. ("Grimsby"), Novartis Int'l
Pharmaceuticals Ltd. ("NIP") and Novartis Pharma
AG ("Pharma") are foreign corporations that are
allegedly liable for the environmental contamination
caused by the explosion. Plaintiffs seek redress for
personal injury, property damage and response costs
pursuant to the Comprehensive Environmental
Response, Compensation, and Liability Act of 1980,
as amended, 42 U.S.C. § 9601 et seq ("CERCLA"),
as well as various state common law and equitable
theories, including negligence, private and public
nuisance, and strict liability (Amended Complaint, ¶
6.)

Presently before this Court is Defendants' Motion to
Dismiss Plaintiffs' Amended Complaint for lack of
personal jurisdiction pursuant to Rule 12(b)(2) of the
Federal Rules of Civil Procedure, and for failure to
state a claim upon which relief may be granted

pursuant to Rule 12(b)(6). For the reasons set forth
below, this Court finds that Plaintiffs have failed to
establish that this Court has personal jurisdiction over
the foreign defendants in this action. Defendants'
Motion to Dismiss on jurisdictional grounds will
therefore be granted.

**II. BACKGROUND**
**A. Standard of Review: Rule 12(b)(2)**

When challenged with a motion to dismiss pursuant
to Rule 12(b)(2), the plaintiff bears the burden of
establishing that the court has personal jurisdiction
over the defendant. See In re Magnetic Audiotape
Antitrust Litig., 334 F.3d 204, 206 (2d Cir.2003) (per
curiam); Robinson v. Overseas Military Sales Corp.,
21 F.3d 502, 507 (2d Cir.1994). If the court relies on
pleadings and affidavits, rather than a full evidentiary
hearing, to resolve the motion, the plaintiff need make
only a prima facie showing of personal jurisdiction to
carry its burden. See Distefano v. Carozzi N. Am., Inc.,
286 F.3d 81, 84 (2d Cir.2001); Bank Brussels Lambert
v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 784
(2d Cir.1999) (citing Marine Midland Bank v. Miller,
664 F.2d 899, 904 (2d Cir.1981)); Langenberg v.
Sofair, No. 03 CV 8339, 2006 WL 2628348, at *2
(S.D.N.Y. Sep. 11, 2006).

In determining whether the plaintiff has made this
showing, the court is not obligated to draw
"argumentative inferences" in the plaintiff's favor.
Robinson, 21 F.3d at 507 (citing Atl. Mut. Ins. Co. v.
Balfour Maclaine Int'l Ltd., 968 F.2d 196, 198 (2d
Cir .1992)). However, the pleadings and affidavits,
and all doubts arising therefrom, are construed in the
light most favorable to the plaintiff. See CutCo Indus.,
Inc. v. Naughton, 806 F.2d 361, 365 (2d Cir.1986).
The facts below are drawn from the Amended
Complaint and the declarations filed in support of
Defendants' Rule 12(b)(2) motion. See Langenberg,
2006 WL 2628348, at *5 ("courts are authorized to
rely on affidavits submitted by the parties in deciding
a Rule 12(b)(2) motion to dismiss")

**B. Facts**

1. Parties

*2 There are approximately 144 plaintiffs in this
action. Many of the plaintiffs have brought suit
individually and as parents or guardians of minor

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

children. All of the plaintiffs are current or former residents of Holley, N.Y., or are real property owners who have been negatively impacted by the January 5, 2002 explosion at the Diaz facility (Amended Complaint, ¶ 2.)

Each of the three defendants is a foreign entity: Grimsby is a British corporation; NIP is an Irish corporation; Pharma is a Swiss corporation (Amended Complaint, ¶ ¶ 9-11.) None of the defendants are incorporated in New York or licensed, registered or authorized to do business in New York (Bantle Decl., ¶ 3-4; O'Gara Decl., ¶ 3, 4; Clarkson Decl., ¶ ¶ 3, 4.) None of the defendants, have offices, agents or bank accounts in New York, nor do they have officers or employees located in New York. (Bantle Decl., ¶ 5; O'Gara Decl., ¶ 5; Clarkson Decl., ¶ 5.)

**2. The Explosion at the Diaz Facility**

The Diaz facility manufactured specialty chemicals for use in agricultural and pharmaceutical industries (Amended Complaint, ¶ 104.) On January 5, 2002, at approximately 10:45 p.m., an explosion occurred during the manufacturing of 2- chloro-6 fluorophenol ("CFP"). (Amended Complaint, ¶ 125.) Hot chemicals in a chemical process tank exploded through a rupture disk, resulting in the release into the atmosphere of various hazardous liquid and vapor substances, including CFP, 2,4-dichloro-6 fluorophenol, and toluene (Amended Complaint, ¶ 125.) Fumes and odors from the explosion permeated the Village of Holley and other areas as far as 12 miles away. (Amended Complaint, ¶ 127.) Corrosive chemicals coated vehicles, houses and other surfaces. (Amended Complaint, ¶ 126.) Many of the plaintiffs called 911 to report the explosion and odor, as well as burning in their eyes. (Amended Complaint, ¶ 128.) Many of the plaintiffs were forced from their homes. (Amended Complaint, ¶ 130.)

The toxic chemicals released during the explosion dissipated very slowly. (Amended Complaint, ¶ 131.) The chemicals were eventually absorbed by materials in the Village of Holley and on Plaintiffs' properties, including trees, plants, siding, roofs, furniture, clothes, draperies and bedding. (Amended Complaint, ¶ 131.) Moreover, Plaintiffs have inhaled, ingested and absorbed the toxic chemicals into their bodies, and have suffered severe headaches, nausea, vomiting, constriction of the throat and chest, difficulty breathing, bloody nasal discharges, skin burns and irritation, kidney pain and other physical ailments. (Amended Complaint, ¶ 135.)

Plaintiffs allege that the Diaz facility lacked adequate safety and environmental controls for the chemical processes it conducted, particularly for the production of CFP. (Amended Complaint, ¶ 108.) For example, they assert that the facility's rupture disks were improperly designed to release process chemicals into the ambient air when pressure built up inside a process tank or system (Amended Complaint, ¶ ¶ 108-109.)

**3. Defendants' Relationship with Diaz**

*3 In their Amended Complaint, Plaintiffs allege that in 2000, Diaz began participating in a "program" established by Defendants to produce CFP for use in a new pharmaceutical drug (Amended Complaint, ¶ 111.) Defendants allegedly provided Diaz confidential technical specifications and other information concerning CFP so that Diaz could develop a production process for the chemical. (Amended Complaint, ¶ 112.) Plaintiffs allege that Defendants knew that the manufacturing of CFP was dangerous and Defendants even warned Diaz that the chemical was corrosive and that its release into the environment should be avoided (Amended Complaint, ¶ 113.)

Nonetheless, Diaz began efforts to produce CFP, allegedly at Defendants' direction and using the technical specifications and other information provided by Defendants (Amended Complaint, ¶ 114.) Plaintiffs contend that Diaz relied on Defendants to provide day-to-day advice on the manufacture of CFP. (Amended Complaint, ¶ 119.) Plaintiffs further allege that just prior to the explosion, Diaz notified Defendants that it was having difficulty producing CFP, and it invited Defendants to the Diaz facility (Amended Complaint, ¶ 120.) Defendants did not act on this invitation.

According to the affidavits submitted in support of the present motion, Defendants' relationship with Diaz began in May of 1999, when Pharma was seeking suppliers of CFP for use in the manufacture of coxacamide, which is the active ingredient in a pharmaceutical product that Pharma was preparing to launch (Bantle Decl., ¶ 7.) Pharma was successful in identifying three potential suppliers, one each from the United States, China and the United Kingdom (Bantle Decl., ¶ 7.) Each of the potential suppliers manufactured CFP differently and according to their own specific methods. (Bantle Decl., ¶ 7.) Pharma entered into confidentiality agreements with each of these potential suppliers (Bantle Decl., ¶ ¶ 7, 9.)

Diaz, which is not a defendant in this action, was the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works

Slip Copy
Slip Copy, 2006 WL 3419846 (W.D.N.Y.)
**(Cite as: 2006 WL 3419846 (W.D.N.Y.))**

Page 3

potential supplier located in the United States. (Bantle Decl., ¶ 7.) Between January of 2000 and May of 2002, representatives from Defendants and Diaz discussed whether Diaz could be a suitable supplier of CFP for Pharma. (Bantle Decl., ¶¶ 8, 10; O'Gara Decl., ¶ 10; Stephenson Decl., ¶ 4.) Defendants' representatives remained outside of the United States during these discussions, communicating with Diaz's representatives via telephone, fax and email. (Bantle Decl., ¶ 8; O'Gara Decl., ¶ 10; Stephenson Decl., ¶ 6.)

After the explosion, Defendants were informed that there had been a release at the Diaz facility during Diaz's attempt to manufacture CFP, and that Diaz would not be a CFP supplier. (Bantle Decl., ¶ 12; O'Gara Decl., ¶ 11.) Thus, Defendants never purchased or entered into any agreement to purchase CFP from Diaz. (Bantle Decl., ¶ 13; O'Gara Decl., ¶ 11.) Defendants eventually acquired CFP from the suppliers in China and the United Kingdom (Bantle Decl., ¶ 13; O'Gara Decl., ¶ 15.)

*4 Defendants maintain that none of their employees ever visited or worked at the Diaz facility (Bantle Decl., ¶¶ 8, 11; O'Gara Decl., ¶ 12; Clarkson Decl., ¶ 10; Stephenson Decl., ¶ 7.) Moreover, they assert that they did not have any ownership interest in the Diaz facility, nor did they ever manage or operate the facility. (Bantle Decl., ¶¶ 14, 15; O'Gara Decl., ¶¶ 13, 14; Clarkson Decl., ¶¶ 8, 9.) They further deny ever dictating how Diaz should comply with environmental regulations or implement safety procedures. (Bantle Decl., ¶ 15; O'Gara Decl., ¶ 14; Clarkson Decl., ¶ 9.)

**C. Procedural History**

This is the third federal action Plaintiffs have filed relative to the Diaz facility explosion. On May 15, 2002, approximately four months after the explosion, Plaintiffs sued Diaz in this Court. *See Jeffrey Anchor, et al v Diaz Chem Corp.,* No. 02-CV-357S That case was stayed on June 24, 2003, due to Diaz's filing of a bankruptcy petition. (Amended Complaint, ¶ 7.)

Plaintiffs then brought a second action in this Court on April 15, 2004, against Diaz Intermediates Corporation and other defendants. *See Jeffrey Anchor, et al v Diaz Intermediates Corp., et al,* No 04-CV-300S. That action remains pending.

Plaintiffs commenced the instant lawsuit on January 4, 2005, by filing a Complaint in the United States District Court for the Western District of New York. Plaintiffs filed an Amended Complaint on November

1, 2005 Defendants filed their Motion to Dismiss on May 19, 2006 After full briefing, this Court heard oral argument on the motion on November 17, 2006, and reserved decision at that time

### III. DISCUSSION

"Personal jurisdiction of a federal court over a non-resident defendant is governed by the law of the state in which the court sits--subject of course, to certain constitutional limits of due process." *Robinson, 21 F.3d at 510* (internal citations omitted) This is true in diversity cases and in federal question cases where the federal statute at issue does not provide for nationwide service of process *See Omni Capital Int'l v. Rudolph Wolff & Co.,* 484 U.S. 97, 104-05, 108 S.Ct. 404, 98 L.Ed.2d 415 (1987); *Pro-Fac Coop., Inc. v. Alpha Nursery, Inc.,* 205 F.Supp.2d 90, 96 (W.D.N.Y.2002) In this case, Plaintiff has invoked both this Court's diversity and federal question jurisdiction. (Amended Complaint, ¶¶ 146, 147.) Because CERCLA does not provide for nationwide service of process in private suits, this Court applies New York's jurisdictional statute, subject to the constraints of constitutional due process *See Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert,* 94 F.3d 586, 589 (9th Cir.1996) (finding that CERCLA § 9613 authorizes nationwide service of process only in actions brought by the United States, not private actions); *City of Bangor v. Citizens Commc'ns Co.,* No. Civ. 02-183, 2003 WL 22019525, at *1 (D.Me. Nov. 22, 2003) ("Congress did not provide, however, for private nationwide service of process except in CERCLA cases commenced by the United States.") (citing *Am. Tel. & Tel.,* 94 F.3d at 589); *Steego Corp. v. Ravenal,* 830 F.Supp. 42, 50 (D.Mass.1993) (accord)

*5 To determine whether personal jurisdiction over a defendant exists, the court engages in a two-part analysis *Bank Brussels,* 171 F.3d at 784 First, it must determine whether there is jurisdiction over the defendant under the relevant forum state's laws. *Metro. Life Ins. Co. v. Robertson-Ceco Corp.,* 84 F.3d 560, 567 (2d Cir.1996). If such personal jurisdiction exists, the court must then determine whether the exercise of jurisdiction complies with federal due process requirements *Id*

### A. New York's Long-Arm Statute

"Courts may assert two broad categories of jurisdiction over an individual action: specific jurisdiction, which arises when the defendant's activities in the forum are the subject of the action, and general jurisdiction, which arises out of a defendant's contacts with the forum even though those contacts

Slip Copy                                                                                          Page 4
Slip Copy, 2006 WL 3419846 (W.D.N.Y.)
**(Cite as: 2006 WL 3419846 (W.D.N.Y.))**

themselves are unrelated to the action before the court." *Langenberg,* 2006 WL 2628348, at *2 (citing *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,* 305 F.3d 120, 127 (2d Cir.2002) and *Commc'ns Partners Worldwide, Inc. v. Main St. Res.,* No. 04 Civ. 10003, 2005 WL 1765712, at *2 -*3 (S.D.N.Y. July 26, 2005))

New York law provides for both general and specific jurisdiction. The general jurisdiction of New York courts is codified at N.Y. C.P .L.R. § 301. *See Langenberg,* 2006 WL 2628348, at *2. Section 302 of the N.Y. C.P.L.R. is New York's long-arm statute, and it sets forth the requirements for the exercise of specific jurisdiction. *See id.* Here, Plaintiffs argue that this Court has personal jurisdiction over Defendants pursuant to the long-arm statute. They do not argue that general jurisdiction exists under N.Y. C.P.L.R. § 301.

New York's long-arm statute authorizes the exercise of personal jurisdiction over non-domiciliaries in certain circumstances. Plaintiffs assert that N.Y. C.P.L.R. § 302(a)(3)(ii) applies in this case. That section provides that

    (a) Acts which are the basis of jurisdiction. As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:

    (3) commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he

    ...

    (ii) expects or should reasonably expect that act to have consequences in the state and derives substantial revenue from interstate or international commerce.

    *See* N.Y. C.P.L.R. § 302(a)(3)(ii)

To establish jurisdiction under N.Y. C.P.L.R. § 302(a)(3)(ii), the plaintiff must sufficiently allege that (1) defendant performed a tortious act outside of New York, (2) the cause of action arises from that tortious act, (3) the alleged tortious act caused injury within New York, (4) defendant expected or reasonably should have expected that its action would have consequences in New York and (5) defendant derives 'substantial revenue from interstate or international commerce. *Ivoclar Vivadent, Inc. v. Ultident, Inc.,* No. 04-CV-984, 2005 WL 1421805, at *4 (W.D.N.Y. June 15, 2005) (citing N.Y. C.P.L.R. § 302(a)(3)); *Traver v.*

*Officine Meccaniche Toshci SPA,* 233 F.Supp.2d 404, 412 (N.D.N.Y.2002)

*6 Plaintiffs' allegations revolve around their central contention that Defendants conducted a "program" for the production of CFP. (*See, e.g.,* Amended Complaint, ¶ 111 (Diaz participated in the "program" established by [Defendants] ), ¶ 114 (Diaz began to participate in the "program" at Defendants' request); Plaintiffs' Memorandum of Law, p. 4 ("All of the causes of action in this case arise from the acts of defendants in selecting Diaz to participate in the Program ") However, according to the unrebutted declarations submitted by Defendants, it appears that what Plaintiffs characterize as a "program" was simply an effort by Defendants to secure a supplier of CFP. The declarations make clear that Diaz was one of three companies vying to manufacture CFP for sale to Defendants (Bantle Decl., ¶ 7.) In this regard, Defendants were potential customers for Diaz. If Diaz could supply CFP, Defendant would purchase it. Thus, Plaintiffs' characterization of this potential customer--supplier relationship as a "program" run by Defendants overstates Defendants' involvement with Diaz.

The idea that Defendants oversaw a "program" involving Diaz is further dispelled by the fact that Defendants never visited the Diaz facility, did not manage or operate the facility, and never instructed Diaz regarding how the facility should be run. (Bantle Decl., ¶¶ 8, 11, 14, 15; O'Gara Decl., ¶¶ 12- 14; Clarkson Decl., ¶¶ 8-10; Stephenson Decl., ¶¶ 7, 9.) Defendants' contacts with Diaz were limited to discussions concerning whether Diaz would be a suitable supplier of CFP, and Defendants conducted all of their discussions from outside of New York (Bantle Decl., ¶¶ 8, 10; O'Gara Decl., ¶ 10; Stephenson Decl., ¶¶ 4, 6.)

This Court is aware that Plaintiffs allege that Defendants managed, directed, and conducted operations at the Diaz facility and had an obligation to investigate Diaz and ensure that its facility operated safely. However, Plaintiffs have not provided any authority (and this Court could not locate any) for the proposition that Defendants had a legal duty to investigate Diaz's suitability as a potential supplier or a duty to manage Diaz's attempt to produce CFP. *Cf. Langenberg,* 2006 WL 2628348, at *3 (noting that although the plaintiff does not have to prove the defendant actually committed a tort, the allegations in the Complaint must set forth a "colorable cause of action").

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                      Page 5
Slip Copy, 2006 WL 3419846 (W.D.N.Y.)
**(Cite as: 2006 WL 3419846 (W.D.N.Y.))**

Moreover, Plaintiffs fail to counter the specific declarations submitted by Defendants that establish that they never in fact managed or operated the Diaz facility, never sent any of their employees to visit or work at the facility, and never dictated how Diaz should run its facility. (Bantle Decl., ¶¶ 8, 11, 14, 15; O'Gara Decl., ¶¶ 12-14; Clarkson Decl., ¶¶ 8-10; Stephenson Decl., ¶¶ 7, 9.) As noted in *Ivoclar*, "[a plaintiff's] unsupported allegations will be deemed refuted if plaintiff does not counter defendant's presentation of direct, highly specific, testimonial evidence regarding a fact essential to jurisdiction." *2005 WL 1421805, at \*2* (quotation and citation omitted). This Court therefore finds that Plaintiffs have not made a *prima facie* showing, for jurisdictional purposes, that Defendants committed a tortious act outside of New York.

\*7 Moreover, there is a significant disconnection between Defendants' interaction with Diaz and the explosion that caused Plaintiffs' injuries. According to the Amended Complaint, the explosion occurred because hot chemicals in a chemical process tank exploded through a rupture disk during the CFP manufacturing process (Amended Complaint, ¶ 125.) An incident report prepared by Diaz and submitted by Plaintiffs in opposition to Defendants' motion, indicates that the explosion was caused by human error or a failure in Diaz company policy. (Knauf Aff., Exhibit O.) In light of the unrebutted affidavits establishing that Defendants were wholly uninvolved in the operation of the Diaz facility or in the formulation of its policies, Plaintiffs have not made a sufficient showing that Defendants engaged in tortious conduct that caused Plaintiffs' injuries in New York.

Further, nothing in the record before this Court could reasonably be construed to support a finding that Defendants reasonably expected that their engagement of Diaz as a potential chemical supplier would subject them to tort liability in New York. Defendants sought out an existing chemical company (Diaz) to serve as a possible supplier of a certain chemical. Defendants' only intended role was to be a possible purchaser of goods from a New York business. The declarations establish that there was no legal or organizational relationship between Defendants and Diaz. And despite the discussions between them, Defendants never purchased or entered into any agreement to purchase CFP from Diaz. (Bantle Decl., ¶ 13; O'Gara Decl., ¶ 11.) In fact, Defendants eventually acquired CFP from the other suppliers located in China and the United Kingdom (Bantle Decl., ¶ 13; O'Gara Decl., ¶ 15.) It is therefore not objectively reasonable to conclude that

Defendants should have expected that their discussions with Diaz would subject them to tort liability in New York. [FN1]

> FN1. For the sake of completeness, this Court notes that Plaintiffs' allegations that Defendants derive substantial revenue from international commerce are sufficient to meet the final prong of the analysis (Amended Complaint, ¶¶ 9-11.)

Accordingly, this Court finds that it cannot lawfully exercise personal jurisdiction over Defendants under New York's long-arm statute.

**B. Due Process**

Even assuming that personal jurisdiction was permitted under New York's long-arm statute, "the Due Process Clause limits the exercise of jurisdiction to persons having certain 'minimum contacts' with the forum state." *Computer Assocs. Int'l, Inc. v. Altai, Inc., 126 F.3d 365, 370 (2d Cir.1997)* (citing *Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985)* and *Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)).* Consistent with due process, a court may exercise personal jurisdiction only over a defendant whose " 'conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there' " *Burger King, 471 U.S. at 474* (quoting *World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980))*

\*8 Thus, to justify the exercise of personal jurisdiction, there must be a showing of " 'some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.' " *Burger King, 471 U.S. at 475* (quoting *Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239-40, 2 L.Ed.2d 1283 (1958)).* This Court finds that Plaintiff has failed to make this requisite showing.

As previously noted, Defendants had virtually no contact with New York, other than telephone, fax, and email communications related to whether Diaz would be a suitable supplier of CFP. None of the three foreign-entity Defendants are incorporated in New York or licensed, registered or authorized to do business in New York. (Amended Complaint, ¶¶ 9-11; Bantle Decl., ¶¶ 3-4; O'Gara Decl., ¶¶ 3, 4; Clarkson Decl., ¶¶ 3, 4.) None of them have offices, agents or bank accounts in New York, nor do they

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works

Slip Copy                                                                                          Page 6
Slip Copy, 2006 WL 3419846 (W.D.N.Y.)
**(Cite as: 2006 WL 3419846 (W.D.N.Y.))**

have officers or employees located in New York. (Bantle Decl., ¶ 5; O'Gara Decl., ¶ 5; Clarkson Decl., ¶ 5.)

Defendants did not own, operate, manage, or run Diaz, nor did they instruct Diaz on issues relating to environmental regulations and safety procedures (Bantle Decl., ¶ ¶ 14, 15; O'Gara Decl., ¶ ¶ 13, 14; Clarkson Decl., ¶ ¶ 8, 9.) None of Defendants' employees ever visited or worked at the Diaz facility, and Defendants never purchased or agreed to purchase CFP from Diaz. (Bantle Decl., ¶ ¶ 8, 11, 13; O'Gara Decl., ¶ ¶ 11, 12; Clarkson Decl., ¶ 7.) Finally, Defendants do not manufacture, market, promote, sell or distribute any chemicals in New York. (Bantle Decl., ¶ 6; O'Gara Decl., ¶ ¶ 6, 7; Clarkson Decl., ¶ ¶ 6, 7.)

In the absence of even minimal contacts, such as here, this Court cannot exercise jurisdiction without violating Due Process. *See Langenberg, 2006 WL 2628348, at *6* (finding that the exercise of jurisdiction over a defendant with no contacts with the forum state violates the minimum contacts requirement of due process).

Moreover, Defendants' contacts with New York, which were limited to telephone, fax and email discussions, are simply not of the type that Defendants could reasonably be expected to anticipate being haled into court here. *Burger King, 471 U.S. at 474.* This is particularly so because Plaintiffs' causes of action do not stem from these contacts. Plaintiffs principally allege that Defendants failed in their alleged duty to investigate Diaz and ensure the safety of the facility. These allegations do not arise out of Defendants' contacts with New York, which were limited to providing Diaz with the technical specifications for CFP and determining whether Diaz could supply the chemical. Thus, Plaintiffs have failed to identify acts taken by Defendants from which it could reasonably be concluded that they purposely availed themselves of the privilege of conducting activities in New York, thereby invoking the benefits and protections of its laws. *See id. at 475.*

*9 Finally, this Court finds that under these circumstances, with Defendants hailing from England, Ireland and Switzerland, it would not be reasonable to exercise jurisdiction and compel them to defend tort allegations in New York. *See Asahi Metal Indus. Co. v. Superior Court of Cal., 480 U.S. 102, 114, 107 S.Ct. 1026, 1033, 94 L.Ed.2d 92 (1987)* (noting that "the unique burdens placed upon one who must defend oneself in a foreign legal system should have

significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders")

**C. Plaintiffs' Discovery Request**

Along with opposing Defendants' motion outright, Plaintiffs alternatively argue that they should be permitted additional time to engage in discovery on the jurisdictional issue. However, "[j]urisdictional discovery is appropriate where the plaintiff has made a sufficient start toward establishing jurisdiction and where it would not be a 'fishing expedition' when little more exists than plaintiff's bare assertions that jurisdiction is proper." *Ivoclar Vivadent, 2005 WL 1421805, at *5* (citing *Manhattan Life Ins. Co. v. A.J. Stratton Syndicate,* 731 F.Supp. 587, 593 (S.D.N.Y.1990)); *Langenberg, 2006 WL 2628348, at *6* ("where the plaintiff has failed to make out a *prima facie* case, courts have displayed an unwillingness to grant additional discovery on jurisdictional issues")

In this Court's view, Plaintiffs have made little, if any, progress in establishing jurisdiction. The declarations submitted by Defendants are unequivocal and deny any jurisdictionally meaningful contact with New York. Plaintiffs have submitted nothing in rebuttal, despite the benefit of having received some discovery in the two other cases brought against Diaz entities. Plaintiffs' request for jurisdictional discovery is therefore denied. *See Ivoclar Vivadent, 2005 WL 1421805, at *5* (denying request for jurisdictional discovery where the defendant submitted an affidavit that categorically denied that defendant had transacted business or had any other contacts with New York and answered all questions regarding jurisdiction); *Wafios Mach. Corp. v. Nucoil Indus. Co., No. 03 Civ. 9865, 2004 WL 1627168, at *5-*6 (S.D.N.Y. July 23, 2004)* (denying request for jurisdictional discovery related to a foreign defendant who provided an affidavit categorically denying contacts with New York)

**IV. CONCLUSION**
For the foregoing reasons, this Court finds that Plaintiffs' Amended Complaint must be dismissed for lack of personal jurisdiction. In light of this finding, this Court need not resolve Defendants' alternative arguments for dismissal. *See Gradinger v. Pioneer Life Ins. Co. No. 04 CV 1191, 2004 WL 1656576, at * 4 n. 5 (S.D.N.Y. July 22, 2004)*

**V. ORDERS**
IT HEREBY IS ORDERED, that Defendants' Motion to Dismiss (Docket No. 45) is GRANTED on jurisdictional grounds.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works

Slip Copy
Slip Copy, 2006 WL 3419846 (W.D.N.Y.)
**(Cite as: 2006 WL 3419846 (W.D.N.Y.))**

FURTHER, that Plaintiffs' alternative request for additional discovery is DENIED

**\*10** FURTHER, that the Clerk of the Court shall close this case

SO ORDERED

Slip Copy, 2006 WL 3419846 (W.D.N.Y.)

**Motions, Pleadings and Filings (Back to top)**

• 2005 WL 3309004 (Trial Pleading) Amended Complaint (Nov. 1, 2005)Original Image of this Document (PDF)

• 2005 WL 3309003 (Trial Motion, Memorandum and Affidavit) Defendant Novartis Ag's Memorandum of Law in Support of its Motion to Dismiss Plaintiff's Complaint (Oct. 31, 2005)Original Image of this Document (PDF)

• 2005 WL 2851431 (Trial Motion, Memorandum and Affidavit) Defendant Novartis Grimsby Limited's Reply Memorandum of Law in Further Support of Its Motion to Dismiss Plaintiffs' Complaint (Sep. 2, 2005)Original Image of this Document (PDF)

• 2005 WL 2912140 (Trial Motion, Memorandum and Affidavit) Memorandum of Law (Aug. 22, 2005)Original Image of this Document (PDF)

• 2005 WL 2402253 (Trial Motion, Memorandum and Affidavit) Defendant Novartis Grimsby Limited's Memorandum of Law in Support of its Motion to Dismiss Plaintiffs' Complaint (Jul. 22, 2005)Original Image of this Document (PDF)

• 2005 WL 475906 (Trial Pleading) Complaint (Jan. 4, 2005)Original Image of this Document (PDF)

• 1:05cv00007 (Docket) (Jan. 4, 2005)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works

LEXSEE 2004 U.S. DIST. LEXIS 24657



Caution
As of: Jan 22, 2007

**APPALACHIAN ENTERPRISES, INC., Plaintiff, -against- EPAYMENT SOLUTIONS LTD., EPAYMENT SOLUTIONS INC., EPAYMENT SOLUTIONS AVV, E COMMERCE SERVICE UK, LTD., SMARTCARDE.COM, BANKKEY.COM, TONY BROWN, JERZY JAN KAMINSKI, SHAUN LACEY, ANDREW MARTIN DAVIES, VICKI SAYER, SIMONE DAY, ANTHONY MORRIS, JASON FIELD, KATE MARTIN, CARL BRISTOW, and KATRINA DAVIES, Defendants.**

**01 CV 11502(GBD)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

**2004 U.S. Dist. LEXIS 24657**

**December 7, 2004, Decided**
**December 8, 2004, Filed**

**DISPOSITION:** [*1] Defendants's motion to dismiss complaint was granted.

**COUNSEL:** For Appalachian Enterprises, Inc., Plaintiff: Joel Robert Dichter, Klein, Zelman, Rothermel & Dichter LLP, New York, NY

For ePayment Solutions Inc., ePayment Solutions AVV, Defendants: Marc S. Koplik, Marc S. Koplik & Associates, New York, NY

**JUDGES:** GEORGE B. DANIELS, United States District Judge.

**OPINION BY:** GEORGE B. DANIELS

**OPINION:**

MEMORANDUM DECISION AND ORDER

GEORGE B. DANIELS, District Judge:

In an action based on diversity, plaintiff Appalachian Enterprises, Inc., a Delaware corporation, seeks monetary damages for, inter alia, fraudulent inducement and breach of contract. The complaint names seventeen defendants including both individual and corporate entities, as well as two websites. Defendants Jason Field, Kate Martin and E Commerce Service, UK, Ltd. ("E Commerce") are moving to dismiss the complaint on the grounds of lack of personal jurisdiction, failure to meet the pleading specificity requirements, and failure to state a claim upon which relief can be grant. n1 Their motion is granted.

n1 A joint amended answer was filed by three of the defendants, and no other defendant filed an answer. Two of the answering defendants were ePayment Solution AVV and Tony Brown. It is unclear whether the other defendant who answered is ePayment Solutions, Ltd. or ePayment Solutions, Inc. The document is entitled "AMENDED ANSWER OF DEFENDANT[] EPAYMENT SOLUTIONS, LTD." In the body of the amended answer, however, it refers to

Case 1:08-cv-02327    Document 24-3    Filed 01/23/2007    Page 10 of 46

Page 2
2004 U.S. Dist. LEXIS 24657, *1

ePayment Solution, Inc. as the party who is filing the answer. Since plaintiff concedes that the company ePayment Solution, Ltd. has already been dissolved, logic would dictate that the answering party is ePayment Solutions, Inc.

[*2]

The amended complaint alleges that the following six defendants are affiliated companies and are working under a unified front: ePayment Solutions Ltd., a United Kingdom corporation; ePayment Solution, Inc., a St. Kitts corporation; ePayment Solution AVV, an Aruban corporation; E Commerce, a United Kingdom corporation; and Smartcarde.com and Bankkey.com, two different internet websites of unknown corporate status. In the complaint, these six defendants are collectively referred to by plaintiff as "ePayment." The individuals named as defendants are all residents of England, and are alleged to be directors, officers, managers, supervisors or secretaries of ePayment. Plaintiff alleges that each act of the defendants, as well as their respective employees, agents and representatives, is chargeable and binding as to all defendants.

The "Statement of Facts" portion of the complaint, with one minor exception, refers to acts allegedly committed by the "Defendants." It states therein that plaintiff provides subscription internet services. "Defendants run a credit card processing company which arranges with banks for merchants to open accounts for the processing of credit card charges for [*3] retail sales." (Am. Compl. P27.) At defendant Tony Brown's urging, plaintiff entered into a written contract for such processing service. On plaintiff's behalf, defendants opened a bank account in a bank in Aruba, and deposited the monies defendants received from processing the credit card transactions for sales to plaintiff's customers. After plaintiff received a few payments for the credit card sales, payment abruptly stopped. Defendants allegedly owe plaintiff in excess of $ 800,000.

Plaintiff makes no attempt, in its pleadings, to specifically allege what particular acts were taken by which of the defendants. Plaintiff does allege that Mr. Brown, on behalf of all defendants, orally represented to plaintiff's owners, that the monies plaintiff would entrust to defendants would be safe. Plaintiff claims that this was a misrepresentation made in an effort to induce plaintiff to enter into a contract with e-Payment. Plaintiff fails to

allege the actual identity of the contracting party with whom plaintiff entered into the written agreement, nor does plaintiff indicate who signed the contract on behalf of that party. The complaint contains no allegations as to where the contract negotiations [*4] took place, nor where it was executed. Plaintiff also seeks to impose alter ego liability upon the individual defendants alleging they exercised control over e-Payment. Plaintiff alleges that ePayment's office is located at defendant Brown's home address.

In support of their motion, movants submitted the affidavit of defendant Jason Field. He alleges that he worked as a salesman for ePayment Solution, Ltd., and he brought plaintiff in as a client. He claims that this was his sole interaction with plaintiff, and he denies that defendant Kate Martin ever worked for ePayment Solution Ltd. There is no affirmative representation made by Mr. Field that ePayment Solution Ltd. was the party that entered into a contract with plaintiff. He does deny that E Commerce ever entered into a contract with plaintiff, or made any representations to plaintiff regarding the alleged bank account in Aruba, or the processing or safety of the subject funds. Although plaintiff acknowledges that "while E Commerce is not the entity with whom Plaintiff has a direct contractual relationship, it is Plaintiff's good faith belief that E Commerce, Field and Martin are officers and/or shareholders of E Commerce, is [*5] (sic) merely a successor-in-interest to Defendant E Payment Solution Ltd., for whom Field was an agent." (Pl.'s Mem. Opp. Summ. J. at 2.) Additionally, Mr. Field asserts that ePayment Solution, Ltd. is a defunct company. Although plaintiff agrees that the company is "technically dissolved," plaintiff claims it "has good faith reasons to believe that the company E Payment, ... is still running and is now being fronted by E Commerce, Martin and Field." (Id. at 3, n.1).

Defendant Field further alleges that E Commerce has no relationship with any of the codefendants other than for himself and Ms. Martin. He denies that E Commerce is now, or was ever, in possession or control of plaintiff's funds. Mr. Field further claims that he, E Commerce and Kate Martin have never exercised dominion or control over any of the other codefendants, and have never been officers, directors, or shareholders of the defendant-companies. Mr. Field further makes the following representations: none of the movants have transacted business in New York; derived any revenue

from business conducted here; pay New York taxes; placed advertisements, maintained telephone listings, or had an office in New York; employed [*6] New York staff or sent personnel to New York; nor do they maintain or possess any bank accounts, or any real or personal property located in New York. Additionally, Mr. Field asserts that E Commerce has never been registered to do business in New York. He also denies that any of the movants regularly do or solicit business, or engage in any other persistent course of conduct in New York. Nor do they derive substantial revenue from goods used or consumed, or services rendered, in New York

## PERSONAL JURISDICTION

A reading of the complaint fails to reveal what is the legal basis upon which plaintiff is asserting jurisdiction over the defendants. The complaint states that "e-Payment" regularly conducts business in New York state Additionally, plaintiff alleges, for purposes of venue, that defendants are doing business in this district, and that a substantial part of the events or omissions giving rise to the claims occurred in this district. The complaint itself contains no factual allegations as to any events that occurred in New York The only two specific references to New York, in the complaint, are that it is the location of plaintiff's main office and that plaintiff does [*7] business in the state.

When responding to a motion to dismiss for personal jurisdiction, pursuant to Fed.R.Civ.P. 12(b)(2), plaintiff bears the burden of establishing jurisdiction. Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 784 (2d Cir. 1999); Cutco Indus., Inc v. Naughton, 806 F.2d 361, 365 (2d Cir. 1986). Absent an evidentiary hearing, plaintiff need only make a prima facie showing by pleadings and supporting affidavits that the court possesses the requisite jurisdiction over the defendants. Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 507 (2d Cir. 1994) All pleadings and affidavits are to be construed in plaintiff's favor, and any doubts should be resolved in its' favor as well. Hoffritz for Cutlery, Inc v Amajac, Ltd., 763 F.2d 55, 57 (2d Cir. 1985).

When jurisdiction is based upon diversity, a federal court applies the choice-of-law rules of the forum state. Klaxon Co. v Stentor Elec Mfg Co., 313 U.S. 487, 496, 85 L. Ed. 1477, 61 S. Ct. 1020 (1941); Jazini v Nissan Motor Co., Ltd., 148 F.3d 181, 183-84 (2d Cir 1998) (citations omitted) Thus, to determine whether [*8]

personal jurisdiction exists over the non-resident defendants, the Court must look to the forum state's long-arm jurisdictional statutes. Savin v. Ranier, 898 F.2d 304, 306 (2d Cir. 1990). If the long-arm statutes do provide for personal jurisdiction, the focus of the court's inquiry must shift to whether exercising such jurisdiction comports with due process. Whitaker v American Telecasting, Inc., 261 F.3d 196, 208 (2d Cir. 2001) (quoting Bensusan Restaurant Corp. v. King, 126 F.3d 25, 27 (2d Cir. 1997)) Due process requires that the party, over whom personal jurisdiction is sought, has some minimum contacts with the forum state so that litigation of the action will not "offend traditional notions of fair play and substantial justice." Fort Knox Music, Corp v. Baptiste, 203 F.3d 193, 196 (2d Cir 2000) (quoting Calder v. Jones, 465 U.S 783, 788, 79 L. Ed. 2d 804, 104 S Ct 1482 (1984))

Personal jurisdiction will exist over a foreign corporation, pursuant to N.Y C.P.L.R § 301 (McKinney 2001) ("CPLR"), if it is "doing business" in the state. Wiwa v. Royal Dutch Petroleum Co., 226 F.3d 88, 95 (2d Cir 2000) [*9] n2 The imposition of jurisdiction, under this section, does not require that the cause of action against the defendants arise from their New York business transactions A corporation will be found to be "doing business" and present in New York, if it does business with a "fair measure of permanence and continuity" and not merely "occasionally or casually." Hoffritz, 763 F.2d at 58 (quoting Tauza v. Susquehanna Coal Co., 220 N.Y. 259, 115 N.E. 915, 917 (N.Y 1917)). In order to determine whether a foreign corporation is engaging in business on a continual basis, the following factors generally should be the focus: the existence of a New York office, solicitation of business in New York; corporate bank accounts or other properties located within the state; and the presence of corporate employees or agents in New York Landoil Resources Corp. v Alexander & Alexander, 918 F.2d 1039, 1043 (2d Cir 1990) (citing Hoffritz, 763 F 2d at 58)

n2 Whether § 301 jurisdiction applies to individuals, as oppose to corporations, is unresolved under New York law. Hoffritz, 763 F.2d at 58; Tyco Int'l Ltd. v. Walsh, 2003 U.S. Dist. LEXIS 2670, 2003 WL 553580, *3 (S.D.N.Y. Feb. 27, 2003). "Even assuming it does apply with regard to natural persons, the plaintiff must still establish that the defendant conducted

business in New York as an individual and not simply as a corporate officer." See, Tyco, 2003 U.S. Dist. LEXIS 2670, 2003 WL 553580, at *3 (citing Laufer v. Ostrow, 55 N.Y.2d 305, 434 N.E.2d 692, 449 N.Y.S.2d 456, 460 (N.Y. 1982)); see also, Black v. USA Travel Auth., Inc., 2001 U.S. Dist. LEXIS 9297, 2001 WL 761070, *4 (S.D.N.Y. July 6, 2001). Plaintiff has not provided any factual allegations that Mr. Field or Ms. Martin were conducting their own, individual business in New York.

[*10]

Plaintiff has failed to allege any facts to demonstrate that E Commerce ever conducted any business within New York. Additionally, the uncontested affidavit of Mr. Field reveals that neither E Commerce, nor for that matter any of the movants, maintains a New York office, solicit business here, have employees or agents in New York, or possess a bank account, or other real or personal property, in New York. Accordingly, there is no basis to find personal jurisdiction exists over the movants pursuant to CPLR § 301.

New York's long-arm statute also allows for personal jurisdiction over a non-domiciliary who in person or through an agent "(1) transacts any business within the state or contracts anywhere to supply goods or services in the state; or (2) commits a tortious act within the state . . .; or (3) commits a tortious act without the state causing injury to person or property within the state . . . , if he [or she] (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the [*11] state and derives substantial revenue from interstate or international commerce; or (4) owns, uses or possesses any personal property situated within the state." CPLR § 302(a). Personal jurisdiction may only be imposed provided the causes of actions against the defendants arise from the enumerated conduct set forth in CPLR § 302.

As already noted there has been no claim, much less a showing, that the movants possess or use personal or real property in New York that gives rise to the claims against them. Additionally, it cannot be concluded that any alleged tortious conduct occurred in New York.

Although the complaint alleges, for venue purposes, that a substantial part of the events or omissions giving rise to the claims occurred in this district, it fails to specify what, if any, tortious acts occurred within the state. It cannot be inferred from reading the complaint that any of the wrongful conduct, which defendants allegedly committed, occurred in New York. The defendants are corporations situated in the United Kingdom, St. Kitt, and Aruba. The individual defendants reside in England. Defendants allegedly processed the credit card charges for plaintiff, and wrongfully withheld [*12] those funds, instead of depositing them in a bank in Aruba. There is no basis to suggest that such actions occurred in New York. Nor is there even any allegation that the contract, which defendants are accused of breaching, was negotiated or executed in New York. "To subject non-residents to New York jurisdiction under § 302(a)(2) the defendant must commit the tort while he or she is physically present in New York State." Bensusan Restaurant Corp., 126 F.3d at 29 (citation omitted). Merely because plaintiff may have suffered injury in New York will not suffice in this regard. Id.

Even if the tortious acts were committed outside of New York, plaintiff has failed to proffer any allegations showing that the acts complained of caused sufficient injury in New York to justify exercising personal jurisdiction over the movants. Generally, in order to determine whether there is sufficient injury in New York to warrant § 302(a)(3) jurisdiction, a "situs-of-injury" test is to be applied requiring that the location of the "original event that caused the injury" be ascertained. DiStefano v. Carozzi N. Am., Inc., 286 F.3d 81, 84 (2d Cir. 2001) (quoting [*13] Bank Brussels Lambert, 171 F.3d at 791)). The "original event" is distinguishable from the initial tort, as well as from the final economic damages and resulting consequences flowing therefrom. "The original event occurs 'where the first effect of the tort . . . that ultimately produced the final economic injury' is located." Id. at 84-85 (quoting Bank Brussels Lambert, 171 F.3d at 792)). Plaintiff does not allege that the first effect, as a result of defendants purportedly withholding the plaintiff's monies instead of depositing them in the bank in Aruba, is located in New York. See generally, Whitaker, 261 F.3d at 209 ("The situs of the injury for purposes of asserting long arm jurisdiction is the place where the underlying, original event occurred which cause the injury."); see also, United Bank of Kuwait, PLC v. James M. Bridges, Ltd., 766 F. Supp. 113, 116 (S.D.N.Y. 1991) ("The occurrence of financial

2004 U.S. Dist. LEXIS 24657, *13

consequences in New York due to the fortuitous location of plaintiff[] in New York is not a sufficient basis for jurisdiction under § 302(a)(3) where the underlying events took place outside New York ").

Furthermore, plaintiff [*14] has not made a sufficient showing as to the other prongs necessary to exercise jurisdiction pursuant to § 302(a)(3). Plaintiff does not allege that movants derive substantial revenue from interstate or international commerce. Moreover, plaintiff fails to controvert Mr. Field's claim that the movants' solicit no business in New York, derive no revenue from goods or services used or consumed in New York, and they do not engage in any other persistent course of conduct in New York.

The only arguable basis to assert jurisdiction over the moving defendants is under subdivision (a)(1) of CPLR § 302, *i.e.,* that they transact business in New York. The burden of showing that a non-domiciliary "transacts business," and can be sued for claims arising from that transaction, is a considerably less onerous one than that needed to establish "doing business" to sue such defendant even on an unrelated cause of action pursuant to CPLR § 301. Hoffritz, 763 F.2d at 58-59 (citations omitted). Where defendants purposely avail themselves of the privilege of conducting business in this state, and the causes of action arose out of activities occurring within the state, jurisdiction may [*15] be exercised over them. Henderson v. I.N.S., 157 F.3d 106, 123 (2d Cir. 1998) (quoting Kronisch v. United States, 150 F.3d 112, 130 (2d Cir. 1998)). "It is a 'single transaction statute' and proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted." Kreutter v. McFadden Oil Corp., 71 N.Y.2d 460, 522 N.E.2d 40, 527 N.Y.S.2d 195, 198-99 (N.Y. 1988). A cause of action "arises out" of a defendant's activities where there exists an "articuable nexus" or a "substantial relationship" between the transactions occurring within New York and the claims upon which the defendant is being sued. Sunward Elecs., Inc. v. McDonald, 362 F.3d 17, 23 (2d Cir. 2004); Kronisch, 150 F.3d at 130. Among some of the factors to be considered to determine whether a non-domiciliary is "doing business," for purposes of CPLR § 302(a)(1), are whether there is an on-going contractual relationship with a New York corporation; whether the contract was

negotiated [*16] or executed in New York; whether after executing the contract, defendant had business meetings in New York; and whether there was a choice-of-law clause in the contract. Sunward, 362 F.3d at 22-23; Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp., 98 F.3d 25, 29 (2d Cir. 1996) (citations omitted). Other factors may also be considered, and no one factor is determinative. Rather, an examination of the totality of the circumstances is necessary to determine whether a foreign defendant is doing business in New York. Id.

An examination of all of the circumstances, in the case at bar, fails to reveal that the movants engaged in purposeful activity in New York. In fact, there is no evidence that the moving defendants engaged in any activity, whatsoever, in New York. Moreover, this action is premised upon a contract to which the movants were not signatories.

Plaintiff also seeks to impose alter ego liability upon the individual defendants for the actions taken by e-Payment. Where jurisdiction exists over a corporation, the corporate officers will also be subject to jurisdiction where plaintiff has asserted factual allegations constituting a prima [*17] facie showing of alter ego status. See, Packer v. TDI Sys., 959 F. Supp. 192, 203 (S.D.N.Y. 1997). Plaintiff has not made a prima facie showing that personal jurisdiction over the defendant-companies n3 exists. None of the defendant companies are incorporated or have their principal place of business in New York. The complaint also fails to show that the companies have any ties to New York, or that they did, or were doing, any business in this state. Nor has plaintiff pled any specific factual allegations to support its conclusory assertions that Mr. Field or Ms. Martin exercised domination and control over the defendant companies. Therefore, jurisdiction over Mr. Fields and Ms. Martin cannot be obtained even if the corporate veil is pierced for jurisdictional purposes. Additionally, plaintiff has not made any showing that the defendant companies were merely acting as an agent on behalf of Mr. Field or Ms. Martin to warrant subjecting them to jurisdiction on an agency theory. See, Mende v. Milestone Tech., Inc., 269 F. Supp.2d 246, 253 n.5 (S.D.N.Y. 2003); Hypoxico, Inc. v. Colo. Altitude Training LLC, 2003 U.S. Dist. LEXIS 11862, 2003 WL 21649437, *3-4 (S.D.N.Y. July 14, 2003) [*18] ; Kinetic Instruments, Inc. v. Lares, 802 F. Supp. 976, 984 (S.D.N.Y. 1992).

n3 Plaintiff alleges that four corporate defendants and two defendant websites are affiliated companies. The complaint fails to set forth specific factual allegations to demonstrate, if accepted as true, that the websites are companies. "A 'site' is an internet address which permits users to exchange digital information with a particular host . . . ." Bensusan Restaurant Corp., 937 F. Supp. 295, 297 n. 1 (S.D.N.Y. 1996), aff'd, 126 F.3d 25. Plaintiff is not suing any party who owns, operates or maintains the websites, and hence plaintiff fails to establish that the websites are entities that can be properly named as defendants. See generally, Fed.R.Civ.P. 17(b)

Accordingly, plaintiff is unable to meet it minimal burden of making a prima facie showing of personal jurisdiction over the movants.

## SPECIFICITY OF THE CLAIMS

The moving defendants also maintain [*19] that the complaint should be dismissed for failure to comply with Fed.R.Civ.P. 8(a)(2) which requires pleadings to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Plaintiff argues that since it brought this action against all defendants involved in the conspiracy to defraud plaintiff both jointly and severally, plaintiff need only establish that it has pled a claim with the requisite specificity against any of the defendants. Plaintiff contends that it has alleged more than sufficient facts to meet this standard.

The complaint does not contain any specific allegations regarding the existence of a conspiracy amongst the defendants. Nor does the complaint even set forth a general allegation that the defendants had entered into any kind of agreement with one another. The complaint merely refers to the culpable acts committed by all seventeen defendants, without any attempt to differentiate which act was taken by which party, or how the parties are interrelated. Even plaintiff's opposition papers fail to elucidate the general claims set forth against the defendants. Rather, plaintiff asserts, "it is the good faith belief of Plaintiff [*20] that all of the Defendants are interconnected as a unified front in their campaign of fraud such as to make them indistinguishable from one another legally." (Pl.'s Mem. Opp. Summ. J. at 2). Plaintiff offers no factual allegations to indicate the basis upon which its good faith belief is

premised.

To satisfy the simplified notice pleading standard of Fed.R.Civ.P. 8, the complaint must merely "give the defendant fair notice of what plaintiff's claim is and the grounds upon which it rests." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512, 152 L. Ed. 2d 1, 122 S. Ct. 992 (2002) (quoting Conley v. Gibson, 355 U.S. 41, 47, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957)); Wynder v. McMahon, 360 F.3d 73, 78 (2d Cir. 2004). Such notice enables a defendant to answer and prepare for trial. Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir 1988); see also, Simmons v. Abruzzo, 49 F.3d 83, 86 (2d Cir. 1995) (quoting 2A Moore's Federal Practice P8.13, at 8-58 (2d ed. 1994)) ("Fair notice is that which enables the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so it may be assigned the proper form of trial."). Dismissal [*21] for failure to comply with the rule is generally "reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Salahuddin, 861 F.2d at 42. A plaintiff fails to satisfy rule 8, where the complaint "lump[s] all the defendants together and fail[s] to distinguish their conduct" because such "allegations fail to give adequate notice to the[] defendants as to what they did wrong." See, Medina v. Bauer, 2004 U.S. Dist. LEXIS 910, 2004 WL 136636, *6 (S.D.N.Y. Jan. 27, 2004); see also, Glasheen v. City of Albany, 1999 U.S. Dist. LEXIS 19689, 1999 WL 1249409, *1 (N.D.N.Y. Dec. 16, 1999); Merrill Lynch, Pierce, Fenner & Smith Inc., v. Young, 1994 U.S. Dist. LEXIS 2929, 1994 WL 88129, *15 (S.D.N.Y. Mar. 15, 1994); Rafferty v. Halprin, 1991 U.S. Dist. LEXIS 10344, 1991 WL 148798, *8 (S.D.N.Y. July 26, 1991)

The complaint in this case does not identify any particular defendant that committed any specific act of wrongdoing against plaintiff. Rather, the complaint simply attributes the wrongful acts as being committed collectively by the seventeen defendants. Moreover, the complaint fails to reveal the specific relationship, [*22] if any, that these defendants share. Plaintiff attempts to excuse its pleadings based on difficulties it encounters as a result of the defendants' alleged convoluted structure of their business practices and plans. However, plaintiff pled a cause of action for breach of contract without even alleging the identity of its contracting party. The structure of defendants' business operations certainly would not

preclude plaintiff from setting forth, in its pleadings, the name of the other contracting party. Accordingly, the complaint fails to meet the lenient pleading requirements of Rule 8.

## FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

Movants are also seeking to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6). In reviewing a complaint for dismissal under Rule 12(b)(6), the Court must accept the factual allegations in the complaint as true and draw all reasonable inferences in plaintiff's favor. Bolt Electric, Inc. v. City of New York, 53 F.3d 465, 469 (2d Cir. 1995). The complaint should only be dismissed where it appears beyond doubt that plaintiff can present no set of facts entitling it to relief. Conley, 355 U.S. at 46; [*23] Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984).

Movants argue that the cause of action for fraudulent inducement is not pled in accordance with the dictates of Fed.R.Civ.P. 9(b) which provides that, "in all averments of fraud . . . , the circumstances constituting fraud . . . shall be stated with particularity." The complaint alleges that Mr. Brown, on behalf of all of the defendants, made oral representations to plaintiff's owners regarding the safety of the monies plaintiff would be entrusting to defendants in order to induce plaintiff to enter into the contract. "Rule 9(b) requires plaintiff[] to allege (1) the specific statement or omission; (2) the aspect of the statement or omission that makes it false or misleading; (3) when the statement was made; (4) where the statement was made; and (5) which defendant was responsible for the statement or omission." See, Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd., 85 F. Supp.2d 282, 293 (S.D.N.Y. 2000) (internal quotation marks and citations omitted), aff'd, 242 F.3d 366, 2001 WL 46565 (2d Cir. 2001); see also, Cosmas v. Hassett, 886 F.2d 8, 11 (2d Cir. 1989) [*24] ("To satisfy the particularity requirement of Rule 9(b), a complaint must adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements."). Plaintiff has failed to allege what the content of the misstatements were, how the statements were false or misleading, as well as when and where the statements were made.

Moreover, Rule 9(b) cannot be satisfied merely by attributing the alleged misstatements to all the defendants. Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993).

Plaintiff has not set forth sufficient factual allegations that, if accepted as true, would show plaintiff's entitlement to recovery against any particular defendant under any of the asserted causes of action. It cannot be concluded that Mr. Brown's alleged false or misleading statements constituted material misrepresentations which served to induce plaintiff to enter into a contract with some undisclosed party. With regard to the breach of contract claim, plaintiff [*25] has not allege any specific party who was personally bound by the contract and had a duty to perform thereunder, yet failed to do so. Similarly, plaintiff has not identified any specific defendant who is in possession and control of the subject funds to support its claims for replevin and conversion. Finally, plaintiff has not proffered any factual allegations to support its conclusory assertion that the individual defendants exercised complete domination and control over the corporate and website defendants in order to plead a viable claim for alter ego liability. Plaintiff merely offers a blanket statement that the individual defendants are the only officers and shareholders of "ePayment." Therefore, the complaint is defective in that no viable cause of action is asserted.

## CONCLUSION

In light of the foregoing, defendants E Commerce Service, UK, Ltd., Jason Field, and Kate Martin's motion to dismiss the complaint against them, for lack of personal jurisdiction, is granted.

A court has the discretion to dismiss a complaint sua sponte for failure to plead with the necessary specificity to state a proper cause of action. Kittay v. Kornstein, 230 F.3d 531, 542 (2d Cir. 2000) [*26] (A district court may sua sponte dismiss a complaint which does not comply with Fed.R.Civ.P. 8); Citadel Management, Inc. v. Telesis Trust, Inc., 123 F. Supp.2d 133, 147 (S.D.N.Y. 2000); Smith v. Metro North Commuter R.R., 2000 U.S. Dist. LEXIS 14168, 2000 WL 1449865 (S.D.N.Y. Sept. 29, 2000) (both cases finding that the court has discretion to dismiss a complaint sua sponte, pursuant to Fed.R.Civ.P. 12(b)(6), where plaintiff was given notice and an opportunity to be heard). The pleadings are woefully inadequate. The complaint lumps together all of the defendants in each claim without providing any

2004 U.S. Dist. LEXIS 24657, *26

factual allegations to distinguish their conduct, and accordingly dismissal of the complaint in its entirety is warranted

Dated: New York, New York

December 7, 2004

SO ORDERED:

GEORGE B. DANIELS

United States District Judge

LEXSEE 2001 US DIST LEXIS 9297



Analysis
As of: Jan 22, 2007

**LESLIE BLACK, Plaintiff, -against- USA TRAVEL AUTHORITY, INC., d/b/a THE TRAVEL AUTHORITY; DONALD GOULD, individually; ANTHONY J. PERSICO, individually; ABC, INC. (fictitious name), and JOHN DOES 1-5 (fictitious name), j/s/a, Defendants.**

**99 Civ. 11278 (WHP)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

**2001 U.S. Dist. LEXIS 9297**

**July 6, 2001, Decided
July 6, 2001, Filed**

**DISPOSITION:** [*1] Defendants Donald Gould's and Anthony Persico's motions for summary judgment granted Defendant USA Travel Authority's motion for partial summary judgment on plaintiff's forced sale of stock claim granted. Plaintiff Leslie Black's motion for reargument denied

**COUNSEL:** For plaintiff: W Randolph Kraft, Esq., Brooklyn, NY.

For USA Travel, Donald Gould, defendants: Robert T McGovern, Esq., Sapir & Frumkin LLP, White Plains, NY.

For Anthony Persico, defendant: Michael J. Curto, Esq., Leahy, Nyberg, Curto & D'Apice, Yonkers, NY.

**JUDGES:** WILLIAM H. PAULEY III, U.S.D.J.

**OPINION BY:** WILLIAM H. PAULEY III

**OPINION:**

MEMORANDUM AND ORDER

WILLIAM H. PAULEY III, District Judge:

Plaintiff Leslie Black ("Black") brings this employment discrimination action against her former employer, USA Travel Authority ("USA Travel"), Donald Gould ("Gould"), the majority shareholder and Chief Executive Officer of USA Travel, and Anthony Persico ("Persico"), the former Chief Executive Officer of USA Travel. Black invokes this Court's diversity jurisdiction and asserts only violations of New Jersey law. Specifically, Black claims that USA Travel discriminated and retaliated against her by firing her because of her [*2] severe asthma condition in violation of New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-1 et seq., and that Gould and Persico aided and abetted USA Travel in its discrimination Black also seeks the forced sale of her shares of stock. n1

n1 Plaintiff has abandoned her claims for breach of contract, breach of implied covenant of good faith and fair dealing, intentional infliction of emotional distress, fraud and misrepresentation. (See Joint Pretrial Order PP C(1)-(4).)

Defendants Gould and Persico move for summary judgment on all claims against them for lack of personal jurisdiction. USA Travel moves for partial summary judgment on Black's forced sale of stock on the ground that plaintiff lacks standing because she is a minority shareholder claim who owns less than twenty percent of the company's stock. Black moves for reargument of this Court's Order deeming the facts set forth in defendants' Local Civil Rule 56.1 Statements admitted because she failed to respond timely to defendants' [*3] motions for summary judgment. For the following reasons, defendants' motions are granted and plaintiff's motion for reargument is denied.

## BACKGROUND

USA Travel is a New York Corporation. (USA Travel Rule 56.1 Stmt. 2.) Until 1995, USA Travel's principal place of business was in New York. In May 1995, it relocated its principal place of business to Ponte Verda, Florida. (USA Travel Rule 56.1 Stmt. PP 3-4.)

Black is a citizen of New Jersey. (USA Travel Rule 56.1 Stmt P 1.) From April 1986 to August 7, 1998, she served as President of USA Travel and worked from her home in New Jersey. (USA Travel Rule 56.1 Stmt P 21.) Black is a fifteen percent minority shareholder of USA Travel.

Since 1988, Gould has been a citizen of Florida (Gould Supp. Rule 56.1 Stmt. P 2; Gould Aff. P 2.) In 1997 and 1998, he visited New York a total of four times to attend business meetings in his capacity as Chief Executive Officer of USA Travel. (Gould Supp Rule 56.1 Stmt PP 3-4; Gould Aff. PP 4,5.)

Since 1995, Persico has been domiciled in Delray Beach, Florida. (Persico Rule 56.1 Stmt. P 3.) He has not conducted any business in New York on behalf of USA Travel in the last six years. (Persico Supp. [*4] Aff. P 10.)

In 1986, Persico hired Black. (USA Travel Rule 56.1 Stmt. P 8.) On January 1, 1992, Donald Gould replaced Persico as USA Travel's Chief Executive Officer and Chairman. (USA Travel Rule 56.1 Stmt. P 16.) Since 1992, Persico has served as a director of USA Travel.

In June 1998, Gould scheduled a meeting of USA Travel personnel in Ponte Verda, Florida for July 12, 1998. (USA Travel Rule 56.1 Stmt P 25.) When Gould told Black that he expected her to attend the meeting, she informed him that based on her doctor's advice, she would not travel to Florida until October 1998 because of her asthmatic condition. (USA Travel Rule 56.1 Stmt. P 26.) After an exchange of faxed notes between Black and Gould concerning Black's inability to attend the conference, Gould sent Black a company phone bill demanding that Black identify four telephone numbers which comprised thirty-eight percent of the calling minutes over a two month period (USA Travel Rule 56.1 Stmt. P 32.) Black complied and advised Gould that three of the phone numbers represented calls her husband had made on the company line by mistake. She offered to reimburse the company for those calls. (McGovern Aff. Ex 14: 7/8/98 Black [*5] Letter.) Thereafter, Black presented Gould with a note from her doctor stating that she should not travel to Florida because of her asthma. (USA Travel Rule 56.1 Stmt. P 34.)

On August 4, 1998, Gould sent a letter to Black in New Jersey stating:

> the board of directors of [USA Travel] is requesting your resignation because of our concern, based on written statements received from your doctor, that physical and/or emotional stress brought on through your continued full time employment by [USA Travel] could jeopardize your health. I expect to receive your letter of resignation by facsimile not later than 12:00 PM Friday, August 7, 1998.

(USA Travel Rule 56.1 Stmt. P 35; McGovern Ex 17: 8/4/98 Gould Letter.) Persico ratified the board's decision to terminate Black (Persico Rule 56.1 Stmt. P 6.) None of the actions taken by the board occurred in New York.

On August 7, 1998, Black advised Gould that she would not resign (USA Travel Rule 56.1 Stmt. P 36.) The same day, Gould sent a letter to Black in New Jersey terminating her immediately based on her admitted unauthorized use of a company telephone (USA Travel Rule 56.1 Stmt. P 37; McGovern Aff. Ex 20: 8/7/98 Gould [*6] Letter.) This action followed.

## DISCUSSION

I. Summary Judgment Standards

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10, 91 L. Ed. 2d 202 (1986). The burden of demonstrating the absence of any genuine dispute as to a material fact rests with the moving party. See, e.g., Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 1608, 26 L. Ed. 2d 142 (1970); Grady v. Affiliated Cent., Inc., 130 F.3d 553, 559 (2d Cir. 1997). In evaluating the record to determine whether there is a genuine issue as to any material fact, "the evidence of the nonmovant is to be believed, and all justifiable inferences [*7] are to be drawn in his favor." Liberty Lobby, 477 U.S. at 255, 106 S. Ct. at 2513.

If the moving party meets its initial burden, the non-moving party must then come forward with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1355, 89 L. Ed. 2d 538 (1986). The applicable substantive law determines which facts are critical and which facts are irrelevant. See Liberty Lobby, 477 U.S. at 248, 106 S. Ct. at 2510.

II. Black's Motion for Reargument

Plaintiff failed to respond in a timely manner to defendants' summary judgment motions, despite the fact that this Court granted two requests for extensions of time. Thereafter, by Order dated February 28, 2001, this Court rejected Black's late opposition to defendants' motions for summary judgment and deemed admitted the facts set forth in defendants' Local Civil Rule 56.1 Statements. On March 12, 2001, Black sent a letter brief "in lieu of a more [*8] formal" motion seeking reargument of this Court's February 28, 2001 Order. Black served a copy on defendants on March 14, 2001. That motion for reargument was never filed and is therefore untimely. See Local Civil Rule 6.3 ("A notice of motion for reconsideration or reargument shall be

served within ten (10) days after the docketing of the court's determination of the original motion.") That was not the only defect. The motion was not accompanied by "a memorandum setting forth concisely the matters or controlling decision which counsel believes the court has overlooked." Local Civil Rule 6.3.

Even if the "motion" was timely and otherwise complied with the Local Civil Rules, counsel's only excuse for filing opposition papers three weeks late was that he did not receive notice that this Court's extension of time to February 5, 2001 for plaintiff to respond was a "final extension" until after February 5, 2001. Whether plaintiff's counsel had notice that the last extension was final is irrelevant because he does not dispute that he had notice of the extension. Since this Court granted plaintiff's request for an extension to February 5, 2001 to file opposition papers, and counsel never [*9] sought any further extension, he was obligated to file his opposition papers by that deadline. Accordingly, plaintiff's motion for reargument is denied and the averments set forth in defendants' Local Rule 56.1 Statements are deemed admitted. See, e.g., LeSane v. Hall's Sec. Analyst, Inc., 239 F.3d 206, 210 (2d Cir. 2001); Gubitosi v. Kapica, 154 F.3d 30, 31 n.1 (2d Cir. 1998).

However, the fact that Black has not responded to the motion does not mean that it should be granted automatically. See, e.g., LeSane, 239 F.3d at 209-11; Champion v. Artuz, 76 F.3d 483, 486 (2d Cir. 1996). The question remains whether there is a genuine issue as to any material fact, and if not, whether defendants are entitled to judgment as a matter of law.

III. Personal Jurisdiction Over Individual Defendants Gould and Persico

Gould and Persico argue that this Court lacks personal jurisdiction over them because they are domiciliaries of Florida and none of the events or causes of action at issue arose out of conduct in New York.

The burden of proving jurisdiction is on the party asserting it. E.g., Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 197 (2d Cir. 1990); [*10] CutCo Indus., Inc. v. Naughton, 806 F.2d 361, 364 (2d Cir. 1986). When defendant contests personal jurisdiction on summary judgment, plaintiff must demonstrate that there is no genuine issue as to any material fact on the jurisdictional question. See generally Beacon Enter., Inc. v. Menzies, 715 F.2d 757, 762 (2d Cir. 1983); American

Int'l Group, Inc. v. London Am. Int'l Corp., 664 F.2d 348, 351 (2d Cir. 1981).

New York CPLR § 302(a) confers jurisdiction over a non-domiciliary who either in person or through an agent: (1) transacts any business within the state or contracts anywhere to supply goods or services in the state; (2) commits a tortious act within the state; (3) commits a tortious act without the state causing injury to person or property within the state if certain other conditions are also met. Neither of the individual defendants is alleged to have committed a tortious act. Thus, this Court can only exercise personal jurisdiction over the individual defendants if plaintiff can demonstrate that CPLR § 302(a)(1) applies.

The "jurisdictional net cast by CPLR § 302(a) subsection (1) . . . reaches only a defendant that [*11] purposefully avails itself of the privilege of conducting activities within [New York], thus invoking the benefits and protections of its law." Viacom Intern., Inc. v. Melvin Simon Prods., Inc., 774 F. Supp. 858, 862 (S.D.N.Y. 1991) (internal citations and quotation marks omitted). New York courts look to the totality of circumstances to determine whether the defendant has engaged in some purposeful activity in New York in connection with the matter in controversy. See Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc., 15 N.Y.2d 443, 452, 261 N.Y.S.2d 8, 14, 209 N.E.2d 68 (1965).

None of the events at issue in this case took place in New York or caused injury to a person or property within New York; they all occurred in Florida or New Jersey. None of the business that defendant Gould conducted in New York on his trips here was related to plaintiff's employment discrimination or forced sale of stock claims. Moreover, Persico's only connection to New York is that he is on the board of directors of USA Travel, a New York corporation. It is well-settled that "'where a corporation is doing business in New York, an officer of the corporation does [*12] not subject himself, individually to 301 jurisdiction unless he is doing business in [New York] individually.'" United Mizrahi Bank Ltd. v. Sullivan, 2000 U.S. Dist. LEXIS 16157, *8, No. 97 Civ. 9282 (LMM), 2000 WL 1678040, *3 (S.D.N.Y. Nov. 6, 2000); accord, e.g., Optimum Worldwide Ltd. v. Klebener, 1996 U.S. Dist. LEXIS 1740, No. 95 Civ. 1359 (HB), 1996 WL 71500, at *2 (S.D.N.Y. Feb. 16, 1996). Black has not alleged that

Persico was doing business as an individual, or that the corporation was acting as his agent. AMPA Ltd. v. Kentfield Capital LLC, 2001 U.S. Dist. LEXIS 2027, No. 00 Civ. 0508 (NRB), 2001 WL 204198, at *2 (S.D.N.Y. Mar. 1, 2001) (personal jurisdiction over corporate officer where plaintiff did not establish that the actions of the alleged corporate agent were taken with the knowledge and consent of the officer for his benefit and that the officer exercised control over the corporation). Accordingly, the motions for summary judgment by Gould and Persico are granted.

IV. Forced Sale of Plaintiff's Stock

Black's eighth count of the second amended complaint seeks "in the interest of fairness and justice," that USA Travel purchase her stock "by way of [forced] sale." (2d Am. Compl. Count 8, [*13] P 3.) Plaintiff does not identify any rule that would permit this Court to order defendants to purchase her stock in the interest of fairness and justice.

USA Travel argues that under New York law, a minority shareholder must own at least twenty percent of the outstanding shares of stock in order to pursue a statutory forced sale of stock claim. See N.Y. Bus. Corp. Law §§ 1104-a, 1118 (McKinney 2000). Moreover, USA Travel asserts that plaintiff failed to plead sufficient facts on which to state a claim for common law right to dissolution.

In a diversity action, the district court must apply the conflict of laws principles of the forum state. See Banker v. Nighswander, Martin & Mitchell, 37 F.3d 866, 871 (2d Cir. 1994) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 61 S. Ct. 1020, 85 L. Ed. 1477 (1941)). New York courts examine the law of the state of incorporation in adjudicating a corporation's internal affairs. Galef v. Alexander, 615 F.2d 51, 58 (2d Cir. 1980) (applying Ohio law in stockholder derivative suit against directors of Ohio corporation). Since USA Travel is a New York corporation, New York law governs [*14] plaintiff's forced sale of stock claim.

New York Business Corporation Law § 1118 is the statutory "buy-out" provision authorizing a forced sale of stock. Under that statute, a shareholder must satisfy the requirements of New York Business Corporation Law § 1104-a to have standing to sue. See Sternberg v. Osman, 181 A.D.2d 897, 898, 582 N.Y.S.2d 206, 207 (2d Dep't), appeal dismissed, 80 N.Y.2d 892, 587 N.Y.S.2d 902, 600

N.E.2d 629 (1992). One such requirement is ownership of at least twenty percent of all outstanding shares of the corporation. See N.Y. Bus. Corp. Law § 1104-a; Zucker v. Katz, 708 F. Supp. 525, 534 (S.D.N.Y. 1989) (holding that ten percent shareholder cannot state a claim for forced sale of stock under § 1114-a). Since plaintiff holds only fifteen percent of the outstanding shares of USA Travel, she lacks standing to sue under § 1118.

Apart from the statutory buy-out remedy, the New York Court of Appeals has recognized a common law right to dissolution of a corporation as a matter of "judicial sponsorship." Leibert v. Clapp, 13 N.Y.2d 313, 315, 247 N.Y.S.2d 102, 104, 196 N.E.2d 540 (1963). [*15] The common law right to dissolution serves to protect the interest of minority shareholders who are placed in a fiduciary relationship with the directors and majority shareholders. To state a common law claim for dissolution, a minority shareholder must plead factual allegations giving rise to fraud, misappropriation or personal use of corporate assets. Id. at 315-16, 247 N.Y.S.2d at 104; Sternberg, 181 A.D.2d at 897-98, 582 N.Y.S.2d at 207 ("the remedy of common-law dissolution is available only to minority shareholders who accuse the majority shareholders and/or the corporate officers or directors of looting the corporation and violating their fiduciary duty"). Black has not pled fraud, misappropriation or personal use of corporate assets, let alone alleged any of them with particularity. Accordingly, USA Travel's motion for summary judgment on Black's forced sale of stock claim is granted.

CONCLUSION

For the foregoing reasons, defendants Donald Gould's and Anthony Persico's motions for summary judgment are granted. Defendant USA Travel Authority's motion for partial summary judgment on plaintiff's forced sale of stock claim is also granted. [*16] Plaintiff Leslie Black's motion for reargument is denied.

Dated: July 6, 2001

New York, New York

SO ORDERED:

WILLIAM H. PAULEY III

U.S.D.J.

LEXSEE 2003 U.S. DIST. LEXIS 2670



Cited
As of: Jan 22, 2007

**TYCO INTERNATIONAL LIMITED, Plaintiff, -v- FRANK E. WALSH, JR.,
Defendant.**

**02 CIV. 4633 (DLC)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF
NEW YORK**

**2003 U.S. Dist. LEXIS 2670**

**February 27, 2003, Decided
February 28, 2003, Filed**

**DISPOSITION:** Defendant's motion to dismiss based on improper venue and lack of personal jurisdiction and motion for transfer denied. Plaintiff's cross-motion for leave to amend its complaint denied as moot.

**COUNSEL:** [*1] For Plaintiff: Paul R. Verkuil, Nicholas A. Gravante, Jr., Harlan A. Levy, Ann M. Galvani, Andrew W. Hayes, Marilyn Kunstler, Boies, Schiller & Flexner, LLP, New York, NY.

For Defendant: Laurence Greenwald, Michele Pahmer, Stroock & Stroock & Lavan LLP, New York, NY.

**JUDGES:** Denise Cote, United States District Judge.

**OPINION BY:** Denise Cote

**OPINION:**

OPINION AND ORDER

DENISE COTE, District Judge :

Defendant Frank E. Walsh, Jr. ("Walsh") has moved to dismiss this action on the grounds of a lack of personal jurisdiction and improper venue, or, in the alternative, for a transfer of this case to the District of New Jersey. The plaintiff Tyco International Limited ("Tyco") asserts personal jurisdiction in this diversity action pursuant to New York's long arm statute. The plaintiff, in the alternative, has requested leave to take jurisdictional discovery and has filed a cross-motion for leave to amend its complaint to establish jurisdiction. For the following reasons, the defendant's motions are denied.

Background

The complaint arises out of Tyco's payment of $ 20 million to Walsh on or about July 31, 2001, in connection with Tyco's acquisition [*2] of CIT Group, Inc. ("CIT") on or about June 1, 2001. Walsh was allegedly paid this amount for introducing Tyco's Chairman and CEO, L. Dennis Kozlowski, to CIT's Chairman and CEO and otherwise promoting the acquisition. Walsh was a member of the Board of Directors of Tyco at the time, having been a board member since 1997, and having been a board member of its predecessor since 1992. The complaint alleges that Walsh knew that the payment of the $ 20 million, half of which went to a New Jersey charity designated by Walsh, had to be disclosed to and approved by the Board, but that he and Kozlowski agreed that the Board would not be informed. Outside directors learned of the payment in January 2002. At the Board meeting on January 16, 2002, in Florida, the Board asked Walsh to return $ 10 million and he refused. The

complaint contains causes of action for restitution, breach of fiduciary duty, conversion, unjust enrichment, constructive trust, and inducing breach of fiduciary duty.

The answer was filed on August 16, 2002, and plead as affirmative defenses a lack of personal jurisdiction and improper venue. On August 27, Walsh filed the instant motion to dismiss.

In support of his motion [*3] to dismiss Walsh asserts that he is a resident of New Jersey and has no residence in New York. His business office is in New Jersey and his involvement with the CIT acquisition took place outside of New York. The last Tyco meeting that he attended in New York was on October 13, 1999. The CIT transaction was approved by Tyco at a Board meeting in Bermuda, its place of incorporation since 1997.

To support the assertion of personal jurisdiction and venue in this district, Tyco points to Walsh's regular attendance at Tyco board meetings in New York through 1997, and attendance at a board committee meeting in New York in 1999. It asserts that Walsh negotiated payment of the $ 20 million fee in telephone calls with Kozlowski and Tyco's Chief Financial Officer while the latter two men were in New York. The invoice that Walsh prepared for payment of the fee was addressed to Tyco's Treasurer in New York, although sent by Walsh to Florida for transmittal to New York. While in New York, the Treasurer approved the payment. Tyco also relies on the fact that the CIT acquisition was negotiated and closed in New York.

Discussion
A. Timeliness

Tyco argues that the defendant's motion to [*4] dismiss is procedurally improper since the motion was filed eleven days after the defendant had answered. There are generally three means by which a party may challenge venue or personal jurisdiction: 1) a timely motion under Rule 12(b), Fed. R. Civ. P., 2) a motion under Rule 56, Fed. R. Civ. P., or 3) a request for an adjudication of disputed jurisdictional facts, either at a hearing pursuant to Rule 12(d), Fed. R. Civ. P., or in the course of a trial on the merits. See Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 197 (2d Cir. 1990)(personal jurisdiction).

The Federal Rules of Civil Procedure require that a motion based upon any of the defenses under Rule 12(b),

including motions under Rule 12(b)(2) for lack of personal jurisdiction and under Rule 12(b)(3) for improper venue, "shall be made before pleading if a further pleading is permitted." Rule 12(b), Fed. R. Civ. P. A motion based on Rule 12(b)(2) or Rule 12(b)(3) is therefore untimely when it is served after the answer. Rule 12(b), Fed. R. Civ. P.; see Beacon Enterprises, Inc. v. Menzies, 715 F.2d 757, 768 (2d Cir. 1983)(personal jurisdiction).

The defendant's argument that untimely [*5] motions under Rule 12(b) can be construed as motions under Rule 12(c) is misplaced. Untimely Rule 12(b) motions may only be converted to Rule 12(c) motions if they assert non-waivable defenses. Patel v. Contemporary Classics of Beverly Hills, 259 F.3d 123, 126 (2d Cir. 2001). A defense of lack of jurisdiction over the person or improper venue is a waivable defense. See Rule 12(h), Fed. R. Civ. P.

The defendant's reliance on the decision in Saldanha is unpersuasive. See Saldanha v. Baidroy, 1992 U.S. Dist. LEXIS 8391, No. 91-6413 (PKL), 1992 WL 147669 (S.D.N.Y. June 15, 1992). In Saldanha, the defendants, realizing that they could not move under Rule 12(b)(2) since they had already filed their answer, moved pursuant to Rule 12(c) for judgment on the pleadings for lack of personal jurisdiction. Id. at *2. The district court, in an exercise of discretion, essentially converted the motion to a request for a hearing pursuant to Rule 12(d). Id.

The defendant has not requested that his motion be converted to a Rule 12(d) motion. Even if he had, that request would be premature given the plaintiff's request for discovery. Federal trial courts have broad discretion [*6] to grant discovery to resolve issues of personal jurisdiction. Koehler v. Bank of Bermuda, 101 F.3d 863, 867 (2d Cir. 1996); Lehigh Valley Indus., Inc. v. Birenbaum, 527 F.2d 87, 93 (2d Cir. 1975). New York courts are encouraged to permit discovery to resolve the issue of personal jurisdiction over a nondomiciliary defendant under New York law. Peterson v. Spartan Indus., Inc., 33 N.Y.2d 463, 467, 354 N.Y.S.2d 905, 310 N.E.2d 513 (1974). To guide the parties should they seek to pursue these issues during the discovery period, a brief discussion of the governing standard for personal jurisdiction and venue follows.

B. Personal Jurisdiction

Tyco relies on two provisions in New York's long

arm statute to obtain personal jurisdiction over Walsh. Tyco asserts general jurisdiction over Walsh under N.Y. C.P.L.R. § 301 (2001) ("Section 301") based on his attendance at Tyco board meetings in New York. It also asserts specific jurisdiction under N.Y. C.P.L.R. § 302(a)(1) (2001) ("Section 302(a)(1)") based on Walsh's actions directed at New York in connection with the fee.

In a diversity case, the issue of personal jurisdiction must [*7] be determined according to the law of the forum state. See Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp., 98 F.3d 25, 29 (2d Cir. 1996). "If the exercise of jurisdiction is appropriate under [the state's statutes], the court then must decide whether such exercise comports with the requisites of due process." Bensusan Rest. Corp. v. King, 126 F.3d 25, 27 (2d Cir. 1997).

1. General Jurisdiction

New York law is not settled on whether a natural person may be subject to general jurisdiction under Section 301 based upon "doing business". First Capital Asset Mgmt. v. Brickellbush, Inc., 218 F. Supp. 2d 369, 392 n.115 (S.D.N.Y. 2002); see also Laufer v. Ostrow, 55 N.Y.2d 305, 313, 449 N.Y.S.2d 456, 434 N.E.2d 692 (1982). Even assuming that general jurisdiction does apply to natural persons, the plaintiff must still establish that the defendant conducted business in New York as an individual and not simply as a corporate officer. Laufer, 55 N.Y.2d at 313.

2. Transacting Business in New York

Section 302(a)(1) allows the exercise of personal jurisdiction over an out-of-state defendant [*8] if the defendant "transacts any business within the state" and the cause of action "arises from" that business activity. n1 CutCo Indus., Inc. v. Naughton, 806 F.2d 361, 365 (2d Cir. 1986). In order to meet the transacting business element under Section 302(a)(1), a plaintiff must show that the defendant "purposefully availed himself of the privilege of conducting activities within New York and thereby invoked the benefits and protections of its laws." Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 787 (2d Cir. 1999) (citation omitted). A defendant "need not be physically present" in the state in order for there to be jurisdiction over him. Id. at 788 (citation omitted). To find jurisdiction, however, "there must be some transaction attributable to the one

sought to be held which occurs in New York." Id. at 787 (citation omitted) (emphasis in original). A single purposeful act in New York can be sufficient to support jurisdiction. See Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc., 15 N.Y.2d 443, 456, 261 N.Y.S.2d 8, 209 N.E.2d 68 (1965). On the other hand, [*9] "no single event or contact connecting defendant to the forum state need be demonstrated; rather, the totality of all defendant's contacts with the forum state must indicate that the exercise of jurisdiction would be proper." CutCo, 806 F.2d at 365; see George Reiner & Co. v. Schwartz, 41 N.Y.2d 648, 650, 394 N.Y.S.2d 844, 363 N.E.2d 551 (1977). The requisite "minimum contacts" must provide a fair warning to the defendant of the possibility of being subject to the jurisdiction of New York courts. See Kreutter v. McFadden Oil Corp., 71 N.Y.2d 460, 527 N.Y.S.2d 195, 198, 522 N.E.2d 40 (1988) (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 85 L. Ed. 2d 528, 105 S. Ct. 2174 (1985)).

n1 Section 302(a) states:

As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent:

1. transacts any business within the state or contracts anywhere to supply goods or services in the state

CPLR § 302(a).

[*10]

Tyco asserts that Walsh engaged in a pattern of activity which demonstrates that he transacted business within New York. Tyco's contention is based primarily upon the fact that the defendant negotiated and consummated his fee agreement in telephone calls with Tyco personnel working in New York and that he directed his invoice for payment to New York.

Generally, telephone contacts between a nondomiciliary defendant and a New York party are insufficient by themselves to confer jurisdiction under Section 302(a)(1). Fiedler v. First City Nat'l Bank, 807

F.2d 315, 317-18 (2d Cir. 1986). A nondomiciliary defendant will be subject to jurisdiction under Section 302(a)(1), however, if the defendant uses these telephone communications to deliberately "project" himself into business transactions occurring within the State. See Parke-Bernet Galleries, Inc. v. Franklyn, 26 N.Y.2d 13, 18, 308 N.Y.S.2d 337, 256 N.E.2d 506 (1970)(defendant projected himself into art auction in State by participating in bidding by telephone). In order for these telephone contacts to sustain jurisdiction, the defendant must do more than place an order or engage in business negotiations [*11] regarding a contract whose center of gravity is outside of the state. Fiedler, 807 F.2d at 317-18. Rather, he must use the "telephonic link" as a means of projecting himself into the "local commerce" of the state. 807 F.2d at 317.

## C. Venue

The defendant asserts that this District is not the proper venue for this case since most of the alleged events at issue occurred in New Jersey. The plaintiff bears the burden of establishing proper venue once venue has been challenged by the defendant. Fisher v. Hopkins, 2003 U.S. Dist. LEXIS 307, No. 02-7077(CSH), 2003 WL 102845, at *2 (S.D.N.Y. Jan. 9, 2003); IBV Holdings Ltd. v. Schey, 2002 U.S. Dist. LEXIS 13682, No. 02-1122 (BSJ), 2002 WL 1733649, at *1 (S.D.N.Y July 26, 2002).

In order for venue to be proper, "a substantial part of the events or omissions giving rise to the claim" must have occurred in the judicial district where venue is sought. 28 U.S.C. § 1391(a)(2); Hopkins, 2003 U.S. Dist LEXIS 307, 2003 WL 102845, at *2. The "substantial part" standard can be "be satisfied by a communication transmitted to or from the district in which the cause of action was filed, given a sufficient relationship between [*12] the communication and the cause of action." IBV Holdings, 2002 U.S. Dist. LEXIS 13682, 2002 WL

1733649, at *1 (citation omitted).

## D. Transfer

Section 1404(a) of Title 28, United States Code, allows for a transfer of venue "for the convenience of parties and witnesses, in the interest of justice." 28 U.S.C § 1404(a) (2002). Such motions are in the court's discretion to grant or deny and are "'determined upon notions of convenience and fairness on a case-by-case basis.'" Hall v. South Orange, 89 F. Supp. 2d 488, 493 (S.D.N.Y. 2000) (quoting In re Cuyahoga Equip. Corp., 980 F.2d 110, 117 (2d Cir. 1992)). Plaintiff's choice of forum is entitled to great weight and should not be disturbed except when the balance of public and private interest factors clearly weighs in favor of trial in an alternative forum. Piper Aircraft v. Reyno, 454 U.S. 235, 255-57, 70 L. Ed. 2d 419, 102 S. Ct. 252 (1981).

Defendant has not shown that he would be seriously inconvenienced or that it would be unfair for him to litigate this case in New York. Indeed, the defendant has not presented any argument to support his motion for transfer. Based [*13] on this and the facts in the record, the defendant's motion for transfer is denied.

## Conclusion

The defendant's motions to dismiss based on improper venue and lack of personal jurisdiction and his motion for transfer are denied. The plaintiff's cross-motion for leave to amend its complaint is denied as moot.

Dated: New York, New York

February 27, 2003$

Denise Cote United States District Judge

Westlaw.

Not Reported in F Supp 2d                                                                                     Page 1
Not Reported in F.Supp.2d, 1999 WL 105031 (S.D.N.Y.)
**(Cite as: 1999 WL 105031 (S.D.N.Y.))**

# H

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available

United States District Court, S.D. New York.
John R. CLARKE and Perpetual Growth Funds
Advisors, Inc , Plaintiffs.
v.
FONIX CORPORATION, Stephen M. Hicks,
Southridge Capital Management, LLC, and
Sovereign Partners, L.P , Defendants
**No. 98 CIV. 6116(RPP).**

March 1, 1999.
Speno & Cohen, New York, By David B. Cohen,
Counsel for Plaintiffs

Davis, Weber & Edwards, P.C., New York, By
Lyndon M. Tretter, Emily Granrud, Counsel for
Defendant Fonix Corp

MPR Law Practice, P.C., New York, By Martin P.
Russo, Counsel for Defendants Stephen M. Hicks,
Southridge Capital Management, L.L.C., and
Sovereign Partners, L.P.

OPINION AND ORDER

PATTERSON, D J.

*1 There are two motions pending before the Court.
In one, plaintiffs John R. Clarke and Perpetual Growth
Advisors, Inc , move to restore the action as against
defendant Fonix Corporation ("Fonix"), following its
dismissal without prejudice. In the other, defendants
Stephen M Hicks ("Hicks"), Southridge Capital
Management, L.L.C. ("Southridge"), and Sovereign
Partners, L.P ("Sovereign") (together, "the Hicks
defendants") [FN1] move to dismiss the amended
complaint as against them For the reasons which
follow, the plaintiffs' motion is denied and the Hicks
defendants' motion is granted

> FN1. On October 22, 1998, the New York
> plaintiffs filed an amended complaint, adding
> Hicks and two firms, Southridge Capital
> Management, LLC, a Delaware corporation
> with its principal office in Connecticut, and

Sovereign Partners, LP, as defendants,
alleging that they tortiously interfered with
plaintiffs' agreement with Fonix Southridge
and Sovereign will be considered part of the
"Hicks defendants" because the amended
complaint alleges that Hicks is president of
Southridge and that Southridge is the General
Partner of Sovereign (Am Compl ¶¶ 2-3.)

Background

Plaintiffs original complaint was filed on August 28,
1998, and named only Fonix as a defendant. Plaintiffs
alleged they had a contract with Fonix pursuant to
which Fonix would pay plaintiffs a commission of
five percent "at closing of a financing between Fonix
Corp. and an investor that is a result of an introduction
by Perpetual Growth Advisors, Inc " (Am Compl Ex
A ) [FN2] The complaint went on to allege that
plaintiffs introduced Fonix to defendant Hicks and
arranged the private placement of $25 million of
Fonix securities with "Hicks, individually and acting
through his investment fund " (Compl ¶ 6.) In early
1998, "Hicks" (meaning Hicks individually and acting
through his investment fund (*id* )) invested $10
million in Fonix, and plaintiffs were paid $500,000.
(*Id* ¶ 8.) But "Hicks" went on to make additional
investments in Fonix in March, 1998 ($2 million),
August, 1998 ($1 million), and "at or about the time of
the filing of this action " ($12 million), and plaintiffs
were allegedly never paid their commissions, in the
amount of $750,000. (*Id* ¶¶ 9-10.) In the amended
complaint, which was filed on October 22, 1998, it is
alleged that in making these investments Hicks acted
"by and through Southridge and investment funds
which Defendant Hicks controls directly or indirectly,
known as Dominion Capital Fund, Ltd , Sovereign
Partners, L.P., Excalibur Limited Partnership,
Canadian Advantage Limited Partnership and
Endeavor Capital Fund, S A " (Am Compl ¶¶ 9, 11,
12, 13, 19, 22.)

> FN2. The original complaint makes reference
> to an attached Exhibit A, said to be the
> commission agreement between Fonix and
> the plaintiffs (Compl ¶ 7.) There is no
> Exhibit A attached to the original complaint.
> However, the commission agreement is
> attached to the amended complaint as Exhibit
> A. The original complaint also makes
> reference to an attached Exhibit B, a Funding

© 2007 Thomson/West No Claim to Orig U S. Govt Works.

Not Reported in F.Supp.2d                                                                                          Page 2
Not Reported in F.Supp.2d, 1999 WL 105031 (S.D.N.Y.)
**(Cite as: 1999 WL 105031 (S.D.N.Y.))**

Terms sheet dated March 2, 1998. There is no Exhibit B attached to the original complaint. There is a Funding Terms sheet-not signed by Hicks-attached to the amended complaint

*Plaintiffs' Motion to Restore the Action*

On October 28, 1998, the Court granted Fonix's motion to dismiss the original complaint pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction Plaintiffs are citizens of Georgia, defendant Fonix is a citizen of Utah, and the complaint did not allege that any aspect of the negotiation or execution of the commission agreement was effected in New York Plaintiffs were granted 45 days to take discovery on the personal jurisdiction issue On November 24, 1998, the Court granted a request to extend plaintiffs' time to take discovery on the personal jurisdiction issue to December 24, 1998 Plaintiffs filed their motion to restore the action on that date

The amended complaint alleges that:
In or about March 1998 [FN3], and pursuant to the arrangement effected by plaintiffs as aforesaid, Defendant Hicks, acting by and through Southridge and investment funds which Defendant Hicks controls directly and indirectly, known as Dominion Capital Fund, Ltd., Sovereign Partners, L.P., Excalibur Limited Partnership, Canadian Advantage Limited Partnership and Endeavor Capital Fund, S.A. invested an additional $2 million in Defendant Fonix in or about June 1998; and Defendant Hicks, acting by and through Southridge and investment funds which Defendant Hicks controls directly and indirectly, known as Dominion Capital Fund, Ltd., Sovereign Partners, L.P., Excalibur Limited Partnership, Canadian Advantage Limited Partnership and Endeavor Capital Fund, S.A invested yet an additional $1 million in Defendant Fonix in or about August 1998. Finally, at or about the time of the filing of this action, and upon information and belief, Defendant Hicks, acting by and through Southridge and investment funds which Defendant Hicks controls directly and indirectly, known as Dominion Capital Fund, Ltd., Sovereign Partners, L.P., Excalibur Limited Partnership, Canadian Advantage Limited Partnership and Endeavor Capital Fund, S.A. invested an additional $12 million in Defendant Fonix.

FN3. Note that the complaint says that the additional $2 million investment was made "in or about March 1998" in the first part of

the sentence but "in or about June 1998" at the end of the sentence. Viewing the complaint in the light most favorable to plaintiffs, the Court surmises that the June date is correct The very first investment Hicks made in Fonix, of $10 million, was apparently made in March 1998, and plaintiffs received a commission for that The first non-commissioned investment was made in June 1998

**\*2** Defendant Fonix has failed and refused to pay the Plaintiffs the 5% commission due them on account of the investments by Defendant Hicks, acting by and through Southridge and investment funds which Defendant Hicks controls directly and indirectly, known as Dominion Capital Fund, Ltd., Sovereign Partners, L.P., Excalibur Limited Partnership, Canadian Advantage Limited Partnership and Endeavor Capital Fund, S.A. of the aforesaid additional aggregate investments of $15 million in Defendant Fonix, amounting to $750,000 ("the trailing commissions").
(Am.Compl.¶¶ 12-13.) [FN4]

FN4. On November 9, 1998, Fonix filed suit in the District of Utah for a declaratory judgment that it does not owe Clarke and Perpetual Growth ("New York plaintiffs"), any money. Fonix's Utah complaint alleges that Fonix received investments of $1 million in early June 1998 and $2 million in August 1998, "from investors for which Thomson Kernaghan & Co. was agent." (Utah Compl.¶ 24.) (Thomson Kernaghan was the agent for the investors who invested the initial $10 million in March, 1998. (Utah Com pl. ¶¶ 15-16)) The Utah complaint also alleges that without Thomson Kernaghan as agent, three of the investment funds invested an additional $5 million in Fonix on or about August 31, 1998 (Utah Compl ¶¶ 26-27.)

During the discovery period, plaintiffs deposed Roger Dudley, Fonix's executive vice president and signatory to the February 25, 1998 agreement between Fonix and plaintiffs (Am.Compl.Ex. A) and also deposed defendant Hicks. Dudley and Hicks each testified at their depositions as to their meetings with each other in New York. It appears that there were three or four such meetings. Dudley testified that he met with Hicks in New York on March 10, 1998, to "discuss the financing that he and his investors were involved with on an [im]menent closing with Fonix and again that either may have just closed or was just

© 2007 Thomson/West No Claim to Orig U.S. Govt Works

Not Reported in F.Supp.2d                                                                     Page 3
Not Reported in F.Supp.2d, 1999 WL 105031 (S.D.N.Y.)
(Cite as: 1999 WL 105031 (S.D.N.Y.))

going to close, I don't recall the specific times."
(Granrud Decl. Ex. A at 65.) According to the
amended complaint, the first $10 million that Hicks's
funds invested in Fonix occurred "in or about the early
part of 1998." (Am.Compl. ¶ 11.)

   Dudley testified that he met with Hicks in New York
on June 2, 1998, and the topic of discussion was "a
general review of where Fonix was at the time, status
reports of where Fonix was since the investment, since
mid-March." (Granrud Decl. Ex. A at 65-66.) He
testified that he had another meeting in New York
with Hicks on June 29, 1998, for which the topic was
"a status report of where Fonix was at that point in
time and also where the performance of the stock
portfolio was as it related to any subsequent financing
on the part of Mr. Hicks and his investors." (Id. at 66.)
[FN5] Dudley also testified that he met with Hicks for
a fourth time, before September, 1998, though he was
not clear when exactly this occurred. The "pattern we
have established in visiting with our investors, those
that made direct investments, we meet periodically to
provide status report updates on Fonix and any
capitalization issues." (Granrud Decl. Ex. A at 67.)

           FN5. This appears consistent with the Utah
           complaint's allegation that the March
           purchase agreement between Fonix and the
           Hicks investors provided for a later
           investment by Hicks of $10 million "if
           [Fonix] met certain conditions." (Utah
           Compl ¶ 16.)

   Hicks could not recall the specific dates of his
meetings in New York with Dudley (he did not have
his calendar with him at his deposition), but conceded
that he met with Dudley three or four times in New
York. (Granrud Decl. Ex. B at 16.) "Over the course of
the times that we met, we generally discussed-he
would bring me up to date on the business and issues
regarding the business and at times we would discuss
financing." (Id. at 18.) When asked what he meant by
"financing," Hicks replied, "Well, we discussed
financing and further financing of the company over
the course of the times that we met. I don't specifically
recall the issues, amounts, or the issues or what, but I
know that those things were discussed at various
times.. I recall parts of the discussion were to talk
about, you know, bringing us up to date on the
company and then discussing the company's financing
needs, you know, going forward." (Id at 18-19.)

   *3 Additionally, Hicks was asked "Did you discuss
the plaintiff's commission in any meetings with Mr.
Dudley [in New York]?" and he replied, "I'm trying to

recall. I just don't recall. I don't think so, but I don't
recall." (Id at 22-23.)

   Meanwhile, on November 9, 1998, Fonix filed suit in
the District of Utah for a declaratory judgment that it
does not owe Clarke and Perpetual Growth ("New
York plaintiffs"), any money. (Cohen Decl. Ex. C.)
Fonix brought the suit in Utah "to avoid wasteful
jurisdictional discovery in New York, because there is
no question as to [the Utah] Court's jurisdiction over
all parties, and because the Agreement was executed
in Utah and is governed by Utah law." (Id. ¶ 30.)
[FN6]

           FN6. In the Utah complaint, Fonix alleges
           that
           On or about March 9, 1998. [Fonix] entered
           into a Common Stock Purchase Agreement
           (the "Purchase Agreement") with a Canadian
           company, Thomson Kernaghan & Co., as
           agent for five investment partnerships (the
           "Funds"), two of which were advised by
           Southridge.
           The Purchase Agreement provided for the
           Funds to invest a total of $10 million
           immediately with a commitment for a later
           $10 million investment if [Fonix] met certain
           conditions (the "March Transaction") In
           return. [Fonix] issued to the Funds restricted
           shares of [Fonix's] common stock.
           (Utah Compl ¶ ¶ 15-16.) On March 12
           Fonix paid Clarke his $500,000 commission.
           (Id ¶ 19.) The Utah complaint goes on to
           allege that the conditions for the second $10
           million investment were not met, and "the
           date specified by the Purchase Agreement for
           that additional $10 million financing passed,"
           and the parties treated the Purchase
           Agreement as dead. (Id ¶ ¶ 21-23.) Then.
           In June and early August of 1998, following
           new negotiations, [Fonix] received $1
           million and $2 million, respectively, from
           investors for which Thomson Kernaghan &
           Co was agent ("the June/August
           Transaction")
           In return, the investors received unrestricted
           shares of [Fonix's] stock.
           After further negotiations. [Fonix] received
           an additional $5 million on or about August
           31, 1998 in exchange for a completely
           different type of security; a convertible
           preferred stock with a 4% dividend (the
           "August 31, 1998 Transaction")
           In connection with the August 31, 1998
           Transaction. Thomson Kernaghan & Co. did

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 105031 (S.D.N.Y.)
**(Cite as: 1999 WL 105031 (S.D.N.Y.))**

not act as agent. Rather, three of the Funds participated directly. [The New York plaintiffs] had no knowledge of nor participation in the June/August Transaction or the August 31, 1998 Transaction (*Id* ¶¶ 24-28.)

*The Hicks Defendants' Motion to Dismiss*

Plaintiffs' claim in the amended complaint against Hicks, Southridge and Sovereign is that

Hicks wrongfully, intentionally and maliciously induced and persuaded Defendant Fonix to breach the Agreement and to refuse to pay trailing commissions to the Plaintiffs by purposely structuring his investments in Defendant Fonix subsequent to the First Tranche in a form of security allegedly different from the form of security used in the First Tranche, exclusively for the purpose of providing a rationale, albeit a bogus one, for Defendant Fonix to claim that because of this alleged "difference", it was purportedly not obligated to pay the trailing commissions to the Plaintiffs

(Am Compl ¶ 20.) In their motion to dismiss the amended complaint, the Hicks defendants argue that plaintiffs failed to obtain leave of the Court before amending the complaint; that the Court lacks personal jurisdiction over them; and that the amended complaint fails to state a claim against them for which relief can be granted.

*Discussion*

*Plaintiffs' Motion to Restore the Action*

A federal court sitting in diversity jurisdiction, considering the question of personal jurisdiction, must apply the law of the jurisdiction in which the court sits. *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.* 763 F.2d 55, 57 (2d Cir.1985). Plaintiffs argue that this Court has personal jurisdiction over Fonix under N.Y. C.P.L.R. § 302 and/or § 301. Until 1990 there were conflicting decisions in the Second Circuit concerning the nature of the plaintiff's burden on the jurisdiction testing issue. *Ball v. Metallurgie Hoboken-Overpelt, S .A.,* 902 F.2d 194, 197 n. 3 and accompanying text (2d Cir.), *cert. denied,* 498 U.S. 854 (1990), resolved the discrepancies. "After discovery, the plaintiff's prima facie showing, necessary to defeat a jurisdiction testing motion, must include an averment of facts that, if credited by the trier, would suffice to establish jurisdiction over the defendant. At that point, the prima facie showing must be factually supported." *Id* (citing *Hoffritz,* 763 F.2d at 57 and *Birmingham Fire Insurance Co. v. KOA Fire*

*& Marine Insurance Co.,* 572 F.Supp. 962, 964 (S.D.N.Y.1983))

*§ 302 Jurisdiction*

*\*4* § 302 provides in pertinent part:
(a) Acts which are the basis of jurisdiction As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:
1 transacts any business within the state or contracts anywhere to supply goods or services in the state.

In order for a court to have personal jurisdiction over a non-domiciliary defendant in a given cause of action, the allegations in the complaint of a New York transaction must "bear a substantial relationship to the transaction out of which the instant cause of action arose." *McGowan v. Smith,* 437 N.Y.S.2d 643, 645 (1981) There must be a nexus-"a direct relationship between the cause of action and the in-state conduct." *Beacon Enterprises, Inc. v. Menzies,* 715 F.2d 757, 764 (2d Cir.1983). A single act or transaction can be sufficient to confer personal jurisdiction over a nondomiciliary defendant so long as the nexus requirement is met. *Deveny v. Rheem Manufacturing Co.,* 319 F.2d 124, 127 (2d Cir.1963); *Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc.,* 261 N.Y.S.2d 8, 18, *cert. denied sub nom Estwing Manufacturing Co ., Inc. v. Singer,* 382 U.S. 905 (1965) Activities in New York subsequent to the execution of a contract can satisfy the statute's requirements *Id* "Acts performed by a defendant subsequent to the execution of a contract are ordinarily of jurisdictional consequence." *Cutco Industries, Inc. v. Naughton,* 806 F.2d 361, 367 (2d Cir.1986)

The contract which plaintiffs allege Fonix breached was negotiated and executed outside of New York. The only "purposeful contacts of the defendant Fonix with the New York forum" are the "*four* meetings of Fonix's executive, Roger Dudley, in 1998, prior to September 1998, with the defendant Hicks [in New York] to negotiate and otherwise discuss the various investments of the Hicks defendants in Fonix which the plaintiffs claim in their amended complaint are commissionable to them, and to review Fonix's performance relative to those investments." (Pl. Mem. at 5; emphasis in original.) Plaintiffs argue that Fonix is subject to long arm jurisdiction because Hicks and Dudley negotiated the terms of Hicks's investments subsequent to the initial investment on which a commission was paid to plaintiffs (Pl. Mem. at 6;)

© 2007 Thomson/West No Claim to Orig U.S. Govt Works.

Not Reported in F.Supp.2d                                                                 Page 5
Not Reported in F.Supp.2d, 1999 WL 105031 (S.D.N.Y.)
**(Cite as: 1999 WL 105031 (S.D.N.Y.))**

these negotiations occurred in New York, and the result of the negotiations was that "Hicks, acting by and through Southridge and investment funds which Defendant Hicks controls directly or indirectly" caused those funds to invest in Fonix; and plaintiff never received his commissions from Fonix for those investments

However, plaintiffs are unable to point to even one *act* which Fonix undertook in New York which constituted a breach of contract or interfered with plaintiffs' rights under their contract with Fonix In the amended complaint, the plaintiffs allege that Hicks induced Dudley to breach Fonix's agreement with the plaintiffs by restructuring his investments in Fonix after the first $ 10 million (Am.Compl ¶ 20.) After discovery, the facts and allegations suggest that at most Hicks and Dudley had four meetings in New York, and that following each meeting, Hicks (acting through Southridge and other investment funds advised by him) made an investment in Fonix. Plaintiffs have not shown that any breach by Fonix of its contract with plaintiffs occurred in New York during those Dudley-Hicks meetings. Plaintiffs have adduced no documentary or testimonial evidence that Hicks gave Dudley a check in New York or otherwise consummated his funds' investments in Fonix while at their New York meetings And even if there were such evidence, it would not necessarily establish the nexus between Fonix's actions and the plaintiffs' cause of action Fonix's receipt of further investments from the other defendants-or Dudley's agreement to receive such investments-could not have breached Fonix's contract with plaintiffs. That contract could only have been breached at the moment Fonix did not pay plaintiffs a commission to which they were entitled. Granted, it is sometimes difficult to pinpoint the exact moment-and the precise locale-of a breach of contract when the breach is established by a party's *non*-performance However, in this case, plaintiffs have not offered any evidence, even viewed in the light most favorable to plaintiffs, which tends to show that Fonix breached its February 25, 1998, agreement with the plaintiffs while Dudley was in New York [FN7]

> FN7. Nor have plaintiffs averred or shown, by documentary evidence or oral testimony, that Fonix entered into any contract in New York with the Hicks defendants which deprived plaintiffs of their rights under their agreement with Fonix.

§ 301 Jurisdiction

*5 Plaintiffs also argue that Fonix is subject to this Court's personal jurisdiction pursuant to C.P.L.R. § 301 because Fonix is "doing business" in New York in a general sense In order to be subject to personal jurisdiction under § 301, a non-domiciliary person or corporation must be doing business in New York "not occassionally or casually, but with a fair measure of permanence and continuity." *Tauza v. Susquehanna Coal Co.,* 220 N.Y. 259, 267 (1917). "Unless there is a permanent 'presence' in New York, as opposed to isolated and casual activity, jurisdiction does not extend to causes of action unrelated to in-state activity " J. Weinstein, H. Korn, & A. Miller, *New York Civil Practice* § 301.16 at 3-33 "In assessing jurisdiction under this pragmatic standard, New York courts have generally focused on the following indicia of jurisdiction: the existence of an office in New York; the solicitation of business in New York; the presence of bank accounts or other property in New York; and the presence of employees or agents in New York " *Landoil Resources Corp. v. Alexander & Alexander Services, Inc.,* 918 F.2d 1039, 1043 (2d Cir.1990)

Plaintiffs argue that there are many indicia of Fonix's presence in New York: its solicitation of investment capital in New York; its employees' travel to New York to attend "trade shows and symposia, where they promoted Fonix-manufactured products [FN8] and attempted to recruit New York distributors"; the fact that the 1998 annual board of directors meeting took place in New York; the fact that one of Fonix's directors works in New York; the fact that Fonix's stock transfer agent and "many of its institutional investors" are located in New York; and the fact that Fonix filed a certificate qualifying it to do business in New York (Pl. Mem. at 8.) Fonix says that none of these indicia, standing alone, amount to sufficient proof of "doing business" in New York.

> FN8. Neither the complaint nor the amended complaint alleges that Fonix is a manufacturer of any product. According to Fonix's 10-K annual report, it is a research and development company.

Indeed, board meetings held in New York, or the presence of a board member in New York, is not evidence of doing business here. *Garson v. Richmond, Fredericksburg & Potomac R.R.,* 82 N.Y.S.2d 637, 637-38 (Sup.Ct.1948). The fact that a stock transfer agent is in New York does not confer jurisdiction, *Gilson v. Pittsburgh Forgings Co.,* 284 F.Supp. 569, 571 (S.D.N.Y.1968), nor does the fact that the defendant's employees attend trade shows. *Lane v. Vacation Charters, Ltd.,* 750 F.Supp. 120, 125

© 2007 Thomson/West No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 105031 (S.D.N.Y.)
(Cite as: 1999 WL 105031 (S.D.N.Y.))

(S.D.N.Y.1990)

The solicitation of funds is not Fonix's business; according to its 10-K annual report, it is a research and development company. (Granrud Decl. Ex. D.) Raising financing is not a form of "doing business" for the purpose of § 301; if it were, then almost every company in the country would be subject to New York's jurisdiction *Daniel v. American Board of Emergency Medicine*, 988 F.Supp. 127, 224 (W.D.N.Y.1997); *Robbins v. Ring*, 166 N.Y.S.2d 483 (Sup.Ct.1957). [FN9]

> FN9. In *Mantello v. Hall*, 947 F.Supp. 92 (S.D.N.Y.1996) Judge Mukasey granted the defendants' motion to dismiss for lack of personal jurisdiction in a fact pattern roughly analogous to the situation here. Mantello was a theater director who charged that after he directed a production of a Terrence McNally play in New York, the defendants "intentionally recreated his unique direction and staging" in a production they staged in Florida. *Id.* at 96. Mantello argued that the defendants were subject to § 301 jurisdiction because they regularly traveled to New York to see plays and decide which to produce in Florida and to negotiate and execute licenses for such Florida productions, and because they regularly advertised for actors in New York and used a New York casting agency, among other reasons. But Judge Mukasey ruled that
> Defendants and others similarly situated, who lack the traditional indicia of doing business, do not subject themselves for all purposes to the jurisdiction of New York courts merely because they travel to New York to exploit the synergy between New York City's unique theatrical resources and the work of regional theaters.
> *Id.* at 99 (quotation omitted). Substituting "capital raising" for "theatrical," and "companies in need of investment capital" for "regional theaters" results in the same conclusion in the present case.

Finally, with respect to Fonix's certificate qualifying it to do business in New York, as the Court indicated at oral argument on October 28, 1998, the certificate was filed only four days before this lawsuit was initiated, not at the time of the alleged breaches of plaintiffs' contract with Fonix. While filing a certificate to do business in New York can be strong evidence tending to subject a firm to the personal

jurisdiction of New York courts, it does not have automatic retroactive effect. In this case Fonix's certificate is insufficient grounds to establish § 301 jurisdiction. [FN10]

> FN10. It should be noted that another basis for dismissing the complaint as against Fonix is that the suit has been filed in the improper venue. Federal subject matter jurisdiction over this action is based entirely on diversity of citizenship, and thus the suit is subject to 28 U.S.C. § 1391(a), which states:
> (a) A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought. Even if it could be said that Dudley transacted business while meeting with Hicks in New York, there is no question that a *substantial* part of the events or omissions giving rise to plaintiffs' claim did not occur in New York. Plaintiffs' action against Fonix could obviously have been brought in Utah.

*Hicks Defendants' Motion to Dismiss*

*6 The Hicks defendants argue that the amended complaint should be dismissed because the plaintiffs failed to obtain leave of the Court to add new defendants pursuant to Federal Rule of Civil Procedure 21; because the amended complaint fails to state a claim against them for which relief can be granted; and because this Court lacks personal jurisdiction over them.

*Rule 21*

Federal Rule of Civil Procedure 15(a) permits one amendment to a pleading as a matter of course before the filing of a responsive pleading. [FN11] The Hicks defendants argue that Rule 21 trumps Rule 15(a). Rule 21 states in relevant part, "Parties may be dropped or added by order of the court *on motion of any party* ." Fed. R. Civ. Pro. 21 (emphasis added). However, the authority which the Hicks defendants cite for this

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 7
Not Reported in F.Supp.2d, 1999 WL 105031 (S.D.N.Y.)
**(Cite as: 1999 WL 105031 (S.D.N.Y.))**

proposition, <u>Renard v. Dillman</u>, No. 97-9080, 1998 WL 642474 (2d Cir. Apr. 6, 1998), is an unpublished opinion According to Second Circuit Rule 0.23, "Since [unpublished opinions] do not constitute formal opinions of the court and are unreported or not uniformly available to all parties, they shall not be cited or otherwise used in unrelated cases before this or any other court." Defendants' argument relying on <u>Renard</u> is thus disregarded. Another Second Circuit case is controlling: in <u>Washington v. New York City Board of Estimate</u>, 709 F.2d 792, 795 (2d Cir.), <u>cert denied</u>, 464 U.S. 1013 (1983), the court relied solely on <u>Rule 15(a)</u> in vacating the district court's denial of the plaintiff's attempt to add two defendants.

> FN11. No responsive pleadings have been filed in this case. A motion to dismiss is not considered a responsive pleading Wright, Miller & Kane, <u>6 Federal Practice and Procedure</u> Civil 2d § 1475 (1990)

Even if leave of the Court were required, a plaintiff's failure to request formally the Court's permission is easily corrected and should not, alone, justify dismissal. <u>Orloff v. Hayes</u>, 7 F.R.D. 75 (S.D.N.Y.1946). Moreover, leave to amend should be freely granted in the early stages of litigation, absent undue delay, bad faith, prejudice to the opposing party, or futility <u>FTD Corp. v. Banker's Trust Co.</u>, 954 F.Supp. 106, 109 (S.D.N.Y.1997). "Although <u>Rule 21</u>, and not <u>Rule 15(a)</u> normally governs the addition of new parties to an action, the same standard of liberality applies under either Rule." <u>Id</u> (quotation marks and citations omitted).

*Failure to State a Claim for Which Relief Can be Granted*

The Hicks defendants argue that the amended complaint is in fact futile and should be dismissed because it fails to state a claim for which relief can be granted. However, the amended complaint alleges a prima facie case of tortious interference with contract against the Hicks defendants. The elements of a tortious interference with contract claim are (1) the existence of a valid contract, (2) the tortfeasor's knowledge of the contract and intentional interference with it, (3) the resulting breach, and (4) damages. <u>Hoag v. Chancellor, Inc.</u>, 677 N.Y.S.2d 531, 533 (1st Dep't.1998) The amended complaint alleges that plaintiffs had a contract with Fonix (Am.Compl ¶ 10); that the Hicks defendants had notice and knowledge of that contract (<u>Id</u> ¶ 19); that the Hicks defendants intentionally interfered with that contract (<u>Id</u> ¶ 20); that the contract was breached (<u>Id.</u> ¶¶ 13-16, 21); and

that plaintiffs were damaged. (<u>Id</u> ¶ 22.) The Hicks defendants argue that plaintiffs were "no more than an incidental third party beneficiary to the agreement" between Fonix and the Hicks-advised investment funds (Hicks Mem at 10) The Hicks defendants also argue that under New York law there can be no claim for tortious interference with contract against a contracting party. (<u>Id</u> at 13.) But these arguments are irrelevant, because the contract tortiously interfered with under plaintiffs' claim against the Hicks defendants is *plaintiffs'* February 25, 1998, contract with Fonix, which it alleges was tortiously interfered with by Fonix's subsequent investment agreements with the Hicks-advised funds.

*Personal Jurisdiction*

**\*7** The Hicks defendants also argue that the amended complaint fails to allege facts which would establish this Court's personal jurisdiction over the Hicks defendants. This point is well taken C.P.L.R. § 302(a)(2) states, "As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent...commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act " The amended complaint does not plead any facts showing that the Hicks defendants engaged in any tortious conduct *in New York* The amended complaint asserts:

> Some time commencing after March 1998 and continuing thereafter up to the present time, Defendant Hicks wrongfully, intentionally and maliciously induced and persuaded Defendant Fonix to breach the Agreement [between Fonix and the plaintiffs] and to refuse to pay trailing commissions to the Plaintiffs by purposely structuring his investments in Defendant Fonix subsequent to the First Tranche in a form of security allegedly different from the form of security used in the First Tranche, exclusively for the purpose of providing a rationale, albeit a bogus one, for Defendant Fonix to claim that because of this alleged "difference", it was purportedly not obligated to pay the trailing commissions to the Plaintiffs
> As a direct result of these acts of Defendant Hicks, Defendant Fonix violated, repudiated and breached the Agreement and refused to pay the trailing commissions to the Plaintiffs.

(Am.Compl.¶¶ 20-21.) Nowhere does the amended complaint allege that the defendants' tortious acts occurred in New York. Thus, the amended complaint must be dismissed for lack of personal jurisdiction

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.2d                                                    Page 8
Not Reported in F.Supp.2d, 1999 WL 105031 (S.D.N.Y.)
**(Cite as: 1999 WL 105031 (S.D.N.Y.))**

[FN12] This dismissal is without prejudice to file a
second amended complaint which does allege the
appropriate jurisdictional facts 28 U.S.C. § 1653.
However, the proper venue for such an action would
appear to be the judicial district where any defendant
resides. 28 U.S.C. § 1391(a)

> FN12. The plaintiffs claim that the Court has
> personal jurisdiction over the Hicks
> defendants because they have evidenced "to
> the Court that the Hicks defendants maintain
> an office in the City of New York for the
> regular, continuous and substantial conduct
> of business in New York." (Pl. Mem Ex A at
> 6.) The Court supposes that this argument is
> based on C. P.L.R. § 301 The only
> allegation in the amended complaint which
> would support § 301 jurisdiction over the
> Hicks defendants is the allegation that "All
> Defendants are doing business in the state of
> New York." (Am Compl ¶ 7.) A complaint
> must allege facts in support of personal
> jurisdiction, not merely conclusions. The
> statement by plaintiffs' attorney Sarah Speno
> that the Hicks defendants "maintain an office
> for the conduct of business in the City of
> New York in care of Meridian Equities, 126
> East 56th Street, New York, New York
> 10022, and regularly and continuously do
> substantial business in New York (Cohen
> Decl Ex H ¶ 2) is insufficient evidentiary
> support to establish § 301 jurisdiction over
> those defendants

Conclusion

For the foregoing reasons, plaintiffs' motion to restore
this action, as against defendant Fonix, is denied. The
motion of defendants Hicks, Southridge, and
Sovereign is granted without prejudice.

IT IS SO ORDERED

Not Reported in F.Supp.2d, 1999 WL 105031
(S.D.N.Y.)

**Motions, Pleadings and Filings (Back to top)**

• 1:98cv06116 (Docket) (Aug. 28, 1998)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

LEXSEE 2001 U.S. DIST. LEXIS 1857



Cited
As of: Jan 22, 2007

**THOMAS N. HENNIGAN d/b/a HENNIGAN INTERNATIONAL, INC., Plaintiff, -against- TASER INTERNATIONAL, INC., PATRICK W. SMITH and PHILIP SMITH, Defendants.**

**00 Civ. 2981 (MBM)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

**2001 U.S. Dist. LEXIS 1857**

**February 23, 2001, Decided**
**February 26, 2001, Filed**

**DISPOSITION:** [*1] Defendants' motion to dismiss for lack of personal jurisdiction granted. Defendants' motion to transfer venue denied. Defendants' other motions denied as moot.

**COUNSEL:** For Plaintiff: LESLIE TRAGER, ESQ., Morley & Trager, New York, NY.

For Defendant: LEONARD S. REISS, ESQ., Toback Hyman & Bernstein, New York, NY.

**JUDGES:** Michael B. Mukasey, U.S. District Judge.

**OPINION BY:** Michael B. Mukasey

**OPINION:**

OPINION & ORDER

MICHAEL B. MUKASEY, U.S.D.J.

Thomas Hennigan sues Taser International, Inc ("Taser"), Patrick W. Smith and Phillips Smith for damages arising from, inter alia, the alleged termination of Hennigan's distribution agreement with Taser. Defendants move to dismiss Hennigan's complaint for lack of personal jurisdiction or venue or, in the alternative, to transfer venue. For the reasons set forth below, defendants' motion to dismiss for lack of personal jurisdiction is granted. Defendants' motion to transfer venue is denied.

I

The following facts are presented in the light most favorable to the plaintiff. Taser is a corporation with its principal place of business in Arizona. (Patrick W. Smith Aff. P 3) Taser markets and manufactures the Air Taser Stun Gun, a non-lethal, self-defense [*2] device. (Compl P 15; Patrick W. Smith Aff. P 7) Phillips Smith is, and at all times relevant to this action was, a shareholder and Chairman of the Board of Taser. (Patrick W. Smith Aff P 31; Phillips Smith Aff. P 3) Patrick W. Smith is the President and Chief Executive Officer of Taser. (Patrick Smith Aff. P 2) Patrick W. Smith and Phillips Smith are residents of Arizona. (Patrick W. Smith Aff. P 32; Phillips Smith Aff. P 3)

Hennigan is a federally licensed firearms dealer and a resident of New York. (Compl. P 14) According to the complaint, Hennigan and Taser entered into what Hennigan calls a "joint venture," under which it was agreed, via telephone, that Hennigan would distribute

Taser products. (Compl. P 19) No written agreement was executed between Hennigan and Taser. Moreover, no representatives of Taser ever visited New York in connection with the negotiation or execution of Hennigan's distribution agreement.

In late 1997, Hennigan, along with his associate, H.A. "Buzz" Russell, began contacting law enforcement agencies throughout the United States with the purpose of selling the Taser products. (Id. P 22) Among the agencies contacted were the New York City Police Department, [*3] the Nassau County Police Department and the New York State Police, for whom Hennigan arranged demonstrations of the Air Taser. (Id. P 24) Representatives of Taser, including Patrick Smith, also participated in at least five of these demonstrations, which took place in New York (Hennigan Aff. P 6). According to Hennigan, by March 3, 1999, the New York City Police Department was "in a position to buy significant quantities of the Air Tasers." (Compl. P 34) Moreover, at some point during this period, Hennigan entered into a "sole source agreement" with the New York City Police Department. (Hennigan Aff. P 8) Although the complaint and accompanying affidavits are unclear as to the nature of this agreement, it appears to designate Hennigan as the New York City Police Department's sole supplier of the Air Taser. (Id.)

The complaint alleges that, on January 6, 2000, Taser attempted to change the terms of its distribution agreement with Hennigan by, inter alia, substantially reducing the number of accounts assigned to him. (Compl. P 42) Hennigan rejected the changes to the agreement. (Id.) On February 21, 2000, Taser terminated its agreement with Hennigan (Id. P 44) Patrick [*4] W. Smith subsequently notified the New York City Police Department of the termination. (Patrick Smith Aff. P 30) Hennigan also alleges that, prior this termination, Taser representatives informed the New York City Police Department that Hennigan was not the exclusive distributor of the Air Taser. (Compl. P 64)

Hennigan started this action in New York State Supreme Court, with claims for breach of contract, quantum meruit, promissory estoppel, breach of fiduciary duty, tortious interference with contractual relations, prima facie tort, fraud and a claim styled "commissions." The action was then removed to this Court.

II.

As noted, defendants move to dismiss for lack of personal jurisdiction. In a diversity case, such as this one, the issue of personal jurisdiction is determined according to the law of the forum state. See Omni Capital Int'l Ltd. v. Rudolf Wolff & Co., 484 U.S. 97, 105-10, 98 L. Ed. 2d 415, 108 S. Ct. 404 (1987). If the exercise of jurisdiction is appropriate under the state's statutes, the court must then decide whether such exercise is consistent with due process. Bensusan Restaurant Corp. v. King, 126 F.3d 25, 27 (2d Cir. 1997). [*5] Where, as here, there has been no discovery, the plaintiff need only make a prima facie showing by its pleadings and affidavits that jurisdiction over the defendant is proper. Cutco Indus., Inc. v. Naughton, 806 F.2d 361, 365 (2d Cir. 1986). Moreover, a plaintiff seeking to withstand a Rule 12(b)(2) motion is entitled to have its complaint and affidavits interpreted, and doubts resolved, in its favor. See Metropolitan Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 566 (2d Cir. 1996).

A. C.P.L.R. § 301

Hennigan argues that Taser is subject to jurisdiction under N.Y. C.P.L.R. § 301 as a corporation "doing business" in New York. (Pl. Mem. at 9) To satisfy the "doing business" requirement, a plaintiff must establish that the corporation is engaged in a "continuous and systematic" course of business in the forum state. See Jurlique, Inc. v. Austral Bio Lab PTY, Ltd., 187 A.D.2d 637, 639, 590 N.Y.S.2d 235, 237 (2d Dep't 1992). Hennigan has failed to satisfy this burden.

As noted, Taser is an Arizona corporation with its principal place of business in Arizona. (Patrick W. Smith Aff. P 3) Taser has no certificate of incorporation, [*6] office, bank account, property or telephone number in New York. (Id. P 4) Taser employees have visited New York only a handful of times since 1997. (Id. P 9) In addition, Taser's sales to New York during 1998 and 1999 amounted to approximately 3% of its nationwide sales. (Id. P 6) These contacts with New York are neither continuous nor systematic, and cannot form the basis for jurisdiction under C.P.L.R. § 301. Moreover, Hennigan's presence in New York as Taser's distributor is insufficient to establish jurisdiction over Taser. See Jurlique, 187 A.D.2d 637, 590 N.Y.S.2d 235 (presence of distributor in New York insufficient to establish jurisdiction over foreign corporation).

Hennigan argues that, notwithstanding the evidence set forth above, Taser is subject to jurisdiction under §

2001 U.S. Dist. LEXIS 1857, *6

301. He alleges that, beginning in 2000, the New York City Police Department "planned to purchase approximately $ 1.2 million [worth] of Air Tasers" and that sales to New York at the time of this lawsuit "probably represent 25%-50% of Taser's total sales." (Hennigan Aff. P5) (emphasis added) However, this evidence fails to demonstrate Taser's "continuous and systematic" [*7] contacts with New York. First, vague and generalized allegations, such as these, are insufficient to make a prima facie showing of jurisdiction over an out-of-state defendant. See Ring Sales v. Wakefield Engineering, 90 A.D.2d 496, 454 N.Y.S.2d 745 (2d Dep't 1982). Second, Hennigan's allegations are directly contradicted by evidence submitted by others with personal knowledge of the facts. According to Patrick W. Smith, sales to all New York customers during the first five months of 2000 amounted to $ 61,555.77 or 4.54% of Taser's total sales -- a number significantly less than the $ 1.2 million conjectured by Hennigan. (Patrick W. Smith Suppl. Aff. P 7) Although a plaintiff opposing a Rule 12(b)(2) motion is entitled to have his complaint and affidavits interpreted, and doubts resolved, in his favor, see Metropolitan Life, 84 F.3d at 566, affidavits premised on personal knowledge are credited over contradictory affidavits based on information and belief. See Raskin v. Compania de Vapores Realma, S.P., 521 F. Supp. 337 (S.D.N.Y. 1981); see also Birmingham Fire Ins. Co. of Pennsylvania v. KOA Fire and Marine Ins. Co., Ltd., 572 F. Supp. 962, 965 (S.D.N.Y. 1983). [*8] Accordingly, Hennigan has failed to make a prima facie showing that Taser is subject to jurisdiction under § 301.

## B. C.P.L.R. § 302(a)(1)

Hennigan argues also that Taser is subject to personal jurisdiction under § 302(a)(1) of New York's Long Arm Statute. Section 302(a)(1) permits a court to exercise jurisdiction over an out-of-state defendant who "transacts any business within the state" and whose claim "arises out of that business activity." Cutco, 806 F.2d at 365. In determining whether an out-of-state defendant has transacted business in New York, a court must look to the totality of the circumstances to determine the existence of such purposeful activity, and may not subject the defendant to jurisdiction based on "random, fortuitous, or attenuated contacts." K.C.P.L., Inc. v. Nash, 1998 U.S. Dist. LEXIS 18464, *12, No. 98 Civ. 3773, 1998 WL 823657, at *4 (S.D.N.Y. Nov. 24, 1998) (citing Cutco, 806 F.2d at 365). Moreover, a claim "arises out of" a defendant's transaction of business in New York

when there exists a "substantial nexus" between the business transacted and the cause of action sued upon. See Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp., 98 F.3d 25, 31 (2d Cir. 1996) [*9]

To show that Taser is subject to jurisdiction under § 302(a)(1), Hennigan points to the following: (1) Hennigan's distribution agreement with Taser; (2) the presence of Taser representatives at six meetings in New York with local police departments; and (3) telephone calls made by Taser to local New York police departments regarding Air Taser. Even assuming the truth of these allegations, however, they do not provide a basis for jurisdiction under § 302(a)(1)

First, the contract between Hennigan and Taser was negotiated and executed, if at all, via telephone while Taser remained in Arizona. This is insufficient to establish jurisdiction over Taser in New York. See, e.g., Agrashell, Inc. v. Bernard Sirotta Co., 344 F.2d 583, 587 (2d Cir. 1965) (holding that negotiation and execution of contracts by mail and telephone with persons residing in New York was insufficient to give New York personal jurisdiction over non-domiciliaries) Further, although Taser's other New York activities arguably relate to business transacted in New York, none of Hennigan's claims arose from these activities. For example, Taser's telephone calls to New York police departments and the [*10] meetings between Taser representatives and local police departments in New York did not relate to Taser's agreement with Hennigan, but rather to Taser's attempt to promote and sell its product. Were the police departments suing Taser, these meetings and telephone calls could perhaps constitute a basis for exercising jurisdiction. However, in the instant case, Taser's activities in New York lack the required "substantial nexus" to Hennigan's claims to give rise to jurisdiction. See Stein v. Microelectronic Pkg., 1999 U.S. Dist. LEXIS 11375, No. 98 Civ. 8952, 1999 WL 540443, at *4 (S.D.N.Y. July 26, 1999) (holding out-of-state defendant's New York activities relating to transactions with non-plaintiffs were insufficient to establish jurisdiction over defendant)

## C. C.P.L.R. § 301(a)(2)

Hennigan argues that defendants are subject to jurisdiction also under § 301(a)(2) of New York's Long Arm Statute, which permits a court to exercise jurisdiction over a defendant who "commits a tortious act within the state." N.Y. C.P.L.R. § 302(a)(2) (McKinney 2000). Hennigan's argument fails, however, because none

Case 1:08-cv-02327    Document 24-3    Filed 01/23/2007    Page 37 of 46

Page 4
2001 U.S. Dist. LEXIS 1857, *10

of the tortious acts of which Hennigan complains -- fraud, tortious interference with contractual [*11] relations, prima facie tort and breach of fiduciary duty -- was committed in New York.

Under § 302(a)(2), a defendant's physical presence in New York is a prerequisite to jurisdiction. See Bensusan, 126 F.3d at 29. Here, although Hennigan alleges that defendants were in New York on several occasions, he fails to offer any evidence that defendants committed torts while they were present in this forum. Hennigan's most persuasive allegation that defendants were present in New York at the time of their tortious acts is contained in his affidavit, which states that "the fraudulent statements described in paragraph 69 of the complaint were made to me by Patrick W. Smith when he was in New York." (Hennigan Aff. P 9) However, this allegation, without more, does not constitute a prima facie showing that the exercise of jurisdiction over defendants would be proper. See Ring Sales, 90 A.D.2d 496, 454 N.Y.S.2d 745 (holding that vague and generalized allegations of defendant's in-state contacts were insufficient to withstand motion to dismiss).

D. C.P.L.R. § 302(a)(3)

With respect to his tortious interference and prima facie tort claims, Hennigan argues that [*12] Patrick W. Smith and Phillips Smith are subject to jurisdiction under C.P.L.R. § 302(a)(3), which provides for jurisdiction over a defendant who, inter alia, "commits a tortious act without the state causing injury to person or property within the state." N.Y. C.P.L.R. § 302(a)(3) (McKinney 2000) I disagree. As discussed, in order to survive a motion to dismiss, a plaintiff need only make a prima facie showing by its pleadings and affidavits that jurisdiction over the defendant is proper. Cutco, 806 F.2d at 365. However, under § 302(a)(3), this prima facie showing requires the plaintiff to show not only that the defendant committed acts causing an injury within the forum state, but also that those acts were tortious. See Family Internet, Inc. v. Cybernex, Inc., 1999 U.S. Dist. LEXIS 15549, *21, No. 98 Civ. 0637, 1999 WL 796177, at *7 (S.D.N.Y. Oct. 6, 1999) ("the exercise of jurisdiction pursuant to section 302(a)(3) requires, at a bare minimum, that the complaint adequately allege a tortious act committed by [the defendant].")

In this case, Hennigan has failed to adequately allege tortious interference on the part of Patrick W. Smith and Phillips Smith. To state a claim [*13] for tortious interference, a plaintiff must allege (1) the existence of a valid contract between itself and a third party for a specific term; (2) defendant's knowledge of that contract; (3) defendant's intentional procuring of its breach; (4) damages. See Foster v. Churchill, 87 N.Y.2d 744, 642 N.Y.S.2d 583, 665 N.E.2d 153 (1996). Here, Hennigan alleges that Patrick W. Smith and Phillips Smith informed the New York City Police Department that Hennigan was not a sole source provider and that other Taser dealers were free to compete with Hennigan (Compl. P 64) First, it is unclear from Hennigan's submissions whether he has any agreement at all with the New York City Police Department. Rather, the complaint implies that Hennigan was simply "designated" sole source supplier "by Taser." (Compl. P 64) (emphasis added) Second, even assuming a contract exists, Hennigan fails to allege, as required, that the contract was for a specific term. He also fails to allege, as required, that there has been a breach of that contract. Accordingly, these allegations are insufficient to establish the commission of a tortious act as required by § 302(a)(3).

Hennigan's prima facie [*14] tort allegations also are inadequate. Prima facie tort consists of (1) intentional infliction of harm, (2) causing special damages, (3) without excuse or justification, (4) by an act or series of acts that would otherwise be lawful. Curiano v. Suozzi, 63 N.Y.2d 113, 117, 480 N.Y.S.2d 466, 468, 469 N.E.2d 1324 (1984). To state a claim for prima facie tort, a plaintiff must allege that the defendant's "sole motivation . . . was disinterested malevolence." Id. (emphasis added). When there are other motives, such as profit, self-interest or business advantage, no recovery under a prima facie tort theory is permitted. See Marcella v. ARP Films, Inc., 778 F.2d 112, 119 (2d Cir. 1985). Here, Hennigan's prima facie tort allegations are deficient in several respects. Most notably, Hennigan has failed to allege, as required, that defendants' sole motivation in contacting the New York City Police Department about his termination was to harm him. Rather, the only reasonable inference from the complaint is that defendants were motivated by economic and business interests, which undermines Hennigan's prima facie tort claim. Additionally, Hennigan has failed [*15] to plead special damages by providing "a particularized statement of the reasonably identifiable and reasonable losses suffered." Western Meat Co., Inc. v. IBP, Inc., 683 F. Supp. 415, 420 (S.D.N.Y. 1988) (internal citations and quotations omitted). "Round sums without any attempt at itemization are not sufficient." Doolittle v. Ruffo, 882 F.

2001 U.S. Dist. LEXIS 1857, *15

Supp. 1247, 1258 (N.D.N.Y 1994). Hennigan roundly alleges damages of $ 50 million, and seeks punitive damages of $ 150 million. Once again, these allegations are insufficient to establish the commission of a tortious act as required by § 302(a)(3).

E. Agency

Finally, Hennigan argues that jurisdiction may be exercised over Patrick W. Smith and Phillips Smith because Taser was subject to their domination and control and therefore acted as their agent in New York. (Pl Mem at 12) Although the individual defendants dispute the accuracy of Hennigan's allegations regarding their control and ownership of Taser, resolution of this dispute is not necessary to dispose of the instant motion. As discussed above, Taser is not subject to jurisdiction in New York. Thus, even assuming that Patrick W. Smith and Phillips Smith [*16] dominated and controlled Taser's day-to-day activities, jurisdiction over them, as a result of Taser's New York contacts, would be improper.

III.

Defendants also have moved to dismiss the complaint for improper venue or, in the alternative, to transfer this case to the District of Arizona. Because Hennigan's complaint must be dismissed for lack of personal jurisdiction, I decline to consider the issue of venue. In particular, I decline the transfer motion because, as noted, this case initially was filed in state court and was removed. Accordingly, Hennigan may prefer another state forum to a federal court in Arizona.

* * *

For the reasons set forth above, defendants' motion to dismiss for lack of personal jurisdiction is granted. Defendants' other motions are denied as moot.

SO ORDERED:

Dated: New York, New York

February 23, 2001

Michael B. Mukasey

U.S. District Judge

Westlaw.

Not Reported in F.Supp.2d                                                    Page 1
Not Reported in F.Supp.2d, 2005 WL 1421805 (W.D.N.Y.)
**(Cite as: 2005 WL 1421805 (W.D.N.Y.))**

C

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
W.D. New York.
IVOCLAR VIVADENT, INC., Plaintiff,
v.
ULTIDENT, INC., Defendant.
**No. 04-CV-0984(SC).**

June 15, 2005

Patrick J. Maxwell, Harris Beach LLP, Buffalo, NY,
for Plaintiff.

Stuart B. Shapiro, Cohen & Lombardo, P.C., Buffalo,
NY, for Defendant.

MEMORANDUM and ORDER [FN1]

> FN1. This decision may be cited in whole or
> in any part.

ELFVIN, J.

*1 Plaintiff Ivoclar Vivadent, Inc. commenced this
trademark infringement action on December 13, 2004
against defendant Ultident, Inc. Plaintiff alleges that
defendant has infringed and continues to infringe on
plaintiff's trademarks in violation of federal and state
law by wrongfully and illegally importing, advertising,
selling and distributing some of plaintiff's dental
products ("Products"). On February 14, 2005
defendant filed a Motion to Dismiss for lack of
jurisdiction pursuant to Rule 12(b)(2) of the Federal
Rules of Civil Procedure ("FRCvP"). Plaintiff, in
opposition to defendant's Motion to Dismiss, claims
that defendant is subject to the Court's jurisdiction and
alternatively requests jurisdictional discovery if the
undersigned does not find a *prima facie* showing of
personal jurisdiction. For the reasons set forth below,
defendant's Motion will be granted and plaintiff's
request for jurisdictional discovery will be denied.

Plaintiff alleges the following in its Complaint.
Plaintiff markets, distributes and sells the Products
nationally and internationally, has valid trademarks
with regard to the Products and has a reputation for

excellent product quality, customer service and
reliability. Plaintiff claims that defendant unlawfully
gained possession of the Products and distributed and
sold the Products in the United States without the
requisite safety information and procedures and
profited from such acts. [FN2] As such, plaintiff
claims that its customers are likely to be misled,
confused or deceived as to the source of the Products,
threatening the distinctive quality of plaintiff's
trademarks and the integrity of plaintiff's business
reputation.

> FN2. Plaintiff alleges that the Products
> distributed and sold by defendant are
> materially different from plaintiff's products
> because they are (1) improperly packaged
> and labeled, (2) not sufficiently controlled
> for quality and consistency, (3) not
> consistently and adequately inspected, (4)
> not warranted in the same manner as plaintiff
> warrants its products and (5) not marketed
> and advertised in accordance with plaintiff's
> practices.

With regard to the jurisdiction issue, plaintiff claims
that defendant--a Canadian corporation with offices in
Quebec and no offices in New York-- transacted
business within, contracted to supply goods and
services in, committed a tortious act within and
without, caused damages to plaintiff within and
regularly engaged in or solicited business in and
derived substantial revenue from goods used or
services rendered in New York State. Plaintiff claims
that defendant sold and shipped the Products to Henry
Schein Arcona, Inc., a Canadian corporation located in
Niagara-on-the-Lake, Ontario, near the border
between Ontario, Canada and New York State. In so
doing, defendant has allegedly injured and threatens to
injure plaintiff, who is licensed to do business and
maintains offices in New York. Plaintiff does not
allege any other connection between defendant and
New York.

Defendant submitted the affidavit of Gilles
Cohen--defendant's president--to dispute plaintiff's
claims. Cohen states that defendant has never sold or
shipped any of the Products to Henry Schein Arcona,
does not sell and has never sold the Products in the
United States, does not advertise the Products for sale
in the United States and does not have a website where
customers can look up or order the Products (Cohen

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Aff at 2.)

**\*2** "The amenability of a foreign corporation to suit in a federal court in a diversity action is determined in accordance with the law of the state where the court sits, with 'federal law' entering the picture only for the purpose of deciding whether a state's assertion of jurisdiction contravenes a constitutional guarantee." *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir.1996) (internal quotations omitted). This Court, therefore, will apply Sections 301 and 302 of New York's Civil Practice Law and Rules ("CPLR") to the allegations in this action to determine if this Court has personal jurisdiction over defendant and then, if necessary, will determine whether the exercise of such jurisdiction comports with due process. [FN3] *See ibid.* While plaintiff bears the ultimate burden of establishing jurisdiction over defendant by a preponderance of the evidence if such is raised at trial, in cases like this where jurisdiction is challenged prior to discovery, plaintiff may overcome the challenge simply by making a good faith pleading to that effect. *See Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 184 (2d Cir.1998). In making this *prima facie* jurisdictional determination, the Court is to consider the pleadings and affidavits in the light most favorable to plaintiff. *See Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir.1990). Inasmuch as no discovery has been conducted herein, the truth of plaintiff's allegations will be assumed for purposes of the jurisdiction issue pursuant to FRCvP 12(b)(2) and doubts will be resolved in plaintiff's favor, notwithstanding a controverting presentation by defendant. *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 57 (2d Cir.1985). However, "vague and generalized allegations * * * are insufficient to make a *prima facie* showing of jurisdiction over an out-of-state defendant." *Hennigan v. Taser Int'l, Inc.*, 2001 U.S. Dist. LEXIS 1857, at \*7 (S.D.N.Y. Feb. 23, 2001). Plaintiff's unsupported allegations will be deemed refuted if plaintiff does not counter defendant's presentation of "direct, highly specific, testimonial evidence regarding a fact essential to jurisdiction." *See Allojet PLC v. Vantage Assocs.*, 2005 U.S. Dist LEXIS 4006, at \*12 (S.D.N.Y. Mar. 15, 2005) (internal quotations and citations omitted).

> FN3. This Court will hold that jurisdiction is not proper and, as such, need not address due process issues.

New York's general jurisdiction provision, CPLR § 301, provides that a New York "court may exercise such jurisdiction over persons, property, or status as

might have been exercised heretofore." The statute's scope encompasses all jurisdictional bases recognized in common law prior to its enactment. *Penny v. United Fruit Co.*, 869 F.Supp. 122, 125 (E.D.N.Y.1994). New York has historically permitted the exercise of jurisdiction over a foreign corporation if it "does business in New York, not occasionally or casually, but regularly, continuously and systematically thereby demonstrating a sufficiently fair measure of permanence to warrant a finding of the corporation's constructive presence here." *Graphic Controls Corp v. Utah Med. Prods., Inc.*, 1997 U.S. Dist. LEXIS 7448, at \*6 (W.D.N.Y. May 22, 1997). The test requires an analysis of the specific facts of each individual case to determine whether a foreign corporation's contacts and connections with New York demonstrate continuous, permanent and substantial activity. *Landoil Res. Corp. v. Alexander & Alexander Servs.*, 918 F.2d 1039, 1043 (2d Cir.1991). In assessing jurisdiction under this standard, New York courts have generally focused on the following indicia of jurisdiction: (1) the existence of an office in New York, (2) the solicitation of business in New York, (3) the presence of bank accounts or other property in New York and/or (4) the presence of employees or agents in New York. *Ibid.* Solicitation will only justify imposing jurisdiction over a foreign corporation when it "is substantial and continuous, and defendant engages in other activities of substance in the state." *Ibid.*

**\*3** Plaintiff fails to make a *prima facie* showing that defendant is subject to jurisdiction under CPLR § 301. Defendant is a Canadian corporation with no offices, bank accounts, property, employees or agents in New York. Plaintiff alleges that defendant transacted business with Henry Schein Arcona, a corporation located close to the New York border, but does not allege that any part of this transaction actually occurred in New York. The close proximity of Henry Schein Arcona to the New York border, however, does not place the transaction within New York for the purposes of determining jurisdiction. *See, e.g., Jamerson v. Buffalo Gen. Hosp.*, 1995 U.S. Dist. LEXIS 21310, at \*12 (W.D.Pa. Mar. 13, 1995) (holding that, only the extent to which the defendant crosses the border into the forum state is relevant, not how close the defendant comes to it). Plaintiff, moreover, merely makes "vague and generalized" allegations, which are insufficient to meet its minimal burden. *See Hennigan*, at \*7. Therefore, this Court finds that CPLR § 301 does not confer jurisdiction over defendant.

A corporate defendant not found to be constructively

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 1421805 (W.D.N.Y.)
**(Cite as: 2005 WL 1421805 (W.D.N.Y.))**

Page 3

present for purposes of the general jurisdiction provision may nevertheless be sued in New York pursuant to New York's long-arm statute, codified at CPLR § 302. Plaintiff's necessary showing under CPLR § 302 is "considerably less" than that required under CPLR § 301. *Hoffritz*, at 58 CPLR § 302 provides for jurisdiction in certain circumstances over non-domiciliaries and states, in pertinent part:

"(a) * * * As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary * * * who in person or through an agent:

1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or

2. commits a tortious act within the state * * *; or

3. commits a tortious act without the state causing injury to person or property within the state * * * if he

(i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or

(ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce".

CPLR § 302 thus requires a "strong nexus between the plaintiff's cause of action and the defendant's in state [*sic* ] conduct." *Welsh v. Servicemaster Corp.*, 930 F.Supp. 908, 910 (S.D.N.Y.1996) (citation omitted) Although plaintiff asserts that jurisdiction exists under CPLR § § 302(a)(1), (a)(2) and (a)(3) in its Complaint, its argument in its Memorandum in Opposition to Defendant's Motion to Dismiss focuses only on CPLR § 302(a)(3)(ii) As such, this Court will primarily focus on CPLR § 302(a)(3)(ii).

Long-arm specific jurisdiction of non-domiciliaries who transact business within New York is governed by CPLR § 302(a)(1) Plaintiff does not allege or provide evidence that defendant transacted business in New York--plaintiff only alleges a business transaction near the New York border CPLR § 302(a)(1), therefore, does not allow this Court to exercise its jurisdiction over defendant.

*4 CPLR § 302(a)(2) confers jurisdiction over a non-domiciliary who commits a tort while physically present in New York. *See Bensusan Rest. Corp. v. King*, 126 F.3d 25, 28 (2d Cir.1997). Again, because plaintiff fails to show that any part of this transaction took place in New York, jurisdiction does not exist under CPLR § 302(a)(2).

Long-arm specific jurisdiction based upon tortious acts committed out-of-state by a non-domiciliary is governed by CPLR § 302(a)(3). *See id.* at 27. Subsection (i) requires a showing that defendant either regularly does or solicits business in New York or derives revenue from services rendered in New York. Jurisdiction pursuant to CPLR § 302(a)(3)(i) is more difficult to establish than jurisdiction pursuant to CPLR § 302(a)(2) *Roberts-Gordon v. Superior Radiant Prods.*, 85 F.Supp.2d 202, 215 (W.D.N.Y.2002). Thus, it follows that plaintiff's failure to establish jurisdiction under the lesser standard of CPLR § 302(a)(2)--for failure to show that defendant transacted business in or derived revenue from activities in New York--precludes a finding of jurisdiction under CPLR § 302(a)(3)(i)

To establish personal jurisdiction under subsection (ii) of CPLR § 302(a)(3), plaintiff must sufficiently allege that (1) defendant performed a "tortious act" outside of New York, (2) the alleged tortious act caused injury within New York, (3) defendant expected or reasonably should have expected that its action would have consequences in New York and (4) defendant derives "substantial revenue from interstate or international commerce." CPLR § 302(a)(3); *see also Starmedia Network, Inc. v. Star Media, Inc.*, 2001 U.S. Dist. LEXIS 4870, at *5 (S.D.N.Y. Apr. 24, 2001). Plaintiff has met the first two prongs of CPLR § 302(a)(3)--plaintiff has alleged trademark infringement as the tortious conduct and the injury from the alleged act has occurred in New York.

For a *prima facie* showing of jurisdiction under CPLR § 302(a)(3), the plaintiff must allege anticipated in-state economic injury from an out-of-state tort, but is not required to show that it suffered any actual economic injury. *Sybron Corp. v. Wetzel*, 46 N.Y.2d 197, 413 N.Y.S.2d 127, 385 N.E.2d 1055, 1058 (N.Y.1978) The Lanham Act imposes liability on any person who "use[s] in commerce a reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services." 15 U.S.C. § 1114(1)(a) "Trademark infringement can be a 'tort' for [the] purpose of determining long-arm jurisdiction." *PDK Labs, Inc. v. Proactive Labs, Inc.*, 325 F.Supp.2d 176, 180 (E.D.N.Y.2004) (citation and internal quotations omitted). For purposes of determining jurisdiction under CPLR § 302(a)(3), the alleged injury stemming from infringement on a trademark "in the form of damage to goodwill, lost sales, or lost customers" occurs where the trademark owner resides and conducts business because this is

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                          Page 4
Not Reported in F.Supp.2d, 2005 WL 1421805 (W.D.N.Y.)
**(Cite as: 2005 WL 1421805 (W.D.N.Y.))**

where the " 'first effects' of trademark infringement or dilution are typically felt." *Savage Universal Corp. v. Grazier Constr., Inc.,* 2004 U.S. Dist. LEXIS 16088, at *30 (S.D.N.Y. Aug. 13, 2004). Plaintiff alleges that defendant's sale and shipment of the Products infringes on plaintiff's trademarks, threatens the distinctive quality of plaintiff's trademark, confuses plaintiff's customers and threatens plaintiff's reputation. These allegations amount to a tortious act resulting in an injury in New York-- the place where plaintiff, the trademark owner, resides and conducts business-- and meets the first two requirements of CPLR § 302(a)(3).

**\*5** Plaintiff cannot meet the third requirement of CPLR § 302(a)(3)(ii)-- that defendant expected or reasonably should have expected its allegedly tortious actions to have consequences in New York--and, therefore, addressing the fourth requirement is unnecessary. The test to determine whether this "foreseeability" requirement is met "is an objective rather than subjective one" and is intended to avoid conflicts with due process limits on the exercise of jurisdiction *Kernan v. Kurz-Hastings, Inc.,* 175 F.3d 236, 241 (2d Cir.1999) (citation and quotations omitted). The Second Circuit requires a "discernible effort [by the defendant] to directly or indirectly serve the New York market", and has held that "the simple likelihood or foreseeability that a defendant's product will find its way into New York" does not satisfy this requirement *Ibid.* (citations and quotations omitted).

A transaction between two Canadian companies, one of which is close to the New York border, does not amount to a "discernible effort" to directly or indirectly serve the New York market *See id.* at 241. Without an allegation of a distribution chain linking defendant to the New York market, it is objectively unreasonable to find that defendant intended to serve the New York market *See id.* at 242 (holding that, to meet the foreseeability requirement, the defendant must have purposefully availed itself of "the benefits of the laws of New York such that the defendant may reasonably anticipate being haled [*sic* ] into New York court") (citations and quotations omitted); *Starmedia Network,* at *6 (finding that the plaintiff, to meet the foreseeability requirement, must show an effort by the defendant to serve the New York market) Further, plaintiff's allegations that defendant sold and marketed products in New York are refuted by defendant's affidavit, to which plaintiff does nothing but cite the "extremely close proximity of New York to an infringing sale" (Pl.'s Mem. Opp'n Def.'s Mot. Summ. J. at 8.) *See Allojet,* at *12. Such a vague assertion is not sufficient to make a *prima facie*

showing of personal jurisdiction. This Court, therefore, will not find that it has personal jurisdiction over defendant and will grant defendant's Motion. Plaintiff's request for additional jurisdictional discovery where, as here, jurisdiction is not found, will be denied. Jurisdictional discovery is appropriate where the plaintiff made a sufficient start toward establishing jurisdiction and where it would not be a "fishing expedition when little more exists than plaintiff's bare assertions that jurisdiction is proper" *Manhattan Life Ins. Co. v. A.J. Stratton Syndicate,* 731 F.Supp. 587, 593 (S.D.N.Y.1990). "Pre-motion discovery should be permitted where the facts necessary to establish personal jurisdiction * * * lie exclusively within the defendant's knowledge." *Wafios Mach. Corp. v. Nucoil Indus. Co.,* 2004 U.S. Dist. LEXIS 13674, at *14 (S.D.N.Y. July 23, 2004). However, jurisdictional discovery is not permitted where, as here, the defendant submits an affidavit that provides all necessary facts and answers all questions regarding jurisdiction *Id.* at *14-16 (granting jurisdictional discovery over a defendant because the defendant's affidavit left "further questions * * * which may be necessary to establish either personal jurisdiction or venue", but not over another foreign defendant who provided an affidavit categorically denying contacts with New York). Cohen's affidavit categorically denies that defendant has transacted business or has had any other contacts with New York and answers all questions regarding jurisdiction Plaintiff's allegation of defendant's transaction with Henry Schein Arcona--a single transaction outside New York's borders--is not a sufficient start toward establishing jurisdiction and does not even amount to a bare assertion that jurisdiction is proper. Plaintiff's request for jurisdictional discovery, thus, will be denied

**\*6** Accordingly, it is hereby ORDERED that defendant's Motion to Dismiss for lack of personal jurisdiction is granted, that plaintiff's request for additional discovery is denied and that the Clerk of this Court shall close this case.

Not Reported in F.Supp.2d, 2005 WL 1421805 (W.D.N.Y.)

**Motions, Pleadings and Filings (Back to top)**

• 1:04cv00984 (Docket) (Dec. 13, 2004)

• 2004 WL 3212835 (Trial Pleading) Complaint (Dec. 6, 2004)Original Image of this Document (PDF)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

LEXSEE 1996 US DIST LEXIS 2606



Caution
As of: Jan 22, 2007

STATE STREET BANK AND TRUST COMPANY, Plaintiff, - against - THOMAS J. ARGANESE, et al., Defendants. STATE STREET BANK AND TRUST COMPANY, Plaintiff, - against - JAMES M. ANNIN, et al., Defendants.

95 Civ. 0440 (PKL), 95 Civ. 0442 (PKL)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

1996 U.S. Dist. LEXIS 2606

March 4, 1996, ORDERED
March 5, 1996, FILED

**COUNSEL:** [*1] For STATE STREET BANK AND TRUST COMPANY, not its individual Capacity but solely as mortgagee, plaintiff: Toni C. Lichstein, [COR LD NTC], Milbank, Tweed, Hadley & McCloy, New York, NY.

For AGOSTINO BASSO, defendant: Richard H. Bakalor, [COR LD NTC], Quirk & Bakalor, P.C., New York, NY. Steven R. Klein, [COR LD NTC], Cole, Schotz, Meisel, Forman & Leonard, P.A., Hackensack, NJ.

For ROBERT W. BEREND, defendant: Michael S. Etkin, [COR LD NTC], Gold & Wachtel, NY, NY.

For BENJAMIN H. LEWIS, LEWIS P. SCHNEIDER, M.D., SHARON M. SCHNEIDER, defendants: Fredric S. Newman, [COR LD NTC], Fredric S. Newman, New York, NY.

For JOHN H. VOGEL AND EUGENE E. MATESI D.D.S., P.C., defendant: David S. Tannenbaum, [COR LD NTC], DUANE, MORRIS & HECKSCHER, New York, NY.

**JUDGES:** Peter K. Leisure, U.S.D.J. Magistrate Judge Barbara A. Lee

**OPINION BY:** Peter K. Leisure

**OPINION:**

### MEMORANDUM ORDER

LEISURE, District Judge:

Before the Court are the motions to dismiss of certain defendants based on lack of personal jurisdiction. In the Arganese action, defendants David B. Kaye, M.D., Gerardo L. Yubero, and Lux Yubero have moved to dismiss for lack of personal jurisdiction, and in [*2] the Annin action, defendant Sheldon Greenfield has moved to dismiss for lack of personal jurisdiction (collectively the "moving defendants"). For the reasons stated below, the motions are granted.

### BACKGROUND

These cases arise out of sale and lease-back transactions involving airplanes. Defendants are owners of units of trusts which purchased the airplanes. The closing of the transactions took place simultaneously in

1996 U.S. Dist. LEXIS 2606, *2

New York, where plaintiff's predecessor in interest's lawyers had their offices; in Hawaii, where the lessee was located; in Oklahoma, where the FAA was present; in Utah, where the trustee for the defendants had its offices; and in San Francisco, where the sponsor of the transaction and its attorneys were. Prior to this closing, the transactions had been substantially negotiated and nearly finalized, and defendants were offered, by subscription agreement, an opportunity to purchase units of the trust and therefore participate in the transaction to be consummated on substantially the terms set forth in the offering memorandum.

Defendants signed the subscription agreement on various dates between December 11, 1985 and December 19, 1985. n1 The subscription agreement [*3] appointed Polaris Investment Management Corporation ("PIMC"), one of the sponsors of the trust units, attorney-in-fact for defendants, with the power to make, execute, endorse, acknowledge, publish, file, and record any necessary documents to the transaction. In addition, Polaris Aircraft Leasing Corporation ("PALC"), the other sponsor, was allegedly authorized to act as agents for the defendants. These two entities were represented in New York between roughly December 15 and December 27, 1985, during which time PIMC executed an indenture and deferred purchase certificates on behalf of the defendants. The indenture and deferred purchase certificates both contain choice of law clauses which provide that New York law will govern. The cause of action is based on the indenture and deferred purchase certificates.

> n1 Defendant Greenfield did not date his subscription agreement, but it was notarized on December 24, 1985.

## DISCUSSION

Absent a specific grant of jurisdiction, the reach of a federal district court's [*4] personal jurisdiction is coterminous with that of the personal jurisdiction of a court of general jurisdiction in the state in which the court sits. See Fed. R. Civ. P. 4(k)(1)(A). Therefore, whether this Court has jurisdiction over defendants is determined by whether a New York court would have personal jurisdiction over defendants. See A.I. Trade Finance, Inc. v. Petra Bank, 989 F.2d 76, 80 (2d Cir. 1993).

There are two types of jurisdiction, general and specific. See Helicopteros Nacionales de Colombia v. Hall, 466 U.S. 408, 414, 80 L. Ed. 2d 404, 104 S. Ct. 1868 (1984). With general jurisdiction, the claim need not arise out of the person's contact with the forum state, but the contact with the forum must be more substantial; with specific jurisdiction, the claim must arise out of the person's contacts with the forum, but the contact need not be as substantial. These two types of jurisdiction are reflected both in New York's jurisdictional statutes, see New York Civ. Prac. L. & R. ("CPLR") §§ 301-302, and in the jurisprudence interpreting the Due Process limits of jurisdiction, see Helicopteros Nacionales, 466 U.S. at 414.

### I. General Jurisdiction [*5]

There is no allegation that the moving defendants have waived jurisdictional defenses, that they are domiciled in New York, that they were personally served while present in New York, or that they have consented to New York jurisdiction. Therefore, there is no general personal jurisdiction over moving defendants in New York.

### II. Specific Jurisdiction

Since the moving defendants are not subject to the general jurisdiction of New York, this Court only has jurisdiction over them in these cases if New York's long-arm statute asserts jurisdiction over them and that assertion of jurisdiction comports with Due Process requirements under the circumstances.

### A. Long-Arm Statute

Under CPLR § 302(a)(1), a court may exercise personal jurisdiction over a non-domiciliary if that person or an agent of that person transacts any business within the state or contracts anywhere to supply goods or services within the state, provided the cause of action arises out of those acts. A non-domiciliary transacts business under CPLR § 302(a)(1) when he purposely avails himself of the privilege of conducting activities within New York, thus invoking the benefits and protections of its laws. [*6] See CutCo Indus. v. Naughton, 806 F.2d 361, 365 (2d Cir. 1986). Where long-arm jurisdiction is based on the activities of an agent of a defendant in New York, the ultimate issue remains whether that defendant has purposely availed himself of the privilege of conducting activities within New York.

Accordingly, the agent must have acted in New York "'for the benefit of, and with the knowledge and consent of the non-resident principal." Id. at 366 (quoting Grove Press, Inc. v. Angleton, 649 F.2d 121, 122 (2d Cir. 1981)). Thus, activities of an agent that take place in New York by mere fortuity, and without the knowledge of the principal, do not subject the principal to New York's long-arm jurisdiction. Such acts do not constitute a purposeful availment by the principal of the privilege of conducting activities in New York.

In these cases, although PIMC was appointed as attorney-in-fact for defendants, and negotiated and entered into agreements on their behalf in New York, there is no showing by plaintiff that the moving defendants knew that these activities would take place in New York. Nor is there any allegation of other facts that would suggest a purposeful availment [*7] by the moving defendants of the privilege of conducting activities in New York. Rather, defendants purchased interests in a business trust with a Utah bank as trustee, designated a California corporation as manager of the trust's business, authorized that management to engage in a sale and lease-back of an airplane to a Hawaiian airline, and authorized that management to enter into a financing arrangement with a consortium of Japanese lenders which had designated a Connecticut bank as mortgagee. None of these acts of the moving defendants constitute purposeful activity directed to New York. The activity that did take place in New York (among other places) -- the closing and final negotiation of the transaction by PIMC -- was not known by the moving defendants to have taken place in New York. Based on the fact that the activities of PIMC, although undertaken on behalf of and with the knowledge of the defendants, were not undertaken in New York with the knowledge of the moving defendants, the Court finds that plaintiff has failed to make a prima facie showing of purposeful availment by the moving defendants. Accordingly, the Court finds that the moving defendants are outside the [*8] reach of CPLR § 302(a)(1), and this Court lacks personal jurisdiction over the moving defendants.

B. Due Process

Even if New York's long-arm statute reached the conduct at issue in these cases, the Court would dismiss the cases on the grounds that the exercise of jurisdiction would violate the Due Process Clause. See A.I. Trade Finance, 989 F.2d at 82. Under the well-established test, the exercise of jurisdiction violates Due Process unless the defendant has minimum contacts with the forum such that the exercise of jurisdiction comports with "traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316, 90 L. Ed. 95, 66 S. Ct. 154 (1945) (internal quotation marks omitted). The "minimum contacts must have a basis in 'some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102, 109, 94 L. Ed. 2d 92, 107 S. Ct. 1026 (1987) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 85 L. Ed. 2d 528, 105 S. Ct. 2174 (1985)). Having found [*9] a purposeful availment, the Court considers five factors to determine whether the exercise of jurisdiction comports with notions of fair play and substantial justice: (1) the burden on the defendant, (2) the interests of the forum state, (3) the plaintiff's interest in obtaining relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies. See id. at 113.

For the same reasons as stated above, the Court finds that there are no minimum contacts with New York which have their basis in some act by the moving defendants by which they purposely availed themselves of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws. The acts undertaken on their behalf by PIMC and PALC in New York were not known by the defendants to have taken place in New York. Instead, the closing might have taken place anywhere, and took place in New York fortuitously. None of the major participants to the transaction were New Yorkers, and the subject matter of the transaction had no necessary [*10] connection to New York.

Even if there were minimum contacts with New York, the Court would find that the character of those contacts is such that the exercise of jurisdiction would not comport with notions of fair play and substantial justice. The burden on the moving defendants of litigating in New York is fairly high, the interests of the forum state are negligible, the plaintiff's interest in obtaining relief is not implicated because the plaintiff can litigate in the moving defendants' home states, the interstate judicial system's interest in obtaining the most efficient resolution

1996 U.S. Dist. LEXIS 2606, *10

of controversies weighs in favor of jurisdiction in a single forum, but not necessarily New York, and the shared interest of the several states in furthering fundamental substantive social policies adds no weight to the exercise of jurisdiction in New York. The consideration of the five Burger King factors thus reveals that the connection to New York is attenuated, and the exercise of jurisdiction over the moving defendants would be unfair. Accordingly, the Court would find that the exercise of jurisdiction over the moving defendants would violate the Due Process Clause.

### CONCLUSION

For the [*11] reasons stated above, the Court HEREBY GRANTS the motions to dismiss of the moving defendants, and dismisses the actions as against them. The Court also declines plaintiff's request that the Court deny the motions to dismiss and allow plaintiff to conduct discovery in aid of determining the New York contacts of the moving defendants.

**SO ORDERED.**

New York, New York
March 4, 1996

Peter K. Leisure

U.S.D.J.

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

FAHAD SIDDIQUI, et al.

                         Plaintiffs,

          -against-

AIRLIE OPPORTUNITY MASTER FUND,
LTD., ARH MORTGAGE INC., WDM FUND,
L.P., STEVE Y. KHOSHABE, JOSEPH
KHOSHABE and JASON K. SCHIFFMAN

                         Defendant.

Civil Action No. 06-CV-6473 L (P)

**DECLARATION OF DIANE**
**WINDHOLZ IN SUPPORT**
**OF THE INDIVIDUAL**
**DEFENDANTS' MOTION**
**TO DISMISS OR IN THE**
**ALTERNATIVE TO STAY**
**THE CLAIMS AGAINST**
**THEM**

Pursuant to 28 U.S.C. § 1746, Diane Windholz, declares under penalty of perjury:

1.      I am a member of the Firm Jackson Lewis LLP, 59 Maiden Lane, New York, New York 10038, attorneys for Defendants Steve Y. Khoshabe, Joseph Khoshabe and Jason K. Schiffman (collectively, the "Individual Defendants"). I am fully familiar with the facts set forth herein, and make this declaration in support of the Individual Defendants' motion to: (1) dismiss the Complaint, pursuant to Fed. R. Civ. P. 12(b)(2), for lack of personal jurisdiction over the Individual Defendants; or (2) in the alternative stay the claims against them.

2.      Attached hereto as Exhibit "A" is a true and correct copy of the Complaint in this action.

3.      On February 15, 2005, plaintiffs, represented by the same attorneys as in this action, commenced a class action in this court solely against the Individual Defendants' former employer, United Financial Mortgage Corporation ("UFMC"), entitled McKenzie v. United Financial Mortgage Company, 6:05-CV-06067-DGL-MWP, in which the plaintiffs alleged that defendant UFMC failed to pay them overtime.

4.      On April 22, 2005, defendant UFMC filed its Answer in which it denied liability, and among its affirmative defenses asserted that the action was subject to mandatory arbitration.

5.      On August 30, 2005, UFMC moved to stay or dismiss the first lawsuit in favor of arbitration.  In response to UFMC's motion to dismiss or stay, on October 27, 2005, the plaintiffs submitted their claim to arbitration before a private arbitration company, JAMS (the "UFMC Arbitration").

6.      On October 31, 2005, the Court issued an Order staying McKenzie v. United Financial Mortgage Company, pending the outcome of the UFMC Arbitration.

7.      On or about October 6, 2006, the claimants in the UFMC Arbitration filed a Second Amended Class Action Complaint.  A true and correct copy of the Second Amended Class Action Complaint is attached hereto as Exhibit "B."

8.      All of the named claimants in the UFMC Arbitration are also named Plaintiffs in this action.

9.      The UFMC Arbitration, which seeks the same collective relief under the FLSA and class action certification under Rule 23 that the Plaintiffs seek in this case, is ongoing.

10.      By decision dated November 20, 2006, the Arbitrator in the UFMC Arbitration granted the claimants' conditional certification of their FLSA collective action and the claimants have sent notice to potential members of that collective action.  A true and correct copy of the Arbitrator's Order is attached hereto as Exhibit "C."

I declare under the penalty of perjury that the forgoing is true and correct. Executed this 22nd day of January, 2007, at New York, New York.

_____s/Diane Windholz_____
Diane Windholz
*WindholD@JacksonLewis.com*
Jackson Lewis LLP
59 Maiden Lane, 39th Floor
New York, New York 10038
(212) 545-4000

3

**EXHIBIT A**

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

FAHAD SIDDIQUI, BRUCE
BERGERON TIMOTHY BOWEN,
PAM CAPUANO, ZANDRA CHATMAN,
ROBERT CRETELLA, KEVIN CROOKS,
CRYSTAL CUNNINGHAM, KAREN
DOMINGUEZ, STEVEN ESCHER, BETHANY
FAZILAT, ERIK GARCIA, IAN GOOLDY,
KATHLEEN JANNINCK, DAVID KEIM,
LINDA KOPMAN, BRIAN McKENZIE,
NAOMI MIRKIN, RONALD SANCHEZ,
ADAM SCHEMER, ALISON WASKIEWICZ,
SAMNANG WATERS, AND CHARLES YOUNG,
*on behalf of themselves and all other*
*employees similarly situated,*

| | |
|---|---|
| | **CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL** |
| | **Civil Action** |
| | No. 06 CV 6473 (P) |

ORIGINAL
RECEIVED AND FILED
USDC WDNY ROCH

SEP 21 2006

BY: _[signature]_

                                                    *Plaintiffs,*

        v.

AIRLIE OPPORTUNITY MASTER
FUND, LTD., ARH MORTGAGE
INC., WDM FUND, L.P., STEVE Y.
KHOSHABE, JOSEPH KHOSHABE,
AND JASON K. SCHIFFMAN,

                                                    *Defendants.*

---

<u>NATURE OF CLAIM</u>

1       This is a proceeding for declaratory relief and monetary damages to redress the

deprivation of rights secured to plaintiffs Fahad Siddiqui, Bruce Bergeron, Timothy Bowen,

Pam Capuano, Zandra Chatman, Robert Cretealla, Kevin Crooks, Crystal Cunningham,

Karen Dominguez, Steven Escher, Bethany Fazilat, Erik Garcia, Ian Gooldy, Kathleen

Janninck, David Keim, Linda Kopman, Brian McKenzie, Naomi Mirkin, Ronald Sanchez,

Adam Schemer, Alison Waskiewicz, Samnang Waters and Charles Young individually, as well

as all other employees similarly situated, under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq* ("FLSA"); the New York State Labor Law; and the laws of the various States in which defendant does business.

## CLASS ACTION ALLEGATIONS

2. The claims arising under New York State Labor Law, other state labor laws and state contract laws are properly maintainable as a class action under Federal Rule of Civil Procedure 23.

3. The class action is maintainable under subsections (1), (2) and (3) of Rule 23(b).

4. The class (hereinafter referred to as those individuals "similarly situated" or "class members") consists of:

(i) individuals who currently and formerly were suffered or permitted to work for defendants or its subsidiaries or divisions or other joint employers, including United Financial Mortgage Company ("United Financial");

(ii) anytime during the last six years;

(iii) who were paid on an hourly basis; and

(iv) who were not fully compensated for all work performed either at regular or premium overtime rates for such work

5 Plaintiffs understand that defendants paid individuals who performed work as a Loan Officer or its functional equivalent on an hourly basis. However, to the degree an individual performed some work in a week as a Loan Officer or its functional equivalent and was paid on a salaried basis for work that week, those individuals form a separate subclass of Loan Officers misclassified as exempt from the FLSA and relevant law.

6. The class size is believed to be over 50 employees

- 2 -

7    The named plaintiffs will adequately represent the interests of the class members because they are similarly situated to the class members and their claims are typical of, and concurrent to, the claims of the other class members.

8.    There are no known conflicts of interest between the named plaintiffs and the other class members.

9.    The class counsel, Dolin, Thomas & Solomon LLP, is qualified and able to litigate the class members' claims.

10.    The class counsel concentrates its practice in employment litigation, and its attorneys are experienced in class action litigation, including class actions arising under federal and state wage and hour laws.

11    Common questions of law and fact predominate in this action because the claims of all class members are based on whether defendants' policy of not paying statutory overtime to exempt and/or nonexempt employees for all hours worked in excess of forty per week violates New York Labor Law and other state statutes requiring the payment of overtime.

12    The class action is maintainable under subsections (2) and (3) of Rule 23(b) because the plaintiffs seek injunctive relief, common questions of law and fact predominate among the class members and the class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## PARTIES

A.    **Defendants**

13.    Airlie Opportunity Master Fund, Ltd. is a Cayman Islands Limited Partnership with its headquarters in Greenwich, Connecticut

- 3 -

14. ARH Mortgage Inc. is a Delaware corporation and the sole shareholder of United Financial.

15. WDM Fund L.P. is a Delaware limited partnership associated with Airlie Opportunity Master Fund, Ltd.

16. Steve Y. Khoshabe was the President and Chief Executive Officer of United Financial.

17. Joseph Khoshabe was the Chairman of the United Financial and was responsible for the commercial lending operations. Mr. Khoshabe previously served as the President and Chief Executive Officer.

18. Jason K. Schiffman was the Executive Vice President-Operations of United Financial.

19. Upon information and belief, defendants are an enterprise engaged in interstate commerce, with annual gross volume of sales made not less than $500,000.

20. Defendants are the employer of plaintiffs within the meaning of 29 U.S.C. § 203(d) and/or joint employers of the plaintiffs and comprise an "enterprise" engaged in commerce as defined in 29 U.S.C. §§ 203(r), 203(s).

21. Upon information and belief, the defendants are alter egos of each other and of United Financial.

22. Upon information and belief, defendants Steve Y. Khoshabe, Joseph Khoshabe and Jason K. Schiffman are employers of the plaintiffs.

**B.** **Plaintiffs**

**_Named Plaintiffs_**

23. The named plaintiffs are former employees of defendants who were not fully

- 4 -

compensated for all work performed either at regular or premium overtime rates for such work.

### Class and Collective Action Members

24.　　The class and collective action members ("Class Members") are those employees similarly situated to named plaintiffs as set forth above.

## FACTUAL BACKGROUND

25.　　Defendants' policy and/or practice was not to pay employees for all hours employees worked.

26.　　When employees did not receive compensation for hours in excess of 40 hours in a week, defendants violated the FLSA, applicable state labor laws and breached its contracts with plaintiffs.

27.　　When employees did not receive compensation for any other hours, defendants violated applicable state labor laws and breached its contracts with plaintiffs.

28.　　Named plaintiffs and Class Members frequently worked over 40 hours in a week while employed by defendants.

29.　　Defendants' policy and/or practice was to not compensate named plaintiffs and Class Members for all work performed either at regular or premium overtime rates for such work.

30.　　Defendants knew plaintiffs were supposed to be paid statutory overtime, however, defendants willfully failed to pay statutory overtime for all hours when named plaintiffs and Class Members worked over 40 hours in a week.

31.　　Defendants also knew plaintiffs were supposed to be paid for all time worked, however, defendants willfully failed to pay for all hours worked.

H:\McKenzie B\Complaint - FLSA - Airlie.doc

32     The defendants' practice is to be deliberately indifferent to these violations of the statutory overtime requirements and state labor laws.

33     This failure to pay for all time worked as required by the FLSA, the New York Labor Law and the various state laws was willful.

34     Plaintiffs understand that they have signed arbitration agreements  However, it is not clear that defendants are subject to or have agreed to be bound by such agreements

## FIRST CAUSE OF ACTION
### *FLSA*

35     Plaintiffs reallege the above paragraphs as if fully restated herein

36     Defendants willfully violated their obligations under the FLSA and are liable to plaintiffs

## SECOND CAUSE OF ACTION
### *New York Labor Law*

37.    Plaintiffs reallege the above paragraphs as if fully restated herein

38     Defendants willfully violated their obligations under the New York Labor Law and are liable to plaintiffs

## THIRD CAUSE OF ACTION
### *State Labor and Contract Laws*

39.    Plaintiffs reallege the above paragraphs as if fully restated herein

40     Defendants willfully violated their obligations under the laws of the various states in which United Financial does business and are liable to plaintiffs

**WHEREFORE,** plaintiffs demand judgment against defendants in their favor and that they be given the following relief:

H:\McKenzie B\Complaint - FLSA - Airlie.doc

(a)   an order preliminarily and permanently restraining defendants from engaging in the aforementioned pay violations;

(b)   an award of the value of plaintiffs' unpaid wages, including fringe benefits;

(c)   liquidated damages under the FLSA equal to the sum of the amount of wages and overtime which were not properly paid to plaintiffs (plaintiffs who do not affirmatively opt-in the class expressly waive their rights to liquidated damages or any other statutory penalty provided under New York law);

(d)   an award of reasonable attorneys' fees, expenses, expert fees and costs incurred in vindicating plaintiffs' rights;

(e)   an award of pre- and post-judgment interest; and

(f)   such other and further legal or equitable relief as this forum deems to be just and appropriate

## JURY DEMAND

Plaintiffs demand a jury to hear and decide all issues of fact

Dated: September 21, 2006

DOLIN, THOMAS & SOLOMON LLP

By: _____
J. Nelson Thomas, Esq
Michael J. Lingle, Esq
*Attorneys for Plaintiffs*
693 East Avenue
Rochester, New York 14607
Telephone: (585) 272-0540
nthomas@theemploymentattorneys.com
mlingle@theemploymentattorneys.com

- 7 -

**EXHIBIT B**

MATTER IN ARBITRATION

IAN GOOLDY, TIMOTHY BOWEN,
PAM CAPUANO, STEVEN ESCHER,
ERIK GARCIA, BRIAN McKENZIE,
FAHAD SIDDIQUI, ALISON
WASKIEWICZ, and CHARLES YOUNG,
*on behalf of themselves and all other
employees similarly situated,*

*Plaintiffs,*

v.

UNITED FINANCIAL MORTGAGE
COMPANY,

*Defendant.*

SECOND AMENDED CLASS
ACTION COMPLAINT
AND DEMAND FOR JURY TRIAL

JAMS Reference No
1420015543

## NATURE OF CLAIM

1       This is a proceeding for declaratory relief and monetary damages to redress the

deprivation of rights secured to plaintiffs Ian Gooldy, Timothy Bowen, Pam Capuano, Steven

Escher, Erik Garcia, Brian McKenzie, Fahad Siddiqui, Alison Waskiewicz and Charles Young

individually, as well as all other employees similarly situated, under the Fair Labor Standards

Act of 1938, as amended, 29 U.S.C. § 201 *et seq* ("FLSA"); the New York State Labor Law;

and the laws of the various States in which defendant does business

## CLASS ACTION ALLEGATIONS

2.      The claims arising under New York State Labor Law, other state labor laws and

state contract laws are properly maintainable as a class action under Federal Rule of Civil

Procedure 23

3.      The class action is maintainable under subsections (1), (2) and (3) of Rule

23(b)

H:\McKenzie B\Amended Complaint (Second) - FLSA doc

4    The class (hereinafter referred to as those individuals "similarly situated" or "class members") consists of:

> (i) individuals who currently and formerly were suffered or permitted to work for United Financial Mortgage Company ("United Financial") or its subsidiaries or divisions or other joint employers;

> (ii) anytime during the last six years;

> (iii) who were paid on an hourly basis; and

> (iv) who were not fully compensated for all work performed either at regular or premium overtime rates for such work.

5.    Plaintiffs understand that defendant paid individuals who performed work as a Loan Officer or its functional equivalent on an hourly basis. However, to the degree an individual performed some work in a week as a Loan Officer or its functional equivalent and was paid on a salaried basis for work that week, those individuals form a separate subclass of Loan Officers misclassified as exempt from the FLSA and relevant law.

6    The class size is believed to be over 50 employees.

7    The named plaintiffs will adequately represent the interests of the class members because they are similarly situated to the class members and their claims are typical of, and concurrent to, the claims of the other class members.

8    There are no known conflicts of interest between the named plaintiffs and the other class members.

9    The class counsel, Dolin, Thomas & Solomon LLP, is qualified and able to litigate the class members' claims.

10.    The class counsel concentrates its practice in employment litigation, and its attorneys are experienced in class action litigation, including class actions arising under federal and state wage and hour laws.

- 2 -

11. Common questions of law and fact predominate in this action because the claims of all class members are based on whether United Financial's policy of not paying statutory overtime to exempt and/or nonexempt employees for all hours worked in excess of forty per week violates New York Labor Law and other state statutes requiring the payment of overtime

12 The class action is maintainable under subsections (2) and (3) of Rule 23(b) because the plaintiffs seek injunctive relief, common questions of law and fact predominate among the class members and the class action is superior to other available methods for the fair and efficient adjudication of the controversy

### PARTIES

**A    Defendant**

13. United Financial is a corporation with its headquarters being in Oak Brook, Illinois.

14    Upon information and belief, defendant is an enterprise engaged in interstate commerce, with annual gross volume of sales made not less than $500,000

15    Defendant is the employer of plaintiffs within the meaning of 29 U.S.C. § 203(d) and/or joint employers of the plaintiffs and comprises an "enterprise" engaged in commerce as defined in 29 U.S.C. §§ 203(r), 203(s).

**B    Plaintiffs**

*Named Plaintiffs*

16. Mr Gooldy is a former employee of defendant who during the last six years was classified as non-exempt and who was not fully compensated for all work performed either at regular or premium overtime rates for such work

- 3 -

17    Mr. Bowen is a former employee of defendant who during the last six years was classified as non-exempt and who was not fully compensated for all work performed either at regular or premium overtime rates for such work.

18    Ms. Capuano is a former employee of defendant who during the last six years was classified as non-exempt and who was not fully compensated for all work performed either at regular or premium overtime rates for such work.

19.    Mr. Escher is a former employee of defendant who during the last six years was classified as non-exempt and who was not fully compensated for all work performed either at regular or premium overtime rates for such work.

20    Mr. Garcia is a former employee of defendant who during the last six years was classified as non-exempt and who was not fully compensated for all work performed either at regular or premium overtime rates for such work.

21.    Mr. McKenzie is a former employee of defendant who during the last six years was classified as non-exempt and who was not fully compensated for all work performed either at regular or premium overtime rates for such work.

22    Mr. Siddiqui is a former employee of defendant who during the last six years was classified as non-exempt and who was not fully compensated for all work performed either at regular or premium overtime rates for such work.

23    Ms. Waskiewicz is a former employee of defendant who during the last six years was classified as non-exempt and who was not fully compensated for all work performed either at regular or premium overtime rates for such work.

24.    Mr. Young is a former employee of defendant who during the last six years was classified as non-exempt and who was not fully compensated for all work performed either at

- 4 -

regular or premium overtime rates for such work

### *Class and Collective Action Members*

25.     The class and collective action members ("Class Members") are those employees similarly situated to named plaintiffs as set forth above

### FACTUAL BACKGROUND

26     Defendant's policy and/or practice was not to pay employees for all hours employees worked.

27.     When employees did not receive compensation for hours in excess of 40 hours in a week, defendant violated the FLSA, applicable state labor laws and breached its contracts with plaintiffs

28.     When employees did not receive compensation for any other hours, defendant violated applicable state labor laws and breached its contracts with plaintiffs

29     For example, named plaintiffs Gooldy, Bowen, Escher, McKenzie, Siddiqui, and Young worked as Loan Officers for the defendant and, as with the other Class Members, were not fully compensated for all work performed either at regular or premium overtime rates for such work

30.     In addition, named plaintiffs Capuano and Garcia worked as Loan Processors for the defendant and, as with the other Class Members, were not fully compensated for all work performed either at regular or premium overtime rates for such work.

31.     Further, named plaintiff Waskiewicz worked as a Loan Closer for the defendant and, as with the other Class Members, was not fully compensated for all work performed either at regular or premium overtime rates for such work.

32.     Named plaintiffs and Class Members frequently worked over 40 hours in a

- 5 -

week while employed by defendant

33.    Defendant's policy and/or practice was to not compensate named plaintiff and Class Members for all work performed either at regular or premium overtime rates for such work

34    Defendant knew plaintiffs were supposed to be paid statutory overtime, however, defendant willfully failed to pay statutory overtime for all hours when named plaintiff and Class Members worked over 40 hours in a week

35    Defendant also knew plaintiffs were supposed to be paid for all time worked, however, defendant willfully failed to pay for all hours worked.

36.    The defendant's practice is to be deliberately indifferent to these violations of the statutory overtime requirements and state labor laws.

37    This failure to pay for all time worked as required by the FLSA, the New York Labor Law and the various state laws was willful.

### FIRST CAUSE OF ACTION
#### *FLSA*

38    Plaintiffs reallege the above paragraphs as if fully restated herein

39    Defendant willfully violated its obligations under the FLSA and is liable to plaintiffs

### SECOND CAUSE OF ACTION
#### *New York Labor Law*

40    Plaintiffs reallege the above paragraphs as if fully restated herein

41    Defendant willfully violated its obligations under the New York Labor Law and is liable to plaintiffs

- 6 -

## THIRD CAUSE OF ACTION
### *State Labor and Contract Laws*

42    Plaintiffs reallege the above paragraphs as if fully restated herein.

43.    Defendant willfully violated its obligations under the laws of the various states in which United Financial does business and is liable to plaintiffs.

**WHEREFORE**, plaintiffs demand judgment against defendant in their favor and that they be given the following relief:

(a)    an order preliminarily and permanently restraining defendant from engaging in the aforementioned pay violations;

(b)    an award of the value of plaintiffs' unpaid wages, including fringe benefits;

(c)    liquidated damages under the FLSA equal to the sum of the amount of wages and overtime which were not properly paid to plaintiffs (plaintiffs who do not affirmatively opt-in the class expressly waive their rights to liquidated damages or any other statutory penalty provided under New York law);

(d)    an award of reasonable attorneys' fees, expenses, expert fees and costs incurred in vindicating plaintiffs' rights;

(e)    an award of pre- and post-judgment interest; and

(f)    such other and further legal or equitable relief as this forum deems to be just and appropriate

## JURY DEMAND

Plaintiff demands a jury to hear and decide all issues of fact

Dated: October 6, 2006

                                        **DOLIN, THOMAS & SOLOMON LLP**

By:    s/J. Nelson Thomas

               J. Nelson Thomas, Esq
               *Attorneys for Plaintiffs*
               693 East Avenue
               Rochester, New York 14607
               Telephone:  (585) 272-0540
               nthomas@theemploymentattorneys.com

H:\McKenzie B\Amended Complaint (Second) - FLSA.doc

**EXHIBIT C**

| | |
|---|---|
| Ian Gooldy, Timothy Bowen, Pam | x |
| Capuano, Steven Escher, Erik | x |
| Garcia, Brian McKenzie, Fahad | x |
| Siddiqui, Alison Waskiewicz, and | x |
| Charles Young, on behalf of | x |
| themselves and all other | x |
| employees similarly situated, | x |
| | x |
| Claimants, | x |
| | x    Matter in Arbitration |
| v | x    JAMS Reference No. 1420015543 |
| | x |
| United Financial Mortgage Company, | x |
| | x |
| Respondent. | x |

Claimant Brian McKenzie[1] brought this action on behalf of himself and all other employees similarly situated against United Financial Mortgage Company ("UFM") alleging that UFM has a practice and policy of not paying hourly employees overtime when they worked more than 40 hours in a week. The claims are brought pursuant to FLSA 29 U.S.C. § 216(b), and various state labor laws and contract laws. The action was moved to JAMS arbitration pursuant to an employment agreement to arbitrate, and the undersigned was mutually selected to arbitrate the matter as a sole arbitrator. Claimants move for(1) class certification and expedited notice to affected employees pursuant to FLSA 29 U.S.C. §216(b) and (2) class certification pursuant to JAMS Rule 3 and the Federal Rules of Civil Procedure Rule 23. For the reasons set forth below, the motion for FLSA certification and expedited notice to affected employees is granted and the motion for Rule 23 class certification is denied without prejudice to renew when the record is more fully developed.

## FLSA §216(b) COLLECTIVE ACTION

Claimants move to certify a collective action class under FLSA 29 U.S.C. §216(b) and ask the arbitrator to authorize the sending of expedited notice to potential class members. Claimants describe the class as "those individuals who currently and formerly were suffered or permitted to work for UFM or its subsidiaries or divisions or other joint employers (collectively, and together with the other defendants, "United Financial" or defendants") anytime from March 25, 2002, through the present and were

---

[1] McKenzie filed an action against United Financial Mortgage Company (according to respondent's answer to the Second Amended Claim, the correct name of the entity is United Financial Mortgage Corp.) in United States District Court, Western District New York, on February 15, 2005. Claimants Gooldy, Bowen, Capuano, Escher, Garcia, Siddiqui, Waskiewicz, and Young were added as party claimants in the Amended Claim dated on or about August 29, 2006.

paid on an hourly basis, and who were not fully compensated for all work performed either at regular or premium overtime rates for such work."

Employees may bring a collective action " for and in behalf of ...themselves and other employees similarly situated." 29 U.S.C. §216(b). In order to proceed as a collective action, the claimants must show that the putative class members are "similarly situated." *Id.* If there are similarly situated employees, notice to the class is appropriate. *Hoffman-LaRoche, Inc., v. Sperling*, 493 U.S. 165 (1989). A two-tier analysis is used to determine whether the putative class members are similarly situated. At the initial stage, the finder of fact must determine whether the class can be certified for notice and discovery purposes. The claimants, at this conditional certification stage, are "only required to demonstrate a factual nexus that supports a finding that potential plaintiffs were subjected to a common discriminatory scheme." *Jackson v. New York Telephone Co.*, 163 F.R.D. 429 (S.D.N.Y. 1995). Though they must introduce facts that go beyond the mere allegations in the complaint, "they can meet this burden by making a modest factual showing that they were victims of a common policy or plan that violated the law." *Realite v. Ark Restaurants Corp.*, 7 F. Supp. 2d 303 (S.D.N.Y. 1998). At this stage, that burden is quite lenient. It is at the second stage - after discovery has been completed - that the arbitrator uses a stricter standard to decide whether the putative class members are similarly situated and that the matter can go forward to trial as a collective action. At that stage the arbitrator conducts a fact intensive inquiry of several factors, including the extent of disparate factual and employment settings of the individual claimants, the various defenses respondent may have that appear to be individual to each claimant, and fairness and procedural considerations.

Since discovery here is in its very early stages, the more lenient standard is appropriate to determine whether the putative members of the class are similarly situated. The question is whether claimants have presented evidence beyond the claim that shows that the class members are the victims of a policy, decision, or plan. Claimants allege that the putative class members were all subjected to respondent's policy of not paying overtime to hourly employees who worked more than 40 hours a week. They offered 14 affidavits from former employees that describe similar practices in diverse locations from New York to California and among numerous job classifications, such as receptionists, administrative assistants, funders, and different aspects of loan activities. Each of the affiants states that they were hourly employees who were denied overtime pay when they worked more than 40 hours in a week. They allege this was a policy of UFM throughout the organization. Affidavits from 7 former loan officers state that they and other loan officers did little or no work outside the office or their homes and did not perform as respondent claims they did. They also said that the duties of a loan officer were identical at all UFM offices and that UFM maintained practices and policies for all loan officers to follow.

Respondent answers that the employees are not similarly situated. Respondent offered affidavits from Beth Davis, a Human Resources Generalist for UFM, and from Michael Lee, Vice President of Retail for all of UFM, to demonstrate that UFM's retail locations are staffed and operated individually with their own compensation

arrangements; that sites differ vastly in size- from one employee to large metropolitan branches; that job duties varied from location to location with at least 127 job titles at 70 job sites in 24 states across the country. Both affiants stated that there was no common policy against paying overtime to employees who worked over 40 hours in a week; that many loan officers and loan processors were classified as exempt under the outside sales or administrative exemption to FLSA requirements; and that some of the remaining loan officers and processors were paid overtime. For these and other reasons, respondent believes that there are not similarly situated employees to form a class. The general statements of management and human resource personnel are not as probative as that of the employees who have actually worked in the positions. As the court said in *Stanfield v. First NLC Financial Services, LLC.*, 29996 WL 3190527 (N.D. Cal. 2006), "Conclusory statements by managers that every employee has different tasks and skills are not sufficient." In *Stanfield,* as here, there were no affidavits from employees who worked in the relevant positions that showed how the jobs differed from site to site.

At this stage, there are dueling affidavits. Respondent's assertions and affidavits address the merits of the case, which is not the proper inquiry at this stage. As in *Jackson,* 163 F.R.D. at 432, the statistical and geographical evidence is presented too soon. It may play a part in the final determination, but not at this early stage. The arbitrator's role at this point is not to evaluate the merits of the claims; it is only to reach a preliminary determination whether potential claimants are "similarly situated." The arbitrator "need not evaluate the merits of plaintiff's claims in order to determine that a definable group of 'similarly situated' plaintiffs can exist here." *Hoffman v. Sbarro, Inc.*, 982 F. Supp. 249, 262 (S.D.N.Y. 1997). As to respondent's argument that some of the job titles listed are exempt positions, that will be addressed during discovery and a determination made thereafter. The final determination whether the class is properly constituted will come after discovery is completed, when scrutiny will be much more stringent. Should there appear to be groups that would better be managed as subclasses, the class can be divided into a subclass, or several subclasses; and if discovery shows that some employees are not similarly situated, the class can be redefined or decertified at that time. *Scholtisek v. The Eldre Corporation*, 229 F.R.D. 381, 390.

Keeping in mind the lenient standard that both parties agree is the correct one to use at this juncture and aware that authorization to send notice to putative class members has been given on less affirmed allegations than were presented here, I find that the claimants have presented sufficient probative evidence to pass over the rather low evidentiary bar "to adequately show the existence of similarly situated employees and that notice should be sent to them to afford them the opportunity to join the class." See *Braunstein v. Eastern Photographic Labs, Inc.*, 600 F. 2d 335, 336 (2d Cir. 1076).

Since claimants did not submit a draft notice to send to the putative class members, the parties should confer and agree, if possible, on a notice to be sent. The parties are directed to jointly submit a proposed notice to the arbitrator no later than November 30, 2006. Such notice must contain wording similar to that issued by courts that the arbitrator and the arbitration have taken no position regarding the merits of the claims or of the defenses. The class is defined in the second paragraph of this decision,

except as to the beginning date of the class – alleged in the paragraph to be March 25, 2002. If the parties cannot agree on the proper date, taking into consideration the tolling of the statute of limitations to which they agreed, they each must submit with the proposed notice the date and reasons for their preferred date.

The notice shall be sent by First Class mail to all affected employees. Respondent will provide to the claimants no later than December 8, 2006, the mailing addresses of current and former employees going back to a date decided upon by the parties or, if necessary, by the arbitrator. Since respondent does not maintain email addresses of current or former employees, it is not ordered to create such information to produce to claimants. Notices need not be placed in any newsletter or on any bulletin board since, probably, only current employees would be in areas where they would see the notice, and they will have received the notice by mail. In all likelihood, the postings will not get the message to former employees, but only to currently employed putative class members who already will have received it.

### JAMS RULE 3 AND RULE 23 CLASS CERTIFICATION

Claimants also move to certify a class for violations of various unnamed state labor laws and breach of contract claims pursuant to JAMS Rule 3, which follows the Federal Rules of Civil Procedure Rule 23. Claimants must establish that requirements of numerosity, commonality, typicality, and adequacy of representation set forth in Rule 23(a)[2] and JAMS Rule 3 have been satisfied and that the putative class falls within one of the three categories set forth in JAMS Rule 3(b).

The analysis for class certification here is not the lenient standard used in the FLSA collective action. Instead, the arbitrator must do a "rigorous analysis" to determine whether the prerequisites have been met. See *General Telephone Co. v. Falcon*, 457 U.S. 147, 161 (1982). Though the merits of the claims should not affect the certification decision, the arbitrator "certainly may look past the pleadings to determine whether the requirements of Rule 23 have been met." *Castano v. Am. Tobacco Co.*, 84 F.R.D. 734,744 (5th Cir. 1996).

Claimants support their motion for class certification with the affidavits and allegations they put forth for the collective action certification. It was apparent in that analysis that there are areas of disagreement between the parties, but the standard of review there was not the rigorous one called for now. There has been little if any meaningful discovery yet. There are the bare bone allegations and replies; discovery is needed to put meat on those bones. As an example, if there really are as many different job titles and duties as respondent claims, there may not be the commonality that claimant urges. If compensation plans were not uniform and individual determinations have to be made, there may be no commonality. The question of the exempt classifications of loan officers and some loan processors may also call for individual examinations and defeat typicality and predominance. Discovery will answer many of

---

[2] The terms "Rule 23" and "JAMS Rule 3" are used interchangeably in the discussion since the JAMS Rule tracks the Federal Rule.

these questions; only after the record has been more fully developed can this forum determine whether common questions of law and fact predominate over individual issues There just is not enough information for this forum to rule on claimants' Rule 23 class certification motion It is very possible that after discovery, claimants' claim that a class action is the superior method to adjudicate this matter is the best way to go forward. It is also possible that, like the Court found in *Letouzel v. The Eastman Kodak Co ,* 2006 U.S.Dist LEXIS 33453 (W D N Y. 2006), numerous differing state labor and contract laws will dominate and defeat the common issues of law or fact required by Rule 23(b)(3) Therefore, I deny for now claimants' motion for Rule 23 class certification without prejudice. They may renew the motion when discovery has more fully developed the record.

## CONCLUSION

Claimants' motion for expedited notice to affected employees (collective action) pursuant to FLSA §216(b) is granted.

Claimants' motion for class certification pursuant to JAMS Rule 3 and Federal Civil Procedure Rule 23 is denied without prejudice and with leave to renew when the record is more fully developed.

Date: New York, NY
      November 20, 2006


                                       _____/s/_____
                                         Jeanne C Miller, Arbitrator

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

--------------------------------------------------

FAHAD SIDDIQUI, et al.

                  Plaintiffs,

         -against-

AIRLIE OPPORTUNITY MASTER FUND,
LTD., ARH MORTGAGE INC., WDM FUND,
L.P., STEVE Y. KHOSHABE, JOSEPH
KHOSHABE and JASON K. SCHIFFMAN

                 Defendant.

--------------------------------------------------

Civil Action No. 06-CV-6473 L (P)

**DECLARATION OF
JOSEPH KHOSHABE IN
SUPPORT OF THE
INDIVIDUAL
DEFENDANTS' MOTION
TO DISMISS OR IN THE
ALTERNATIVE TO STAY
THE CLAIMS AGAINST
THEM**

Pursuant to 28 U.S.C. § 1746, Joseph Khoshabe, declares under penalty of perjury:

1.    I am presently a consultant to United Financial Mortgage Corporation ("UFMC"). The statements made herein are based upon my personal knowledge. I make this declaration in support of the motion of the Individual Defendants to dismiss the claims against us on the grounds of lack of personal jurisdiction or, in the alternative, to stay such claims pending the conclusion of the arbitration entitled "Gooldy et al. v. United Financial Mortgage Corporation," JAMS Reference No. 1420015543, involving the exact same allegations against my former employer, UFMC.

2.    Based on my lack of contacts with the State of New York, there is no basis for and it would be unfair to force me to travel to New York to defend this action. Accordingly, for the reasons set forth below, this Court should not assert jurisdiction over me in this case.

3.    I am a resident of the State of Illinois.

4.    I have always worked at UFMC's corporate offices in Oakbrook, Illinois.

5.    I was the President of UFMC, an Illinois corporation with its principal place of business in Oakbrook, Illinois, from April 1986 to May 2003.

6.    From May 2003 to December 1, 2005, I was the Chairman of the Board of Directors of UFMC.

7.    From December 1, 2005 to present, I have been a consultant to UFMC.

8.    As President of UFMC and Chairman of the Board of Directors of UFMC, I reported to the Board of Directors of UFMC.

9.    As a consultant to UFMC, I provide advice and consultation, as requested, to UFMC's senior management and Board of Directors.

10.    From 2002 through the present, I have had no direct responsibility or involvement in the human resource policies and practices of UFMC.  Specifically, during this time period I was not involved in the operations of the Human Resources or Payroll departments, including UFMC's payroll or time recording policies or practices.

11.    I had no role in setting, establishing, overseeing, or enforcing the employment, wage or overtime policies and practices of UFMC.

12.    I do not have any contacts with the State of New York.

    a.    I am not and have never been licensed, registered or otherwise authorized by any agency or entity to do business in the State of New York;

    b.    I do not have and never had a bank account in the State of New York;

    c.    I do not own, use or possess any real property in the State of New York; and

    d.    I have not visited the State of New York on behalf of UFMC since 2002.

I declare under the penalty of perjury that the forgoing is true and correct. Executed this 23rd day of January, 2007, at Chicago, Illinois.


s/Joseph Khoshabe
Joseph Khoshabe

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

----------------------------------------------------

FAHAD SIDDIQUI, et al.

                              Plaintiffs,

        -against-

AIRLIE OPPORTUNITY MASTER FUND,
LTD., ARH MORTGAGE INC., WDM FUND,
L.P., STEVE Y. KHOSHABE, JOSEPH
KHOSHABE and JASON K. SCHIFFMAN

                              Defendant.

----------------------------------------------------

Civil Action No. 06-CV-6473 L (P)

**<u>DECLARATION OF STEVE
KHOSHABE IN SUPPORT
OF THE INDIVIDUAL
DEFENDANTS' MOTION
TO DISMISS OR IN THE
ALTERNATIVE TO STAY
THE CLAIMS AGAINST
THEM</u>**

Pursuant to 28 U.S.C. § 1746, Steve Khoshabe, declares under penalty of perjury that:

1.      I am no longer employed by United Financial Mortgage Corporation ("UFMC"). The statements made herein are based upon my personal knowledge. I make this declaration in support of the motion of the Individual Defendants to dismiss the claims against us on the grounds of lack of personal jurisdiction or, in the alternative, to stay such claims pending the conclusion of the arbitration entitled "<u>Gooldy et al. v. United Financial Mortgage Corporation</u>," JAMS Reference No. 1420015543, involving the exact same allegations against my former employer, UFMC.

2.      Due to my lack of contacts with the State of New York, there is no basis for and it would be unfair to force me to travel to New York to defend this action. Accordingly, for the reasons set forth below, this Court should not assert jurisdiction over me in this case.

3.      I am a resident of the State of Illinois.

4.      I have always worked at UFMC's corporate offices in Oakbrook, Illinois.

5.      I was the Executive Vice President of UFMC, an Illinois corporation with its principal place of business in Oakbrook, Illinois, from December 1999 to April 2003.

6.      From May 2003 to September 29, 2006, I was the Chief Executive Officer of UFMC.

7.      During my employment at UFMC, I was not directly involved in the operations of UFMC's Payroll department and I had no involvement with UFMC's time recording policies or practices.  Specifically, I had no role in setting, establishing, overseeing, or enforcing overtime and time recording policies and practices of UFMC.

8.      I do not have any contacts with the State of New York.

      a.      I am not and have never been licensed, registered or otherwise authorized by any agency or entity to do business in the State of New York;

      b.      I do not have and never had a bank account in the State of New York;

      c.      I do not own, use or possess any real property in the State of New York; and

      d.      I have not visited the State of New York on behalf of UFMC since 2002.

I declare under the penalty of perjury that the forgoing is true and correct. Executed this 23rd day of January, 2007, at Chicago, Illinois.


                             _____s/Steve Khoshabe_____
                             Steve Khoshabe

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

FAHAD SIDDIQUI, et al.

       Plaintiffs,

    -against-

AIRLIE OPPORTUNITY MASTER FUND,
LTD., ARH MORTGAGE INC., WDM FUND,
L.P., STEVE Y. KHOSHABE, JOSEPH
KHOSHABE and JASON K. SCHIFFMAN

        Defendant.

---

Civil Action No. 06-CV-6473 L (P)

**DECLARATION OF JASON
K. SCHIFFMAN IN
SUPPORT OF THE
INDIVIDUAL
DEFENDANTS' MOTION
TO DISMISS OR IN THE
ALTERNATIVE TO STAY
THE CLAIMS AGAINST
THEM**

Pursuant to 28 U.S.C. § 1746, Jason K. Schiffman, declares under penalty of perjury that:

1.  I am no longer employed by United Financial Mortgage Corporation ("UFMC"). The statements made herein are based upon my personal knowledge. I make this declaration in support of the motion of the Individual Defendants to dismiss the claims against us on the grounds of lack of personal jurisdiction or, in the alternative, to stay such claims pending the conclusion of the arbitration entitled "Goodly et al. v. United Financial Mortgage Corporation," JAMS Reference No. 1420015543, involving the exact same allegations against my former employer, UFMC.

2.  Based on my lack of contacts with the State of New York, there is no basis for and it would be unfair to force me to travel to New York to defend this action. Accordingly, for the reasons set forth below, this Court should not assert jurisdiction over me in this case.

3.  I am a resident of the State of Illinois.

4.  I have always worked at UFMC's corporate offices in Oakbrook, Illinois.

5.    I was employed by UFMC from May 1995 to November 2006. In 2003 my title at UFMC, an Illinois corporation with its principal place of business in Oakbrook, Illinois, changed from Vice President, Operations to Executive Vice President, Operations

6.    From 2002 through the present, I have had no responsibility or involvement in the human resource policies and practices of UFMC. Specifically, during this time period I was not involved in the operations of the Human Resources or Payroll departments, including UFMC's payroll or time recording policies or practices.

7.    I had no role in setting, establishing, overseeing, or enforcing the employment, wage or overtime policies and practices of UFMC.

8.    I do not have any contacts with the State of New York.

    a.    I am not and have never been licensed, registered or otherwise authorized by any agency or entity to do business in the State of New York;

    b.    I do not have and never had a bank account in the State of New York; and

    c.    I do not own, use or possess any real property in the State of New York.

I declare under the penalty of perjury that the forgoing is true and correct. Executed this 23rd day of January, 2007, at Chicago, Illinois.


                _____s/Jason K. Schiffman_____
                Jason K. Schiffman

2